**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

**JUDITH CLINTON,**

Plaintiff,

v.

**STEPHEN BROUILLARD, ESQ.;**
**TODD ROMANO, ESQ.;**
**VIGILANT INSURANCE COMPANY;**
**JEFFREY PASEK;**
**DEBORAH SWIFT;**
**NORMAN RAFSOL;**
**KEVIN RAMPE;**
**TOASTMASTERS INTERNATIONAL; and**
**DANIEL REX,**

Defendants.

**C.A. No. 1:26-cv-00510-JJM-PAS**

**JURY TRIAL DEMANDED**

FILED
AUG 28 2026
U.S. DISTRICT COURT
DISTRICT OF RHODE ISLAND

**FIRST AMENDED COMPLAINT FOR CIVIL RIGHTS VIOLATIONS PURSUANT TO 42 U.S.C. §§ 1983, 1985, 1986, AND 1988 AND DEMAND FOR JURY TRIAL**

1. Plaintiff brings this civil rights action for damages and declaratory relief under 42 U.S.C. §§ 1983, 1985, 1986, and 1988. She alleges that private attorneys, corporate insurers, and institutional actors jointly used state judicial machinery to deprive her of due process, equal protection, the right to petition, and the right to trial. Plaintiff alleges that Defendants acted in concert with one another and through invocation of state court procedures in a manner that satisfies state-action requirement under *Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982), *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970) (private party who is a "willful participant in joint activity with the State or its agents" acts under color of law.

**2.** What follows is not a recitation of litigation grievances. The deprivation alleged here was accomplished through a sequence of coordinated acts, conduct that goes beyond the ordinary incidents of litigation, that operated together to deny Plaintiff notice, a meaningful opportunity to be heard, and a fair hearing on her claims, culminating in the September 1, 2023, order depriving her right to a trial on the merits. This is a documented account of the systematic deployment of legal process as a weapon, financed by institutional defendants with effectively unlimited resources, wielded by attorneys who had been given reason to believe the judicial outcome was predetermined in their favor, and sustained across seven years with the deliberate intention of exhausting a self-represented litigant's health, finances, and will, before her claims could ever reach a merits hearing. Every fact stated herein is grounded in the court record, in correspondence, in medical documentation, or in statements made by Defendants themselves documented on the record in court transcripts. The constitutional violations these facts establish are not technical infractions or the byproduct of aggressive advocacy. They are the intended result of a coordinated campaign that used the machinery of the judicial system, its procedures, its schedules, its authority, and its coercive power engineered to accomplish what the merits of Defendants' legal position could never do; the precise reason 1983 was enacted: §1983 transformed constitutional rights from *aspirations* into *enforceable obligations*. It gave vulnerable people a way to confront powerful institutions that had historically operated with impunity.

**3.** Plaintiff alleges that Defendants coordinated filings, concealment, and misrepresented facts to engineer a procedural outcome that terminated her state-court claims without adjudication on the merits, when dispositive motions were fully briefed with a trial date.

**4.** Plaintiff alleges that Defendants' conduct satisfies the joint-action standard under *Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982), *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152

(1970) (private party who is a "willful participant in joint activity with the State or its agents" acts under color of law), and the conspiracy principles recognized in *Dennis v. Sparks*, 449 U.S. 24 (1980), and *Tower v. Glover*, 467 U.S. 914 (1984). Their actions constitute misuse of state judicial authority by private parties acting under color of law.

**5.** Plaintiff alleges that the differential treatment she received as a self-represented litigant compared to represented parties in identical procedural postures, constitutes a classic equal protection violation, providing strong comparators by way of *Mill Road Realty Associates, LLC v. Town of Foster*, 326 A.3d 1085 (R.I. 2024), and others.

**6.** This is a backward-looking access-to-courts claim under *Christopher v. Harbury*, 536 U.S. 403 (2002). The underlying claims are gone, no state forum remains, and injury is final. Plaintiff doesn't seek reversal of any state-court judgment; she seeks damages for Defendants' conduct engineering and producing it.

**7.** Plaintiff alleges that Defendants' financial incentive structure, hourly-billing counsel, financed by institutional clients with unlimited litigation budget, made prolonged litigation, not resolution, the chosen course. This structure exploited Plaintiff's constitutionally recognized vulnerability as a pro se litigant, transforming obstruction of justice into a revenue-generating mechanism, exploiting Plaintiff's status with impunity.

**8.** Plaintiff alleges that Defendants coordinated acts, concealment, and reliance on misrepresented facts culminated in the June 20, 2023, hearing and the September 1, 2023, order that terminated her case without trial. The federal court is the only forum capable of recognizing and remedying the constitutional injury caused by private actors who misused judicial authority.

**9.** The organizing principle of this complaint requires emphasis: every count rests on a single structural claim that Defendants Brouillard and Romano, two attorneys nominally

representing adverse parties, acted in concert with each other and through state judicial machinery to accomplish what neither could have accomplished alone and what the merits of their legal positions never could have produced. This is not a case about aggressive advocacy or hardball litigation tactics. It is a case about two attorneys who shared a strategic objective; preventing Plaintiff's claims from reaching a merits adjudication, and who coordinated their conduct, their filings, their timing, and ultimately the language of the order that ended the case to achieve that objective. The evidence of that coordination is documentary: motions filed within minutes of each other; a Third-Party Complaint preserved against one attorney's own clients' interests, to serve the other's; When an attorney acts against their own client's interests to benefit an opposing party's client there is no innocent explanation, a December 27, 2022 Stipulation filed without notice to Plaintiff invoking that claim preserved for years for that specific purpose, Motion to Enforce hand-delivered outside normal practice; a hearing calendar manipulated over Plaintiff's written objection; and a final order drafted by Defendant Brouillard and accepted by Defendant Romano verbatim, over Plaintiff's written objection, that concealed the nature of what it memorialized. Defendant Romano's own October 2021 statement expressing confidence the court was "on their side" is Defendants' own acknowledgment, made at a critical juncture, that their coordination had achieved its intended effect. That the coordination was accomplished through state judicial process, invoking the court's authority at each step, is what converts private misconduct into a constitutional violation under *Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982), *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970) (private party who is a "willful participant in joint activity with the State or its agents" acts under color of law), and *Dennis v. Sparks*, 449 U.S. 24 (1980). Every count in this complaint is a different constitutional dimension of that single coordinated mechanism, financed by Chubb (**as defined in ¶20 below**) and Toastmasters International. Every

allegation is grounded in documentary evidence, pleadings, transcripts, correspondence, docket entries, and court orders. Joint action under *Lugar* and *Dennis v. Sparks* is not a separate count but the constitutional thread connecting every count in this complaint. It transforms coordinated private misconduct into action under color of state law, making it cognizable under 42 U.S.C. § 1983. Count V pleads it directly as conspiracy; every other count depends on it as the mechanism that gives this Court jurisdiction.

## JURISDICTION AND VENUE

**10.** This Court has original subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3) because this action arises under the Constitution and laws of the United States, including 42 U.S.C. §§ 1983, 1985, 1986, and 1988, and seeks relief for the alleged deprivation of federal civil rights. The Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's related state-law claims and any claims arising under the Rhode Island Constitution that form part of the same case or controversy.

**11.** Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claims occurred in Rhode Island. The *Rooker-Feldman* doctrine is confined to cases brought by state-court losers complaining of injuries caused by the state-court judgment itself, inviting federal district-court review to reject that judgment. Plaintiff brings an independent claim. The source of her injury is Defendants' own fraud and joint action conduct that satisfies the state-action requirement under *Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982) *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970). Where an injury flows from a defendant's wrongdoing, fraud, misconduct, or unconstitutional conduct, rather than from the mere existence of a state-court judgment, the claim is independent and *Rooker-Feldman* does not apply. This distinction is confirmed by the Supreme Court itself: Rooker-Feldman does not bar a § 1983

claim challenging the statute, rule, or conduct a state court addressed, as distinct from challenging the state court's decision itself, even where state appellate courts reviewed the underlying proceedings. *Skinner v. Switzer*, 562 U.S. 521, 532 (2011). Here, the source of Plaintiff's injury is Defendants' own fraud and joint action conduct described throughout this Complaint that exists independently of and would remain wrongful regardless of the legal correctness of any resulting state-court order. Without the fraudulent December 27, 2022, Stipulation, there is no February 8 filing, no March 24 hearing, no rescission, no Pre-trial hearing, no false premise, no June 20 reinstatement, no need for the two non-dispositive motions filed on a fabricated premise into a forum Defendants were confident would favor them, deliberately calendared by Defendants, with assistance from the judge, and total disregard for Plaintiff's objection to it being heard before dispositive motions. The issue before this court is that Defendants Brouillard and Romano, financed by Chubb and Toastmasters International, engaged in a sustained, coordinated pattern of conduct, deliberately weaponizing state judicial machinery against an unrepresented plaintiff, causing her permanent loss of the right to trial, extinction of legally cognizable claims, three acute psychiatric hospitalizations, seven years of financially devastating forced pro se litigation, and deprivation of constitutional rights to due process, equal protection, the right to petition, and access to the courts; conduct that constitutes violations of 42 U.S.C. § 1983 whether or not any ruling was legally correct. The June 20 decision was only the instrument through which Defendants' conduct produced its intended result, preventing a merits adjudication their legal positions could not have survived. Not a Rooker-Feldman case, it's a § 1983 case.

**12.** This Complaint does not allege that a neutral judicial officer simply erred in applying Rhode Island procedure. It alleges that named private parties did specific, identifiable things that independently violate Plaintiff's constitutional rights, including fabricating factual

premises presented to the court, preserving and invoking a superseded pleading for an undisclosed purpose, predicting judicial alignment at a critical juncture in the litigation, and drafting the order that concealed the mechanism of termination, each of which is fully documented in the Statement of Facts below and is actionable without any finding that the resulting judicial ruling was legally erroneous. The facts are in the record. The conduct is Defendants' own. This Court is asked only to determine whether that conduct violated Plaintiff's constitutional rights.

**13.** The question brought before the R. I. Supreme Court was whether the trial court abused its discretion under Rhode Island procedural law. The question presented to the United States Supreme Court was whether the R. I Supreme Court's affirmance violated Due Process and Equal Protection demonstrating disparate treatment of a self-represented litigant; denied without ruling on the merits. Neither court was asked to decide the question before this Court: whether Defendants' own conduct, the fraud, coordination, financing, and deliberate exploitation of a judicial environment they predicted would favor them, independently violated Plaintiff's constitutional rights under 42 U.S.C. §§ 1983, 1985, and 1986. The prior courts examined judicial acts. This Court is asked to examine private party conduct. Different defendants, different legal theories, different constitutional questions, none decided by any prior court. Discovery, fact-finding, and adversarial testing of Defendants' independent conduct can only occur here. This is a backward-looking access-to-courts claim within the framework established in *Christopher v. Harbury*, 536 U.S. 403 (2002). Plaintiff's underlying claims are permanently lost. No state forum remains. The injury is final and irreversible. The predicate acts are Defendants' sustained abuse of process, coordinated vexatious pleadings, financing of bad-faith litigation across seven years, and the engineering of the termination without adjudication on the merits, and concealing the mechanism by which it was terminated despite objections to said concealment. Defendants'

conduct did not merely chill Plaintiff's right to petition. It extinguished it, conduct that is independently actionable whether or not the rulings those acts produced were legally correct, and that does not require this Court to find the state court wrongly decided any issue before it. *Hill v. Town of Conway,* 193 F.3d 33, 39 (1st Cir. 1999) This Court is the only forum in which that extinguishment can be examined and redressed.

**14.** The deprivation of Plaintiff's right of access to the courts is permanent. In January **2022**, Plaintiff filed a Petition for Writ of Certiorari to RI Supreme Court, regarding denial of motions to amend, asserting disparate treatment and documenting it for a future claim. In July **2022**, Defendant Brouillard as a condition of settling, demanded that Plaintiff, while under documented duress, waive her right to appeal or to bring a federal civil rights claim, without financial consideration. Plaintiff refused. Throughout the litigation, Plaintiff reserved her § 1983 rights, Defendants had already tried and failed to extinguish by agreement, before attempting to extinguish them by fraud and procedural maneuver, when Plaintiff was under documented duress.

**15.** Plaintiff does not name the presiding state-court justice as a defendant. Judicial officers are absolutely immune for acts taken in their judicial capacity. *Stump v. Sparkman*, 435 U.S. 349 (1978). What is at issue is the liability of the private parties and institutional Defendants whose own conduct satisfies the joint-action test of *Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982). *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970) (private party who is a "willful participant in joint activity with the State or its agents" acts under color of law). Private persons jointly engaged with state officials in a challenged action act "under color of law" for § 1983 purposes. *Dennis v. Sparks*, 449 U.S. 24 (1980); *Tower v. Glover*, 467 U.S. 914, 920 (1984). This Complaint does not allege that the presiding justice's rulings were themselves actionable, **nor does it ask that the rulings be vacated or relitigated.** The damage is done and it is permanent. The complaint alleges Defendants Brouillard and Romano jointly participated in, anticipated, and benefited from

those rulings making their conduct the proper subject of this action. A claim that was never raised, never litigated, and never decided cannot be 'inextricably intertwined' with any judgment, because the federal court is not being asked to find the state court wrongly decided it. *Hill v. Town of Conway*, 193 F.3d 33, 39 (1st Cir. 1999). The equal protection claim is evidence illustrating the environment the joint action framework thrived in.

**PLAINTIFF'S CLAIMS ARE TIMELY**

**16.** Plaintiff's § 1983 claims are timely under federal accrual law. Where the alleged constitutional injury arises from the conduct and integrity of state-court proceedings, accrual does not occur until those proceedings have concluded and the injury is final. *Reed v. Goertz*, 598 U.S. ___ (2023). The state-court proceedings here concluded on December 10, 2025, when the United States Supreme Court denied certiorari. The United States Supreme Court's denial of certiorari is cited solely to establish the date on which the state-court proceedings concluded for purposes of the accrual analysis under *Reed v. Goertz*. A denial of certiorari is not a ruling on the merits of any question presented, carries no precedential weight, and constitutes no expression of opinion on the correctness of the R.I. Supreme Court's decision. *Maryland v. Baltimore Radio Show*, 338 U.S. 912, 919 (1950) (Frankfurter, J.); *Teague v. Lane*, 489 U.S. 288, 296 (1989). It does not constitute an adjudication of any issue raised in this complaint, and *Rooker-Feldman* does not operate through a certiorari denial to bar an independent § 1983 claim that the R.I. Supreme Court or the U.S. Supreme Court was never asked to and did not decide private party liability. The fraudulent concealment doctrine independently tolls the limitations period for the duration of Defendants' affirmative and documented concealment of the conspiracy and its fruits. *Fiswick v. United States*, 329 U.S. 211, 216 (1946). The conspiracy claims are independently timely because overt acts in furtherance of the conspiracy occurred within the limitations period. *United States v. Doherty*, 867 F.2d 47, 61 (1st Cir. 1989); *J. Geils Band Employee Benefit Plan v. Smith Barney Shearson, Inc.*, 76 F.3d 1245,

1255 (1st Cir. 1996). Plaintiff seeks relief for Defendants' own conduct in producing the constitutional injuries alleged herein, not review of any state-court judgment.

## PARTIES

**Plaintiff:**

**17.** Judith Clinton is a 73-year-old writer and retired former small business owner who relies on Social Security and resides in Providence, Rhode Island, currently Self-represented.

**Defendants:**

**18.** Stephen Brouillard, Esq., Bianchi, Brouillard, Sousa & O'Connell, Rhode Island, who at all relevant times represented five individual defendants in the underlying state-court action, financed by Defendant Chubb.

**19.** Todd Romano, Esq., Lewis Brisbois, Rhode Island, who at all relevant times represented Defendant Toastmasters International in the underlying state-court action.

**20.** Defendant Vigilant Insurance Company is a property and casualty insurer organized under the laws of New York, licensed to transact insurance business in Rhode Island, with its principal place of business at 2000 Arch Street, Philadelphia, PA 19103. Vigilant is a wholly-owned subsidiary of Federal Insurance Company, which is wholly owned by Chubb INA Holdings, Inc., which is ultimately controlled by Chubb Limited, a Swiss holding company. Vigilant's own regulatory filings identify it under NAIC Group Number 626, designated "Chubb Ltd Grp." Vigilant does business, and holds itself out to the public, under the "Chubb" brand, including through a shared corporate website, shared personnel, and correspondence and mail directed to the "Chubb" name that has been accepted and acted upon at Vigilant's own registered address. Every individual who communicated with Plaintiff regarding this matter, including the claims adjusters and each successive defense attorney assigned to it, identified themselves to Plaintiff as

representing "Chubb." At no point did any individual identify themselves as an employee or representative of Vigilant specifically, or of any other distinct underwriting subsidiary. This consistent, universal self-identification as Chubb reflects how the insurer actually presented itself to Plaintiff throughout this matter, regardless of which specific corporate entity may have technically issued the policy. Notwithstanding Chubb's own expressed preference, communicated to Plaintiff through counsel for Vigilant after consultation with separate counsel representing Chubb, that its name be removed from the caption of this action, counsel for Vigilant has confirmed direct communication with separate counsel representing Chubb, specifically regarding this litigation, demonstrating Chubb's continued, active interest and involvement in this matter regardless of which corporate entity is formally named as a defendant. Vigilant issued the liability policy under Claim No. 092018000033 covering the individual defendants' defense of the underlying state-court action WC-2017-0376 through a homeowner's policy for one of the individual defendants, Lisa Nelson, from its inception through December 10, 2025. This is confirmed by discovery documents produced in the underlying action, which identified the insurance carrier as Vigilant Insurance Company. When Plaintiff raised this apparent discrepancy directly with Jeffrey Pasek by email on July 12, 2022, given that all prior communications and correspondence had referred only to "Chubb," Pasek responded in writing, from his official Chubb email address, that **"Vigilant Insurance Company is the Chubb division / writing company that issues the policy to our insureds."** For that reason, and because every individual who communicated with Plaintiff regarding this matter identified themselves as representing "Chubb" or "Chubb Insurance," rather than any specific underwriting subsidiary, except on the first page in the list of defendants, this Complaint refers to Defendant Vigilant Insurance Company as "Chubb," "Chubb Insurance," or "Defendant Chubb" throughout, consistent with how the company

presented itself to Plaintiff at all relevant times. The legal significance of this pattern of shared identity, and why Vigilant remains accountable for conduct undertaken by individuals and entities identifying themselves as "Chubb," notwithstanding Chubb's own expressed preference that Chubb Limited be removed from the caption, is addressed in **§§81, 84a, and 120a** below, pursuant to agency by estoppel and apparent authority. Accordingly, for all intents and purposes of this lawsuit, it appears that Chubb and Vigilant are one and the same entity.

**21.** Jeffrey Pasek, Chubb Claims Adjuster, Whitehouse, New Jersey, who facilitated the execution of the December 13, 2022, Dismissal Agreement and authorized continued financing of the litigation after receiving actual notice of its constitutional dimensions.

**22.** Deborah Swift, former Chubb Claims Supervisor, superior to Defendant Pasek, who directed Pasek's involvement in obtaining the Dismissal Agreement and authorized continued financing after receiving notice of constitutional violations. Currently employed by Berkley Environmental Insurance.

**23.** Norman Rafsol, EVP & Senior Claims Officer, Professional Lines, ACE Group subsidiary of Chubb (the predecessor name of the Chubb enterprise, as described in ¶84a), who received Plaintiff's explicit § 1983 warning by overnight delivery, took no remedial action, and authorized continued financing of the litigation.

**24.** Kevin Rampe, Head of North America Claims, Chubb Insurance, New York, New York, superior to Defendant Rafsol, who received Plaintiff's explicit § 1983 warning, had institutional authority to halt the abusive litigation, and failed to do so.

**25.** Toastmasters International, a nonprofit 501(c)(3) educational public benefit corporation incorporated in California, a multi-million dollar organization with 16,000 clubs

worldwide, with headquarters in Englewood, Colorado, doing business in Rhode Island through club chapters, which financed Defendant Romano's representation.

**26.** Daniel Rex, CEO of Toastmasters International, Englewood, Colorado, who received written communications documenting Plaintiff's constitutional claims and authorized continued financing of the litigation strategy described herein.

**27.-ROADMAP** - ***The Statement of Facts is organized in twenty lettered sections, A through T, each building on the one before it to establish a single coordinated mechanism, as it pertains to each Count of the complaint, not a series of unrelated events.***

**A.** Background of the underlying litigation from August 2017 through the end of attorney representation in March 2019. Foundation for all counts.

**B.** Plaintiff's forced pro se status and repeated failure of available reporting channels to address the underlying conduct. **Counts II and IV.**

**C.** The financial incentive structure that made prolonged litigation, not settlement, the chosen course, a conspiracy where obstruction of justice became a business model. **Counts V, IX, X**

**D.** Denial of the Motion to Join Claims, the first closure of the negligence claim, and Brouillard's opposition to a motion that served his own clients' interests, the first evidence of inappropriate alignment, conflict of interest, conspiracy and joint action that laid the groundwork and defined every subsequent proceeding. **Count V.**

**E.** 3rd and 4th Motions to Amend, Motion for Reconsideration, Petition for Certiorari, denied on misapplied Rule 15(c) standard, preventing negligence from reaching a jury **Count VII.**

**F.** Defendant Romano's October 2021 statement expressing confidence the court was "on their side" Defendants' account of what Sections D and E had informed them. **Counts V and VI.**

**G.** Escalating pressure campaign following Romano's statement, coordinated filings; three acute psychiatric hospitalizations caused by this sustained conduct. **Counts V, IX, and XI.**

**H.** First Dismissal Agreement proffered under documented duress in July 2022 and rejected by Defendants unless Plaintiff waived her § 1983 rights without consideration. **Counts II and V.**

**I.** Second Dismissal Agreement filed December 13, 2022, under duress, without counsel, without consideration, filed under Rule 41(a)(1)(B) without judicial oversight or a court order of any kind, case marked "closed/dismissed" on December 13, 2022 **Counts V and VI.**

**J.** The December 27, 2022, fraudulent second Stipulation, a false representation to the Clerk that remaining claims existed, reopening a closed file, and the causal chain of conduct that produced the September 1, 2023 termination. **Counts V, VI, VII, VIII, and IX.**

**K.** Plaintiff's February 8, 2023, notice withdrawing the Dismissal Agreement; six weeks' notice to Defendants with assertion of the constitutional violations pled here. **Count VI.**

**L.** March 24, 2023, hearing granting rescission, the court's promises of trial, and Defendants' waiver of all objection to rescission. **Counts VIII and IX.**

**M.** Defendants' full compliance with pre-trial orders, 22 motions in limine, jury instructions, witness lists; actions taken in preparation for trial that was imminent. **Counts VIII and IX.**

**N.** Two non-dispositive motions calendared alongside pending dispositive motions, resting on a narrative Plaintiff documented as false in writing and during the hearing. **Counts VIII and IX.**

**O.** The June 20, 2023, hearing's disparate treatment, threatening to enjoin Plaintiff without cause, while ignoring Defendants multiple Rule 11 violations of their false factual premise, the court confirmed the premise was false, then granted relief anyway. **Counts VIII and IX.**

**P.** Competing proposed orders after June 20: Plaintiff's order quoted the transcript; Brouillard's omitted it; the court entered Brouillard's over Plaintiff's objection. **Counts V, VII, VIII, and IX.**

**Q.** Defendants' drafting and acceptance choices as direct evidence satisfying both elements of the joint-action test under *Lugar v. Edmondson Oil Co.*, without requiring this Court to assess the order's procedural validity. **Counts V, VIII, and IX.**

**R.** Chubb's institutional conduct, actual notice at every level of its claim's hierarchy, a backdated letter, obstruction of ethics proceedings, and repeated explicit § 1983 warnings. **Counts V and VI.**

**S.** Evidence of disparate treatment throughout the litigation and the June 20 hearing, illustrating the environment that fostered, allowed and encouraged the joint action **Count I.**

**T.** The coordinated structural mechanism as a whole, each act building on the one before it toward a single result, financed and enabled throughout by Chubb and Toastmasters.

## STATEMENT OF FACTS

**28.** The Statement of Facts that follows describes, where relevant, the content of judicial rulings and the language in which they were rendered. Where rulings are described, including rulings that rested on misapplied procedural rules, are described for two limited purposes: to establish the historical fact that they occurred and the effect they produced, and to demonstrate that Defendants' own conduct in procuring them constitutes joint action, fraud, and differential treatment without rational basis, which are the independent constitutional injuries this complaint seeks to redress. Conduct in fact is not conduct in law. Plaintiff alleges the former throughout and asks this Court to determine whether Defendants' own conduct violated her constitutional rights; conduct that is independently actionable whether or not the rulings those acts produced were legally correct, and that does not require this Court to find the state court wrongly decided any issue before it. *Hill v. Town of Conway,* 193 F.3d 33, 39 (1st Cir. 1999)

**29.** Civil litigation follows a settled sequence designed to bring parties to a decisive juncture. Once dispositive motions are fully briefed and heard, the court determines whether any genuine factual dispute remains. If the motions are granted, the case ends without trial, because no reasonable factfinder could rule otherwise. If denied, the case proceeds to the trial already scheduled, where the actual evidence is heard and the merits are finally decided. By June 20, 2023, this case had reached exactly that juncture: a trial date set, dispositive motions fully briefed and calendared for hearing. Neither outcome that juncture exists to produce occurred; denial of the dispositive motions followed by trial, or their grant followed by a reasoned ruling on the merits. What happened was something the rules of civil procedure do not authorize, and the Due Process Clause does not permit: a third outcome, reached through the deliberate corruption of the

procedural sequence itself by the parties whose interests it served, through coordinated motions resting on a misrepresented record. What happened instead is the subject of this Complaint

## A. The Underlying Litigation - Background

**30.** In August 2017, Judith Clinton filed a civil suit in Washington County Superior Court (WC-2017-0376) against five members of the Wonderful Westerly Toastmasters Club, alleging defamation, intentional infliction of emotional distress, and related injuries. The case was first amended to add a breach of contract claim against Toastmasters International, and later a second amendment to add a defamation claim against Toastmasters. Initially represented by attorneys through March 2019, Plaintiff then proceeded pro se, while continuously seeking new counsel. Over six years, she actively litigated, defeating frivolous counterclaims, including a meritless trademark claim and frivolous abuse of process allegations, while herself counterclaiming for abuse of process. As their defense, Defendants filed a Third-party claim for negligence against Toastmasters; shortly thereafter, superseded by a crossclaim for negligence.

## B. Plaintiff's Forced Pro Se Status - Tortious Interference with Right to Counsel

**31.** Plaintiff's forced pro se status from March 2019 onward was not voluntary, it was the direct result of opposing counsel's misconduct. Multiple Rhode Island attorneys declined to enter the case after reviewing the file, even when offered substantial compensation, with many of those rejections reported to the court on the record. They all concluded that entering the case would trigger mandatory reporting obligations under Rhode Island Rule of Professional Conduct 8.3(a).

**32.** One attorney accepted a retainer for limited-scope work to explore settlement, and after a brief call with Defendant Romano, during which Romano told him the court's denial of Plaintiff's motions to amend demonstrated the judge was "on their side" and settlement was therefore unnecessary, his firm's partnership specifically advised him not to file an appearance in connection with Romano. He issued a partial refund and declined further involvement, despite

efforts to persuade him to file an appearance and continue. This withdrawal is independent corroborating evidence: an experienced Rhode Island practitioner and his firm, hearing that opposing counsel had described judicial disposition as predetermined in their favor, concluding they didn't wish to be associated with this case, documented in writing.

**33.** With the exception of assistance from one other limited scope attorney, who would only file a limited appearance, Plaintiff litigated unrepresented against two experienced defense attorneys; Defendant Brouillard, backed by Defendant Chubb, and Defendant Romano, representing Defendant Toastmasters. Unable to secure counsel, her complaints to Rhode Island Disciplinary Counsel were dismissed for lack of jurisdiction, with no court-initiated referral ever made despite numerous motions for sanctions. These facts support **Count II** and **Count VII.**

## C. Sustained Abuse of Process; A Pattern of Conduct

**34.** Defendants Brouillard and Romano, financed by Chubb and Toastmasters International, engaged in a sustained, **coordinated pattern of abuse of process** deployed deliberately against an unrepresented plaintiff: **1)**filing multiple contentious, bad-faith pleadings for the purpose of exhausting Plaintiff financially, medically, and emotionally rather than for any legitimate litigation purpose; **2)**filing a frivolous, unsupported Motion to Dismiss and a bad-faith Motion for Summary Judgment without legal basis, premised on a typographical error Plaintiff made in a caption heading while under documented duress; **3)**coordinating motion filings so that one defendant served a new motion by email and within five minutes the other served a separate motion, a tactic designed to maximize pressure on a self-represented litigant; **4)**subjecting Plaintiff to more than twenty hours of deposition testimony under conditions so threatening and aggressive that she was required to hire a private security guard for her physical safety, reported on the record; **5)**filing a meritless trademark infringement claim and a frivolous abuse of process counterclaim, the latter dismissed after deposition testimony by Defendants' own clients established its factual

basis was false; **6)**refusing at all times to negotiate settlement despite multiple documented attempts by Plaintiff and objecting to multiple motions for mediation; **7)**filing more than fifteen documented factual distortions constituting Rule 11 violations in the June 2023 motions, identified specifically in Plaintiff's written objections, and multiple violations of Rhode Island Professional Rule of Conduct 3.3; **8)**demanding, as the price of settling during documented duress, that Plaintiff waive her right to appeal and her right to bring a federal civil rights claim, without financial consideration; **9)**maintaining for years, against Plaintiff's repeated written demand, the nominal existence of a Third-Party Complaint already admitted in writing to be superseded, invoked for the purpose of filing a fraudulent second Dismissal Agreement without Plaintiff's knowledge; **10)**causing the Clerk to reopen a closed file by misrepresentations they both knew were not true.

**35.** Chubb's supervisory chain, Defendants Pasek, Swift, Rafsol, and Rampe, approved Brouillard's fees without inquiry into the legality of the tactics, even after receiving Plaintiff's written documentation of the abuse, specifically documenting the abuse and identifying it as unlawful. A November 2021 settlement outreach by Chubb adjuster Teresa Nehez was blocked by Brouillard; the claim was then transferred to a claim adjustor/attorney, Defendant Jeffrey Pasek in New Jersey, a transfer that indicates a deliberate institutional decision to abandon settlement and continue financing the constitutional deprivations.

**36.** The cumulative toll was severe: Plaintiff suffered multiple hospitalizations, inpatient psychiatric admissions at Butler and Kent Hospitals, a diagnosis of Major Depressive Disorder and Extreme Distress Disorder, and ongoing treatment requiring two therapy sessions weekly plus prescription antidepressants; The same type of injuries Rhode Island's Abusive Litigation Statute, R.I. Gen. Laws § 8-8.4-6, expressly recognizes as comparable to physical violence in domestic cases. The foregoing facts support **Counts IX and X.**

**D. Denial of Motion to Join Claims; First Closure of Negligence Claim –**

**37.** In September 2020, after Plaintiff received a pertinent document in discovery, she moved under Rhode Island Rule of Civil Procedure 20 for permissive joinder, to join her own claim against Toastmasters International alongside the individual defendants' crossclaim for negligence already before the court. Both Rule 20 requirements were plainly met: same transaction, same legal question. Before filing, Plaintiff proposed to Defendant Brouillard that his clients align with her against Toastmasters; he responded by threatening sanctions. When she filed anyway, Brouillard's objection embedded a request for sanctions against her, and deliberately misstated the controlling rule as Rule 21 for adding or deleting parties to a claim, asserting she "must be confused" due to her pro se status, while concealing that the motion would have benefited his own clients, a Rule of Professional Conduct 3.3 violation, The motion to join was denied.

**38.** Defendant Brouillard opposing a Motion to Join Claims that directly served his own client's interests and protected Toastmasters from being joined in claims where it had liability exposure, served Romano's client not Brouillard's own client. This in addition to never pursuing the crossclaim against Toastmasters, coaching deposition answers that avoided revealing negligence by Toastmasters, and absent any discovery requests to that defendant. This destroys the **Presumption of Adversarial Integrity**. The entire legitimacy of the adversarial system rests on the assumption that each attorney zealously represents their own client. When an attorney **acts against their own client's interests to benefit an opposing party's client**, there is no innocent explanation. It is direct, affirmative evidence of: **Breach of fiduciary duty** to his own client **Violation of Rhode Island PRC 1.7** (conflict of interest) and **Rule 8.4** (misconduct involving dishonesty and fraud) **Conspiracy with opposing counsel** to manipulate the outcome of the proceedings, the basis of Plaintiff's Abuse of Process claims against the individual defendants.

**E. 3rd and 4th Motions to Amend, Motions for Reconsideration and Petition for Writ of Cert Pertaining to Amendments to Add Negligence All Denied - Based on Misapplied Rule 15 (c)**

**39.** After her Motion to Join Claims was denied, Plaintiff sought leave under Rule 15(a) to add a negligence count via a Third Amended Complaint. The court denied this motion by misapplying Rule 15(c), specifically, the provision governing relation-back of amendments that **add new parties**, which requires prior notice to the new party. Plaintiff's motion did not add a new party; Toastmasters International was already in her claim. The rule the court applied governed a categorically different procedural circumstance, and the amendment was not time-barred.

**40.** Plaintiff's Fourth Amended Complaint sought only to add factual detail to her existing Breach of Contract claim, necessary because the original complaint was drafted using bare notice pleading. That claim carried a ten-year statute of limitations and was not time-barred. The court nonetheless denied it on the same misapplied Rule 15(c) basis, adopting Defendant Romano's argument that the additional factual allegations were "disguised negligence claims" foreclosed by the prior ruling, bootstrapping that denial on to a completely new set of facts without reason.

**41.** A Rule 60(b) Motion for Reconsideration regarding this reasoning was also denied. The court then directed Plaintiff, unrepresented, to seek a Petition for Writ of Certiorari from the Rhode Island Supreme Court, a discretionary and rarely granted remedy. At significant emotional and financial cost, Plaintiff filed the petition on January 2, 2022. Defendants opposed it, and it was denied. Had the negligence claim proceeded, Toastmasters Int'l faced potential liability for negligent supervision and governance of its members' conduct. The same as the individual defendants had against it in their crossclaim for negligence. The financial structure described in Section C continued throughout the period these denials occurred. This sequence of closures forms the factual foundation for **Count VII,** central to the access-to-courts and due process claims.

**F. – Romano's Statement Declares Confidence of Judicial Favor and Alignment - The Core Admission**

**42.** In October 2021, Defendant Romano told Plaintiff's limited-scope attorney, hired specifically to explore settlement, that the court's repeated denials of Plaintiff's Motions to Amend had told him "the judge was on their side," and they don't have to settle. This statement was made by a licensed attorney to another licensed attorney, in the context of settlement discussions, and is documented in writing. A denial of a Motion to Amend is a procedural ruling on pleading standards. It communicates nothing about the merits of the underlying claims, the strength of any defense, or the likely outcome of trial. An attorney who reads such a ruling as a signal of categorical, ongoing judicial favor, is not engaging in ordinary litigation analysis, he is describing a relationship with the court that has no place in neutral adjudication.

**The Signal Effect on the Litigation**

**43.** Each denial, the Motion to Join Claims, the Third and Fourth Amended Complaints, the Rule 60(b) reconsideration, and the Petition for Certiorari, functioned not merely as a legal setback for Plaintiff, but as an affirmative signal to defendants that merits adjudication would be avoided and that the costs of abusive litigation could be sustained without consequence. Romano's statement confirms that signal was received, understood, and acted upon.

**Plaintiff's Direct Written Response**

**44.** After the limited scope attorney provided a partial refund upon the failure of settlement discussion with Romano, and his partnership specifically advised him not to file an appearance in the case, on November 1, 2021, Plaintiff wrote directly to Romano at his firm, Bengtson and Jestings LLP, memorializing the failed settlement discussions, and offering again to settle, creating a contemporaneous written record of the exchange and his statement of confidence that "the judge is on their side," to which Romano did not respond. Plaintiff copied his managing

partner Russel Bengston on the letter. **Defendant Romano received the letter and made no response disputing the characterization attributed to him.** The letter was written, and addressed to an audience, his own managing partner at a firm specializing in professional ethics, that would reasonably expect a correction if the characterization were false. Where a false and damaging characterization is communicated in writing to a party with both the standing and the professional obligation to correct it, and no correction follows, the silence itself becomes part of the record. Two weeks later, Romano announced that he changed firms and took the Toastmasters case with him. Plaintiff confirmed in writing with Bengston that his firm was withdrawing their appearance in the case. Two separate law firm partnerships, each with professional ethics concerns, reaching the same institutional conclusion about the professional risks created by the conduct of this litigation. Silence from Defendant Romano is not singular in this instance, and accounts for a number of instances besides this one when confronted with various indiscretions, with a record of each incident. Evidence of **joint-action**, **conspiracy**, and **access-to-courts Counts IV, V, IX.**

### G-Escalating Pressure - Financial Motive -The Escalation Pattern

**45.** With settlement foreclosed and Plaintiff unable to retain full counsel, Defendants Brouillard and Romano responded not by moderating their conduct but by intensifying it; filing multiple coordinated motions in rapid succession, often within minutes of each other, as documented in the court record. Attorneys representing adverse clients in the same litigation do not independently arrive at filing on the same subject matter at the same moment without communication. Timing coordination of that nature requires communication, planning, and a shared strategic objective, direct evidence of the conspiracy alleged in **Count V.**

**The Financial Incentive Structure**

**46.** The repeated denial of Plaintiff's negligence claim had eliminated the ordinary economic pressure toward settlement that Toastmasters International's liability exposure would

otherwise have created. With that pressure removed, both attorneys faced a financial incentive structure pointing entirely toward prolongation: Brouillard paid by the hour and financed by Chubb, Romano paid by the hour and financed by Toastmasters International. Neither bore any financial downside from the litigation's outcome, prolonged litigation was a revenue stream. Every motion filed, every hearing scheduled, every continuance forced by Plaintiff's medical needs generated additional billable hours. Abuse of process had become a business model financed by institutional clients with effectively unlimited litigation budgets against a Pro se litigant with limited means, not against a Plaintiff's attorney whose contingency practice is itself a business built for attrition, equipped to sustain it, and professionally hardened against it. The adversarial system tolerates prolonged litigation because it assumes both sides can endure it. That assumption doesn't hold when one side is a senior citizen forced to be self-represented. There's no comparison.

**Medical Consequence**

**47.** The cumulative effect of this sustained, coordinated escalation caused Plaintiff, approximately November 2021, to require psychiatric care at Butler Hospital in Providence, Rhode Island, entering a partial hospitalization program, partial rather than inpatient only because inpatient beds were unavailable at the time. In February 2022, Plaintiff was admitted inpatient to Butler for Extreme Distress disorder. Subsequent to these hospitalizations, Plaintiff was under the care of a psychiatrist, and two therapists she was seeing each week in order to cope. Under crushing debt, Plaintiff sold her house in Connecticut where she had lived for twenty-three years. and moved to Providence, a major move adding to the stress she was undergoing, on the heels of these hospitalizations. These facts support financial incentives and joint action allegations in **Count V.**

**H. A Dismissal Agreement Proffered Under Documented Duress July 2022-Rejected Unless Plaintiff included rights limiting language**

**48.** In July 2022, facing an imminent hearing and in acute psychiatric crisis, her doctors directing her to present herself to Kent Hospital Emergency Room, Plaintiff proffered a Stipulated Dismissal Agreement of all claims, crossclaims and counterclaims in docket #2017-0376. Defendants Brouillard and Romano refused to accept it unless Plaintiff added language, waiving her right to appeal and her right to file a § 1983 federal civil rights claim, with no financial consideration offered in exchange. Plaintiff refused and withdrew the offer. She then presented herself to the Kent Hospital ER, as directed; both her therapists and the ER physician confirmed this in writing to the court, resetting the imminent hearing. All communications were documented in writing and form part of the factual foundation for **Counts IV and V.I.**

**L. Another Dismissal Agreement Proffered Under Documented Duress, Without Limiting Language, Filed by Plaintiff, December 13, 2022 File Marked Closed "Dismissed"**

**49.** On December 12–13, 2022, during another period of acute psychiatric distress with multiple hearings reset six times on documented medical grounds and her doctor's written request to pause proceedings until Plaintiff retained counsel or recovered were ignored. Plaintiff proffered a second Stipulated Dismissal Agreement covering ALL claims, crossclaims and counterclaims under docket WC-2017-0376, without rights-limiting language. Facilitated through Chubb (Defendants Swift and Pasek), who were expressly informed of Plaintiff's psychiatric condition and inability to retain counsel, the agreement was filed pro se under Rule 41(a)(1)(B) and the case was marked "closed/dismissed" on December 13, 2022. Plaintiff's accompanying memorandum stated she was acting to protect her health. The memorandum also asserted that this should be the last document filed in the case. This sequence forms the factual foundation for **Counts V and VI**.

**J. Proof of Coordination Between Private Parties Joint-Action, Civil-Conspiracy Theories under *Dennis v. Sparks* and *Lugar***

**50.** This section is evidentiary of joint-action and civil conspiracy theories, demonstrating through Defendants' filings, statements, and conduct, they operated as coordinated actors, not adversaries, the shared objective: closing litigation without adjudication on the merits.

**The December 27, 2022, Fraudulent Dismissal Agreement**

**51.** Two weeks after Plaintiff's December 13, 2022, Dismissal Agreement closed docket WC-2017-0376 covering all claims, crossclaims, and counterclaims, Defendant Romano, acting in concert with Defendant Brouillard, filed a second "Stipulation of Dismissal" on December 27, 2022, without notice to Plaintiff, without her knowledge or consent. This second document purported to dismiss "remaining claims" between the individual defendants and Toastmasters.

**52.** The premise was false. Plaintiff's December 13, 2022, Agreement had been comprehensive by design, leaving no claims of any kind remaining. Both attorneys knew this when they signed it and again when they drafted the December 27 document. The Third-Party Complaint the second agreement invoked was superseded by a crossclaim years earlier, and had no independent legal existence when the December 27 document was filed, a fact Brouillard admitted in writing. Plaintiff repeatedly demanded, across multiple emails and court filings, that Brouillard withdraw the superseded claim. He refused every demand, for years, for reasons never disclosed.

**53.** The second agreement's own hedge, dismissing claims *"to the extent any claims remain"* is itself an admission, "*whether styled as crossclaim or a third-party claim.*" No attorney confident a claim survived would need that conditional language. The preservation of the Third-Party Complaint over years of written demands, followed by its invocation in a filing made without notice to the opposing party two weeks after the case was closed, is alleged to have served an undisclosed financial purpose, supported by the agreement's express disclaimer of "no interest,"

language that ordinarily functions to foreclose a claim to money or value transferred, not a claim with no monetary component. Plaintiff is entitled to discovery into whether any payment or thing of value passed among Defendants in connection with the December 27, 2022, agreement.

**53a.** In January 2023, Plaintiff wrote to Defendant Rex, warning of potential violations of 42 U.S.C. § 1983 and identifying Toastmasters International's in-house counsel, Aaron Charrouf, by name, as the person who authorized the transaction the December 27, 2022 Stipulation was designed to facilitate. The letter cited 42 U.S.C. §§ 1983 and 1985, and cited *Dennis v. Sparks*, 449 U.S. 24 (1980), as the controlling authority governing the conduct described. Prior to Charrouf's employment, Toastmasters International had no in-house counsel. Charrouf was hired in response to a newly created department, staffed by non-attorneys without legal training, giving members advice that caused harm, including advice given to the individual defendants in the underlying action that was the basis for their crossclaim of negligence against Toastmasters. Charrouf served as in-house counsel throughout the proceedings and is identified as a material witness with direct knowledge of Toastmasters International's institutional decision-making regarding the December 27, 2022, Stipulation. Plaintiff notes, without asserting it as dispositive, that Aaron Charrouf departed Toastmasters International in January 2023, the same month Defendant Rex received a letter identifying Charrouf by name as the person who authorized the transaction.

**54.** Chief Clerk Brenden Oates reopened the closed file and accepted December 27, 2022, agreement based on Romano's representation that remaining claims existed, a representation Section J establishes was false. A clerk's employee, Brittany A., had already concluded it was not proper to reopen a closed file and referred the matter to Oates. Oates proceeded based on his belief that a licensed attorney was telling the truth. This sequence implicates R.I. Gen. Laws §§ 11-41-

13 (obtaining signature by false pretenses), 11-18-1 (giving a false document to a public official), and 11-41-11.1 (unlawful appropriation).

**K. Plaintiff's February 8, 2023, Filing - Six Weeks' Notice to Defendants - Notification of Intention to Withdraw Dismissal Agreement - Assertion of Constitutional Violations, §1983 Rights Preserved.**

**55.** After discovering the fraudulent December 27, 2022, on January 8, 2023, one month later February 8, 2023, a delay due to continued poor health, Plaintiff filed a detailed Reply and Statement with the Washington County Superior Court, withdrawing and rescinding her December 13, 2022, Agreement on three grounds: **(1)** it was executed under documented medical duress; **(2)** the subsequent second filing constituted fraud on the court; and **(3)** her First and Fourteenth Amendment rights had been violated. She expressly reserved her § 1983 rights. In addition, Plaintiff cited all the statute violations cited in paragraph 54 above. That same day, the court treated her filing as a motion and scheduled a hearing for March 24, 2023, six weeks later. Defendant Romano filed an objection on March 13, 2023, eleven days before the hearing, proof that Rule 6(c)'s ten-day notice requirement had been satisfied. Their objection raised no denial of Plaintiff's Rule 11 assertions. It only reasserted the false premise for executing it was based on "remaining claims" which there were none. Critically, the R.I. Supreme Court later found Plaintiff had failed to comply with Rule 6(c), a conclusion Section K contradicts with the filing timeline.

**L. The March 24, 2023 Hearing - Rescission Granted without objection- Trial Scheduled - Pre-trial Order issued**

**56.** At the March 24, 2023, hearing, the Superior Court reviewed Plaintiff's February 8 filing along with her Reply to Defendants' March 13, 2023, objection, including email evidence demonstrating there were no "remaining claims." The Court was aware of Plaintiff's duress, the full record of medical excusals that had produced six documented continuances had been hand delivered to the judge in real time as they arrived by fax. The court granted rescission of the

December 13, 2022, Dismissal Agreement, telling Plaintiff three times during the hearing, ***"Now you will have your day in court."*** Critically, Defendants raised no objection to the rescission at any point during the hearing, not to the rescission itself, or to assert inadequate notice. No mention of Rule 6(c) or Rule 7(b)(1), and not even when Plaintiff repeated her rescission a second time on the record to ensure it had been heard. Under *Laplante v. Rhode Island Hospital*, 110 A.3d 261, 267 (R.I. 2015), that silence constituted waiver of any procedural challenge. Trial and pre-trial dates were agreed to by all parties.

**M-No Objection to Recission - Litigation Resumes; Full Compliance with Pre-Trial Orders**

**57.** Following rescission, the case was restored to the trial calendar and pre-trial orders were issued, further affirming the rescission's validity. Both Defendants fully complied, filing a combined 22 motions in limine, witness lists, and jury instructions. Brouillard filed a Motion to Dismiss two counts of Plaintiff's Abuse of Process claim; Romano filed a Motion for Summary Judgment for Toastmasters. All parties attended the April 21, 2023, pre-trial conference.

**58.** At that Pre-trial conference, upon learning dispositive motions were pending, the judge vacated the trial date and set June 5, 2023, as the hearing date for only dispositive motions to be heard; (later reset to June 20, 2023 due to another medical excusal from Plaintiff.) with all non-dispositive motions to be heard June 26th. The significance of Defendants' full compliance cannot be overstated: by participating in pre-trial proceedings, filing dispositive motions, and attending the conference without objection, Defendants ratified the rescission through conduct.

**Judicial Alignment**

**59.** Romano's Motion for Summary Judgment epitomized the preferential treatment he had come to rely on. It contained five pages of factual assertions that were not only "genuine disputed issues of material fact" but, in many instances, demonstrably false, and submitted "without a notarized affidavit" as required. Plaintiff wrote two letters notifying the court that the

motion was defective and filed a Motion for Sanctions for bad-faith conduct, requesting only that it be withdrawn, as responding to it would be highly burdensome, yet the court denied sanctions on May 15, 2023, three weeks before the scheduled hearing on the Motion for Summary Judgment, and directed Plaintiff to respond to the improper motion, despite having identified its defects; two letters and a Motion for Sanctions. Romano had objected to the Sanctions leaning on a false assertion that the dismissal agreement had been reinstated in the Pre-trial hearing and the court lacked jurisdiction to make any decision until Plaintiff filed a Rule 60 (b)motion to vacate the Dismissal Agreement, a Rule 3.3 violation. He then abandoned that position when the court denied sanctions. Romano drafted the denial order himself and submitted it, which the judge signed and entered. Defendant Romano's acceptance of this ruling without objection, consistent with his October 2021 statement to Plaintiff's limited-scope attorney expressing confidence, reinforced the dynamic Romano had previously predicted that the court was "on their side," and further emboldened conduct undertaken with the expectation of judicial alignment. The episode is presented as further evidence of judicial alignment Romano predicted in October 2021, and as an additional instance of differential treatment supporting the class-of-one claim in **Count I.**

**N-Motion to Enforce - Procedural Control and Suspected Ex Parte Contact**

**60.** The **pattern of controlling procedural sequencing** to avoid merits adjudication recurs. On May 26, 2023, Defendant Brouillard served a Motion to Enforce the Dismissal Stipulation, calendared on the June 5 date that was set exclusively for dispositive motions, along with Defendant Romano's Motion to Vacate the Scheduling Order set at the Pre-trial hearing that he filed right after the Pre-trial conference. Plaintiff objected to Defendant Brouillard, copied to Romano, regarding the calendaring of these two non-dispositive motions. She had not agreed to have the motions heard on the date set for dispositive motions only, rather than June 26 for all non-

dispositive motions. Brouillard responded only with "***when the motion is heard is for the judge to decide not you***," and did not withdraw or address Plaintiff's objection. Romano was copied and did not respond. The June 5 date was later continued to June 20 due to another medical excusal needed by Plaintiff. The two motions nonetheless remained calendared alongside the dispositive motions on the new date. Notably, Brouillard delivered the Motion to Enforce by hand, a one-hour drive from his office, departing from his universal practice of electronic filing. When Plaintiff asked directly, in writing, whether he had obtained his hearing date through a private or ex parte communication with the judge when he hand-delivered the motion, neither Romano (copied) or Brouillard denied it and did not address the question. Plaintiff does not allege ex parte contact as established fact; it's alleged as the question was raised in writing, was never answered or denied, and has never been examined by any court, including the Rhode Island Supreme Court.

## O. June 20, 2023, Hearing for Two Non-dispositive Motions and Two Dispositive Motions

61. The following facts recount what occurred in the June 20, 2023, hearing. Plaintiff is not challenging the June 20 ruling as a matter of law; she challenges the process by which it was produced and the joint actions of Defendants that led up to it and caused it, alleging a constitutional injury that occurred during the proceedings and provides further evidence of disparate treatment in support of **Count I,** due process deprivation in **Count III**, fraud in **Count VI**, and the right to trial **Count VIII**.

**62.** On June 20, 2023, all four pending motions were calendared: Brouillard's Motion to Enforce and Romano's Motion to Vacate the Scheduling Order, both non-dispositive, and Brouillard's Motion to Dismiss and Romano's Motion for Summary Judgment, both dispositive. Plaintiff objected to all four and came prepared to argue all of them. Notably, neither Defendant filed Replies to objections to their dispositive motions. Her objections refuted each and every false

assertion in their motions. After argument on the non-dispositive motions, and before either dispositive motions were heard, the presiding justice announced "before getting to the two dispositive motions," she then proceeded to rule on the two non-dispositive motions, placing on the record full knowledge of what was calendared to be heard that day, then recharacterizing the non-dispositive motions as motions for reconsideration of the March 24 rescission, ruling that Plaintiff didn't comply with rule 7 (1) (b), that Defendants had not received adequate prior notice before rescission; reinstating the Dismissal Agreement, mooting both dispositive motions without a hearing on the merits, terminating the case and abruptly leaving the room.

**63.** No motion for reconsideration was filed, served, briefed, or scheduled, and no such procedure was ever noticed to Plaintiff. No due process. Romano's Motion to Vacate built on a single factual assertion: that the April 21st pre-trial conference had reinstated the Dismissal Agreement. That assertion was false. Plaintiff documented the falsity in writing and again in oral argument, and the court itself confirmed on the record that the April 21st conference reinstated nothing. Brouillard's motion compounded the misconduct by rebranding the Dismissal Agreement a "consent order" that could not be rescinded, a knowingly false statement of law. Romano's motion quoted Plaintiff's February 8, 2023, notice of withdrawal while simultaneously misrepresenting that same notice as legally insufficient. Filing motions grounded in fabricated accounts of prior proceedings, when transcripts disproving those accounts are in the court's possession, constitutes a Rule 11 violation and a breach of PCR 3.3, particularly when the opposing party is a non-lawyer. *See In re Posas*, No. 2025-64-M.P. (R.I. Oct. 24, 2025). Fifteen false assertions, each identified, again asserting no jurisdiction insisting the court couldn't act unless the "reinstated" agreement was first vacated by Plaintiff; not a defense grounded in the merits but

a distress signal, consistent with Romano's own statement that 'the judge is on our side,' anticipating and benefiting from judicial alignment.

**64.** Through these coordinated misrepresentations and calendaring non-dispositive motions to be heard prior to the dispositive motions, Defendants secured termination of the case without adjudication on the merits. Plaintiff, who exposed the falsities and reasonably expected denial of the non-dispositive motions followed by a merits hearing on the dispositive motions, instead received neither. The result was a deprivation of process produced by falsehoods, strategic manipulation, and counsel's calculated misuse of procedural machinery to engineer a result created by manipulations of process and fabrications rather than by any lawful adjudicative process, reflecting the differential treatment **Count I** prohibits, the due process deprivation **Count III** addresses, the fraud **Count VI** documents, and the right to trial **Count VIII** protects.

**P. Defendants Own Conduct - Clear Evidence of Joint Action Under Color of Law - The Competing Proposed Orders - Documentary Evidence of Joint Action Under Color of Law.**

**65.** After the June 20 hearing, both Plaintiff and Defendant Brouillard submitted proposed orders memorializing the ruling. Plaintiff's proposed order incorporated the court's own transcript language, page 29, lines 1–6, where the justice had explicitly recharacterized Defendants' motions as motions for reconsideration of the March 24 rescission. Brouillard's proposed order omitted that recharacterization, describing only the outcome using the original motion titles, "enforcement" of the agreement and "vacating the scheduling order," thereby concealing the legal mechanism by which the Dismissal Agreement was "reinstated" and which terminated the case.

**66.** Plaintiff filed a formal written objection on June 30, 2023, along with her proposed order, stamped by the Clerk's Office and certified served on both Brouillard and Romano, identifying four specific defects in the proposed order: **(1)** it did not accurately reflect the facts; **(2)** it attempted to hide the basis of the ruling; **(3)** it contradicted Brouillard's own motion, which

asserted the Agreement was not withdrawn and it must be "enforced."**(4)** was direct admission his own prior legal position was false, as was Romano's that asserted it had already been "reinstated."

**Romano's Reply - A Telling Non-Denial**

**67.** Romano filed a reply asserting Plaintiff was attempting to "manufacture an error of law" by including the court's own recharacterization language. Romano did not assert Plaintiff's proposed language was factually inaccurate, an omission as significant as the assertion itself.

**68.** On September 1, 2023, the court rejected Plaintiff's proposed order and entered Brouillard's proposed order verbatim. The order that now memorializes the June 20 ruling conceals the legal mechanism by which the case was terminated, drafted by the party who benefited from it, adopted verbatim over a documented, timely objection, and entered.

**The Dispositive Inference - Provable from Defendants' Own Record**

**69.** The fabricated premise, the relief granted despite its contradiction on the record, Defendants' complete silence in the face of it, and Brouillard's drafting of an order that concealed the legal mechanism used, is fully consistent with Romano's October 2021 prediction that the court was "on their side," and is provable entirely from Defendants' own conduct, statements, and filings. No inference from ambiguous facts is required.

**70.** Neither attorney sought clarification after the ruling, refuted the false assertions underlying it, objected to receiving relief on grounds their own motions had not requested, or expressed any surprise that the court had recharacterized and resolved their motions on a basis they had never argued. Their conduct, complete acceptance of an irregular outcome without a word of objection or clarification, is itself evidence that the outcome was anticipated, and not unexpected.

**Q. Additional Acts Constituting State Action –**

**71.** The Joint-Action Framework with Concealment of Facts under *Lugar v. Edmondson Oil Co.* and *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970), applies a two-

prong framework to establish that Defendants acted under color of state law, a foundational element of **Counts V, VI, VII, and VIII**.

**72. First Prong — Deprivation Caused by Exercise of State Authority.** Throughout the case, Defendants' filings echoed each other's assertions, relied on factual claims contradicted by the existing transcript, and were timed in a manner consistent with creating pressure rather than resolution. The constitutional deprivation Plaintiff alleges was accomplished through the exercise of joint action of Defendants with state judicial power: the two non-dispositive motions Defendants filed were recharacterized into a dispositive ruling, terminating Plaintiff's case without adjudication of the two pending dispositive motions, or a trial on the merits.

**73. Second Prong - Willful Participation in Joint Activity with the State.** The order that terminated Plaintiff's case, authored by Defendant Brouillard and entered by the court, states: "Motion to Enforce the Dismissal Stipulation and Motion to Vacate the Scheduling Order Set at the Pre-Trial Hearing are hereby GRANTED, such that the parties' Dismissal Stipulation filed December 13, 2022, is hereby 'reinstated' in full force and effect. All other pending motions are mooted." The Order along with Plaintiff's proposed order are attached as **EXHIBIT A and B.**

**74.** Plaintiff does not challenge whether the order's entry was procedurally proper under Rhode Island law. She alleges that Defendants' own drafting choices independently establish willful participation. Neither motion was styled nor argued as a motion to reconsider the March 24 rescission or to "reinstate" the dismissal agreement. One asserted it had already been reinstated, and the other asserted it was still in force and effect, and must be "enforced," it had never been rescinded and needed a Rule 60b motion to vacate before it could be considered withdrawn, calling it a "consent order." Brouillard drafted the resulting order using the word "reinstated," a word irreconcilable with the relief his own motions sought, "enforcement." Romano accepted that

drafting choice without correction and despite objection to it. These are Defendants' own choices, provable from their own filed documents, requiring no assessment of the order's correctness.

**The Arc of Joint Conduct is Established from the Record Itself**

**75.** The dispositive four-part sequence: a factual narrative the court itself stated on the record was false; relief granted to the motion premised on that false narrative regardless; Defendants' acceptance of that relief without objection or surprise; and Brouillard's drafting of the order memorializing it and entered by the Court. Each element is independently documentable from the court record without inference or speculation.

**The Arc Began Years Earlier - Not on June 20, 2023**

**76.** The joint-action arc did not originate at the June 20 hearing. It began years earlier, with Brouillard's opposition to Plaintiff's Motion to Join Claims, a motion that served his own clients' interests, accompanied by a motion for sanctions against a pro se litigant; and later with Romano's acceptance of a sanctions ruling from a court whose jurisdiction he had simultaneously and formally disputed. **A pattern of contesting the court's authority while accepting favorable rulings** only when it served Defendants' interests is itself evidence of the coordinated posture. Defendants Brouillard and Romano are the principal conspirators in the scheme alleged throughout this Complaint: acting in concert with each other, and with the knowing financial and institutional support of Defendants Chubb, Rampe, Rafsol, Pasek, Swift, Toastmasters International, and Rex. They conspired to obstruct the due course of justice and deny Plaintiff equal protection of the laws, within the meaning of 42 U.S.C. § 1985(2) and (3), through a **sustained pattern of joint action.** The overt acts establishing the conspiracy, are documented in **Count V.**

**R. Chubb's Institutional Conduct; Documented Notice, Backdated Letter, Ethics Obstruction, and Explicit § 1983 Warnings Supervisory and Institutional Liability**

77. The liability framework for Defendants' institutional financiers, Chubb and Toastmasters International. Under *Farmer v. Brennan*, 511 U.S. 825 (1994), and supporting

authority including *Majorowicz v. Allied Mut. Ins. Co.* and *Continental Ins. Co. v. Bayless & Roberts*, a supervisor or financing entity's liability under § 1983 where it directly participated in the wrong, knew of the wrong and failed to stop or correct it, failed to oversee those who caused the wrong, or created a policy or custom that allowed the wrong to occur with all four pathways alleged here violates 42 U.S.C. §§ 1983, 1985, and 1986.

**78.** From October 2021 through February 2024, Plaintiff engaged in extensive written and oral communications with multiple levels of Chubb's claims hierarchy, and outside counsel, including every named Chubb defendant, providing specific, documented notice of Brouillard's unconstitutional litigation conduct and expressly demanding that Chubb, as the financing entity with ultimate authority over the defense, exercise that authority to halt the abuse and negotiate in good faith. All correspondence and communications are documented.

**Chubb Initiates Settlement - Brouillard Shuts It Down**

**79.** Shortly after the court granted Plaintiff's motion to amend her abuse-of-process counterclaim, on November 16, 2021, Chubb claims adjuster Teresa Nehez sent an email inviting Plaintiff to discuss settlement. Before any substantive discussion could occur, the overture was withdrawn. No settlement offer was made. Nehez and Penna (Nehez's supervisor) each separately confirmed, in writing, that discussion of resolution was stopped based on advice of counsel that settling with Plaintiff would expose their insured to a future comparative-negligence claim from Toastmasters International. This stated justification does not withstand scrutiny: Defendant Romano controlled the Toastmasters side of the underlying action, and any comparative-negligence claim against Nelson would necessarily have to be brought by Romano's own client against Brouillard's own client. That defendant Brouillard would cite a risk from the opposing party he was nominally adverse to, as a reason to forgo resolving an entirely separate claim against

his own clients, is not explicable as ordinary, independent defense strategy. It is consistent with, and further evidence of, the coordinated joint action alleged throughout this Complaint to continue to exploit Plaintiff's pro se status to their financial advantage, through collusion and joint action, that continued for another four years of billable hours for each attorney defendant. Plaintiff is entitled to discover just how many billable hours it represents.

**The False "Closed with Prejudice" Misrepresentation**

**80.** On January 17, 2023, after discovering the December 27, 2022, Dismissal Agreement, Plaintiff sent Defendant Swift a formal settlement demand, advising that the December 13, 2022, Dismissal Agreement was voidable on grounds of duress and fraud and representing an opportunity to settle before she moved to rescind it. The letter to Defendant Swift specifically identified the December 27, 2022 second Stipulation as 'a fraud upon the Court,' identifying by name the attorneys she believed had conspired to collect monies from Toastmasters International through the fraudulent document. The letter, referencing Claim No. 092018000033, demanding settlement to avoid a "42 USC: 1983 Civil Rights complaint that would include Chubb as a defendant," and providing a detailed accounting of her damages including legal costs, hospitalization costs and ongoing psychological support costs exceeding $50,000, which she offered to settle for. Defendant Swift received this communication at her Chubb email address dswift@chubb.com. She took no remedial action except to hire Nixon Peabody attorney Greg Deschenes to answer Plaintiff's letter on her behalf. Several months later, Ms. Swift left Chubb, where she had been employed for thirty years as a claims supervisor and a litigation analyst.

**Chubb Refuses Settlement Before and After Rescission**

81. One week later, on January 25, 2023, Attorney Gregory Deschenes wrote to

Plaintiff informing her he was "responding to Plaintiff's January 17, 2022 letter to Deborah Swift of **Chubb Insurance, ("Chubb.**") The subject line of his letter states:

**Re: Clinton v Nelson, et al – Chubb Claim No. 092018000033**

It further states: "This is to inform you that our law firm (Nixon Peabody) has been retained to represent **Chubb and its employees**, including Ms. Swift, Jeffrey Pasek, Laurie Penna, and Tersa Nehez, in this matter," rejecting Plaintiff's settlement offer, and reasserting that the dismissal agreement had closed the case; a unilateral stipulation filed under Rule 41(a)(1)(B) without court order, without counsel's assent, and without consideration while under documented duress, cannot operate as a dismissal with prejudice by court order. Without consideration, it doesn't even rise to the level of a contract and recission is the appropriate method to withdraw it. His letter claims ownership of the claim for Chubb not Vigilant Insurance. With the exception of Jeffery Pasek's email explaining that "Vigilant Insurance Company is the **Chubb division/writing company** that issues the policy to our insureds," every reference to this "matter" gives ownership of the claim to Chubb and only Chubb. After service of this complaint on Chubb's legal department at their listed statutory address, Mr. Batistini of Nixon Peabody was asked by Chubb to contact Plaintiff and inform her that he was writing representing Vigilant Insurance Company, and requested an amendment of the complaint removing any reference to Chubb Limited be replaced with Vigilant Insurance Company. In fact, the only place in the original complaint that made reference to Chubb Limited is the first page/caption that included in the defendant list, **Chubb ltd. a/k/a and d/b/a Vigilant Insurance Company,** and by this amendment it has been replaced with Vigilant Insurance Company as requested. Any mention of Chubb Limited (ltd) in this amended complaint is only pursuant to asserting the legal basis (apparent authority, and agency estoppel) regarding the use of "Chubb" throughout the complaint found in §**§ 20, 84a 120a, and** this paragraph (**§ 81).**

**82.** In February 2023, prior to the March 24, 2023 hearing, Plaintiff wrote to Defendant Rafsol and their counsel at Nixon Peabody, Greg Deschenes, requesting settlement prior to withdrawing her December 13, Dismissal. These efforts were fruitless. On February 17, 2023, Defendant Rafsol sent Plaintiff a letter that was deliberately backdated to appear it was sent the same day Plaintiff filed her February 8, 2023 withdrawal of the Dismissal Agreement, feigning ignorance of that document. Before the March 24, 2023, rescission hearing, Plaintiff wrote to Defendant Rafsol advising him that she would likely succeed in voiding the Dismissal Agreement, that litigation would resume, and requesting a good-faith settlement offer, asserting potential § 1983 claims. Rafsol refused. After the March 24 hearing **granted rescission**, changing the legal circumstances, Plaintiff communicated with Rafsol through Attorney Deschenes, advising of the rescission and renewing her settlement request. Chubb's position didn't change, declining to negotiate despite rescission being granted.

**Ethics Complaint Obstruction**

**83.** Plaintiff attempted to file a formal ethics complaint through Chubb's own internal compliance reporting channel, the process Chubb publicly promotes through its Code of Ethics and "Rule of Law Fund." Chubb's agents disrupted and obstructed Plaintiff's completion of that complaint, preventing her from accessing the very internal remedial process Chubb represents to the public as available for reporting ethical violations.

**84.** Plaintiff's April 17, 2023 letter to Defendant Rampe, sent by overnight delivery, receipt confirmed, could not have been more explicit: it stated that every decision violating her civil rights and due process "will become part of a 42 U.S.C. § 1983 complaint, including but not limited to individuals working for Chubb"; that Chubb's conduct of "supporting, allowing, and tolerating illicit and fraudulent litigation" made it "complicit in the violation of my civil right to

due process"; and that "Chubb has authorized fraudulent litigation, being fully aware of unethical and illegal conduct of Defense counsel Stephen Brouillard." Defendant Rampe, Head of North American Claims for Chubb, received the letter, took no remedial action, made no settlement offer, thereby rejecting her settlement demand, and authorized continued financing of the litigation.

**84a** This pattern extends to written correspondence from successive retained defense counsel, Kurt Mullen, Deschenes' successor at Nixon Peabody, who repeatedly identified the matter using the subject line in his email "Chubb's claim against their insured Lisa Nelson." and stated directly that "Chubb would prefer to let the appellate process run its course before determining whether it would be productive to discuss resolution," identifying "Chubb," not Vigilant or any specific subsidiary, as the party exercising strategic decision-making authority over the litigation. This pattern also extends to how Chubb employee defendants, publicly identify their own employment: Pasek, Swift and Rampe each list their employer as "Chubb" on their respective public LinkedIn profiles, and Rafsol lists his employer as "ACE Group," the predecessor name of the Chubb enterprise prior to the 2016 merger in which ACE Limited acquired The Chubb Corporation and the combined company adopted the Chubb name, none of these identifying Vigilant by name. Emails with Nixon Peabody attorney Kurt Mullen (February 1, 2024 4:54 PM) confirm that attorney "Greg Dechenes contacted me again to inform me that Kevin Rampe asked him to communicate with me about offers to settle the matter," and that "he would continue to represent Deborah Swift on behalf of Chubb, despite that she is no longer employed by Chubb." Chubb's own corporate communications confirm this structure. An April 9, 2026, press release, issued by Chubb Limited and distributed via PR Newswire, announced Kevin Rampe's appointment as "Senior Vice President, Chubb Group, Global Claims Officer," reporting to Evan G. Greenberg, described in the release as "Chairman and Chief Executive Officer, Chubb Limited

& Chubb Group." The release's own corporate description states that Chubb Limited is the "[p]arent company," while "Chubb" not Chubb Limited specifically "employs approximately 45,000 people worldwide." This pattern continues in the correspondence giving rise to this amendment. In every communication to date, the latest Nixon Peabody counsel, informing Plaintiff that he represents Vigilant Insurance, but has referenced only "Chubb" or "Chubb's counsel" as the party whose preferences, decisions, and instructions were being conveyed to Plaintiff. At no point has counsel for Vigilant indicated that he consulted with, or received instruction from, any individual identified as being at Vigilant specifically. Vigilant's presence in this litigation, even now, continues to be reflected only through it being the entity that issued the policy, and Vigilant's counsel, on advice of Chubb, insisting that the name of Chubb ltd, be removed from the caption page of this complaint. Accordingly, for all intents and purposes of this lawsuit it appears that Chubb and Vigilant are one and the same entity.

## S. Direct Evidence of Disparate Treatment, the Judicial Environment Defendants Exploited

**85.** Before the June 20 hearing began, without evidence, the court openly criticized Plaintiff, invoking her pro se status, accusing her of filing too many pages, citing no case law, and being rude to staff. She threatened to enjoin further filings. Plaintiff's communications with court staff were all in writing and available to the court; none were introduced or referenced. When Plaintiff attempted to defend herself noting she was not pro se by choice, the court responded, ***"I don't care."*** Plaintiff objected three times to being shut down, but the court wouldn't allow her to speak. Defendants' multiple Rule 11 violations in both their non-dispositive motions that day received no scrutiny whatsoever.

**86.** Plaintiff has alleged intentional differential treatment, hostility, selective enforcement of rules, departure from mandatory procedures, selective acceptance of falsehoods, selective

rejection of accurate law, and the use of judicial machinery to effectuate private misconduct. Under controlling First Circuit precedent, these allegations state a cognizable class-of-one equal protection claim requiring neither dismissal nor further factual development at the pleading stage.

**87.** The following documented instances of disparate treatment, each provable from the record **including but not limited to**: **(a)** Romano's own Motion to Vacate quoted the precise paragraph of Plaintiff's February 8 filing stating her intent to withdraw, while simultaneously arguing Defendants had received no adequate notice of that intent, (reasoning the court took up.) His motion contained the refutation of his own argument. **(b)** Before announcing the June 20 ruling, the court expressly acknowledged it had not reinstated the Dismissal Agreement at the April 21 hearing, directly contradicting the central premise of Romano's motion, which the court nonetheless granted. **(c)** At the March 24 hearing, the trial justice acknowledged Plaintiff's evidence of fraud and duress before granting rescission. At the June 20 hearing, the same justice found she had presented "no evidence" of fraud or duress, directly contradicting her own prior recitation three months earlier, which constitutes a self-contradictory factual determination, an internally inconsistent adjudication, and an irrational departure from mandatory procedure that the First Circuit recognizes as intentional differential treatment and animus under its Class-of-One doctrine. **(d)** The February 8, 2023, filing moved the court to schedule the March 24 hearing, yet on June 20 the court found Plaintiff had failed to file a written motion and didn't comply with Rule 7(b)(1), despite the court's own prior scheduling action of calling for the hearing, confirming compliance. The court never invoked Rule 6 ( c) it was presented by Defendant Romano for the first time in his appeal document. These misapplied rules were affirmed by the RI Supreme Court **(e)** Following rescission, both Defendants agreed to trial dates, complied with pre-trial orders, filed 22 motions in limine, witness lists, jury instructions, and dispositive motions over

three months, yet the court found they had not assented to rescission. **(f)** Neither Defendant's motion requested "reinstatement" of the Dismissal Agreement. The decision "reinstating" the dismissal, on June 20, 2023, was the court's own Sua sponte recharacterization, relief no party had asked for. **(g)** At a December 14, **2021** hearing, the court selected Brouillard's competing proposed order over Plaintiff's, using a single typographical error made while Plaintiff was awaiting hospital admission for extreme distress disorder, which the court acknowledged. He then attempted to use this error to eliminate her operative complaint, in his Motion to Dismiss Two Counts of Plaintiff's Abuse of Process Counterclaim, which was never heard due to being mooted. Defendants' false assertions went unexamined. **(h)** On appeal, Defendants cited for the first time, Rule 6 (c), *Resendes v. Brown*, and *Mendes v. Kirshenbaum*, none were raised before the trial court, and the R.I. Supreme Court adopted all three without applying its own raise-or-waive doctrine. Plaintiff pointed this out, it was disregarded. **(i)** The selective application of an objectively inapplicable subsection of a mandatory procedural rule, 15 ( c) to defeat a motion that would have established Toastmasters negligence liability, constitutes a departure from mandatory procedure of the kind the First Circuit recognizes as actionable class-of-one discrimination under *Barrington Cove Ltd. P'ship v. R.I. Hous. & Mortg. Fin. Corp.*, 246 F.3d 1, 7–8 (1st Cir. 2001). A represented party filing the identical motion would have obtained an immediate correction on the record, a different outcome. Plaintiff, unrepresented, could not command that correction and the misapplication stood even after a motion for reconsideration highlighting the issue. These misapplications occurred in 2020 and establish the class-of-one discrimination alleged herein was not an isolated episode but a consistent and persistent feature of the entire proceeding. **j)** On August 29, 2023, before the September 1 order was entered, Plaintiff filed a fifteen-page objection raising, with supporting case law, every legal argument at issue in this complaint. *Sua sponte* reconsideration without

notice, relief granted that wasn't requested. Defendants' consent to recission through conduct under Rule 1.4, misapplication of Rule 7(b), and **the pattern of exploiting Plaintiff's forced pro se status** and medical condition. The superseded Third-party complaint, the reopening of the case to file a fraudulent document and more. That filing was disregarded. The June 20 decision was memorialized in the September 1 order, entered verbatim as drafted by Brouillard without taking Plaintiff's proposed order into consideration. The same arguments, raised again on appeal to the R.I. Supreme Court, were disregarded. The pattern of disregard is itself pleaded as independent evidence of disparate treatment, a class-of-one constitutional violation rooted not in individual judicial error but in the institutional conditions that made such disregard predictable, unmonitored, and unremedied. Because Defendants acted under color of state law through joint participation in the challenged conduct, the disparate procedural treatment documented above triggers class-of-one scrutiny under the Equal Protection Clause.

**The Mill Road Realty Dispositive Comparison**

**88.** Two months before affirming the ruling in Plaintiff's case, the Rhode Island Supreme Court issued *Mill Road Realty Associates, LLC v. Town of Foster*, 326 A.3d 1085 (R.I. 2024), holding that when a trial justice rules *Sua sponte* on a theory first raised at the hearing, the parties must receive notice and an opportunity to present evidence and argument, and vacating the Sua sponte ruling on that basis. The **factual pattern is identical to Plaintiff's** June 20 hearing. **The only distinction: the parties in *Mill Road Realty* were represented by counsel.** Plaintiff was self-represented. Same facts, different outcomes, the sharpest possible statement of the class-of-one equal protection claim. The First Circuit requires a class-of-one plaintiff to identify comparators with an 'extremely high degree of similarity' to themselves. *Back Beach Neighbors Committee v. Town of Rockport,* 63 F.4th 126, 130-31 (1st Cir. 2023). *Mill Road Realty* satisfies

that standard: it is the same court, the same legal principle, the same procedural mechanism; Sua sponte recharacterization without notice applied to legally indistinguishable facts two months apart. The only variable is representation status. The Rhode Island Supreme Court's affirmance of the ruling in Plaintiff's case was **issued two months after** *Mill Road Realty. Clinton v. Babcock et al.,* No. 2023-310-Appeal (WC 17-376) (R.I. 2024)

### T. The Coordinated Structural Mechanism That Produced the Constitutional Violation

**89.** The conduct across Sections A through S was not a series of isolated events. Each act, forced pro se status, closure of the negligence claim, refusal to discuss settlement or mediation, escalating pressure, two coerced dismissal agreements, the fraudulent reopening, calendaring non-dispositive motions prior to dispositive motions, the June 20 termination, and the September 1, 2023, order concealing the mechanism, occurred in deliberate sequence, each step building on the one before it. Chubb and Toastmasters financed and enabled the entire sequence throughout, while being fully informed and warned of constitutional violations.

**90.** What Plaintiff experienced over seven years was not litigation. Litigation has rules, equal treatment, and a genuine purpose. What occurred was ***the systematic deployment of legal process as a weapon,*** financed by institutional defendants with unlimited resources, wielded by attorneys who relied on judicial outcomes in advance, designed to destroy a self-represented litigant's health, resources, and will, before her claims could reach a merits hearing. Constitutional injury is not the loss of a case, it is **the loss of the right to have one,** accomplished through joint action of systematic deprivation of due process, notice, and impartial adjudication on the merits.

### The Human Cost and the § 1983 Purpose

**91.** The full human cost of the campaign ***cannot be reduced to a legal pleading.*** It is measured in psychiatric hospitalizations; in years of twice-weekly therapy required simply to function; in two Dismissal Stipulations signed without counsel, without compensation, and

without genuine choice; and in a judicial promise spoken from the bench in open court "Now you will have your day in court," and then broken. Congress enacted 42 U.S.C. § 1983 for exactly this circumstance: to provide a federal forum when the ordinary mechanisms of a state's own judicial process have been turned against the very rights they exist to protect, and no other remedy remains to protect the vulnerable. Section T ends with a precise statement of what this Court is being asked to do: examine and redress the cumulative, documented product of conduct described in Sections A through S, the coordinated structural mechanism that permanently eliminated Plaintiff's right to be heard on the merits, while being exploited. **This federal court is the only forum in which that mechanism, and injury it caused, can be examined and redressed.**

## CLAIMS FOR RELIEF

**92.** The counts that follow establish that Defendants' joint participation with the coercive power of the state deprived Plaintiff of constitutional rights, each independently actionable under 42 U.S.C. §§ 1983, 1985, 1986 and fully developed in the corresponding count.

**93.** **The right to equal protection of the laws under the Fourteenth Amendment,** violated through the systematic application of a dual standard of procedural justice that disadvantaged Plaintiff as a self-represented litigant at every stage of the proceedings, established by direct comparison to a represented litigant's treatment on an identical procedural question two months earlier by the same court, as set forth in Count I. *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000); *Haines v. Kerner,* 404 U.S. 519 (1972); *Turner v. Rogers*, 564 U.S. 431 (2011)

**94.** **The right to an impartial adjudicator and the liberty to contract for counsel under the First, Fifth, and Fourteenth Amendments,** violated through Defendants' own conduct anticipating and benefiting from judicial alignment Defendant Romano described in advance, and through tortious interference depriving Plaintiff the ability to retain counsel, set forth in **Count II.**

*Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 (2009); *In re Murchison*, 349 U.S. 133 (1955). *re Aiken County*, 725 F.3d 255 (D.C. Cir. 2013) *United States v. Microsoft Corp.*, 56 F.4th 709 (D.C. Cir. 2022)

**95. The right to due process of law under the Fourteenth Amendment,** violated through the absence of adequate notice, the denial of a meaningful hearing before a neutral decision-maker, the coerced extraction of dismissal agreements during documented medical crisis, and the permanent termination of Plaintiff's case through procedural mechanisms no rule authorized, as set forth in **Counts III, VI, and VII.** *Mathews v. Eldridge*, 424 U.S. 319 (1976); *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306 (1950); *Goldberg v. Kelly*, 397 U.S. 254 (1970) *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 433-35 (1982).

**96. The right to petition the government for redress of grievances and the right of access to the courts under the First and Fourteenth Amendments,** violated through the systematic closure of every procedural avenue to Plaintiff's negligence claim through rulings that were substantively pretextual and deliberately misdirected, resulting in the permanent extinguishment of a legally cognizable claim that could not be defeated on its merits, as set forth in **Counts IV, VII, and VIII**. *Christopher v. Harbury*, 536 U.S. 403 (2002); *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 433-35 (1982).

**97. The right to be free from conspiracy to interfere with civil rights under the First and Fourteenth Amendments,** violated through Defendants coordinated multi-year campaign, financed by institutional defendants and executed by attorney defendants, to deprive Plaintiff of due process, equal protection, access to the courts through the deliberate and systematic misuse of judicial machinery, as set forth in **Count V.** 42 U.S.C. §§ 1985(2), 1985(3), 1986.

**98. The right to be free from fraud upon the court and constitutional deprivation through deliberate misuse of judicial machinery,** violated through Defendants' fabrication and

filing of instruments designed to corrupt the judicial process, induce public officials to act on false representations, conceal financial transactions from Plaintiff, and permanently extinguish Plaintiff's claims without adjudication on the merits, as set forth in **Count VI.** 42 U.S.C. § 1983; R.I. Gen. Laws §§ 11-18-1, 11-41-13, 11-41-11.1; *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115 (1st Cir. 1989); *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991).

**99. The right to trial and to have legally cognizable claims adjudicated on their merits under the Seventh Amendment, Article I, Section 15 of the Rhode Island Constitution, and the Due Process Clause of the Fourteenth Amendment,** violated through Defendants' engineering of a procedural termination through a Sua sponte recharacterization that no rule authorized, no party requested, and no prior court was asked to examine as the product of Defendants' deliberate misconduct, as set forth in **Count VIII.** *In re Murchison*, 349 U.S. 133 (1955); *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 (2009).

**100. The right to be free from abuse of process and malicious prosecution deployed as instruments of constitutional deprivation,** violated through Defendants' sustained seven-year **pattern of vexatious litigation**, coordinated bad-faith filings, deliberate refusal to engage in settlement or mediation despite multiple documented attempts, and the financially motivated prolongation of proceedings designed to coerce capitulation rather than achieve settlement or adjudication, as set forth in **Counts IX and X** . 42 U.S.C. § 1983; *Lugar v. Edmondson Oil Co. Dennis v. Sparks*, 449 U.S. 24, 28-29 (1980)

**101. The right to be free from conscience-shocking state-enabled misconduct and the deliberate infliction of severe emotional distress as a coercive mechanism,** violated through Defendants' intentional exploitation of Plaintiff's documented psychiatric vulnerabilities, their deliberate scheduling of hearings over a treating physician's written objection, their extraction of

dismissal agreements during acute medical crisis, and their sustained campaign that produced three acute psychiatric hospitalizations, as set forth in **Count XI.** 42 U.S.C. § 1983; *County of Sacramento v. Lewis,* 523 U.S. 833 (1998).

**COUNT I - Violation of Equal Protection - Class of One (42 U.S.C. § 1983)**

**Against Defendants Brouillard and Romano as direct actors; Chubb and Toastmasters International**

**102.** Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

**103.** The Equal Protection Clause forbids intentional differential treatment of similarly situated persons without rational basis. A § 1983 plaintiff may bring an equal protection claim as a "class of one" where they are intentionally treated differently from others similarly situated without rational basis. *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000). The First Circuit applies *Olech* through a two-part test requiring selective treatment and an impermissible purpose, including malicious or bad faith intent to injure. *Rubinovitz v. Rogato*, 57 F.3d 2, 6 (1st Cir. 1995); *Yerardi's Moody Street Restaurant & Lounge, Inc. v. Board of Selectmen*, 878 F.2d 16, 21 (1st Cir. 1989). Courts are required to apply more lenient standards to pro se litigants. *Haines v. Kerner*, 404 U.S. 519 (1972). *Engquist v. Oregon Dep't of Agriculture*, 553 U.S. 591 (2008), bars class-of-one claims only in contexts involving subjective, individualized, discretionary judgments such as public-employment evaluations, and does not apply where mandatory procedural rules must be applied uniformly. The First Circuit recognizes Class-of-One claims where government actors **depart from mandatory procedures, apply rules unevenly**, or **credit one party's false assertions while rejecting another's accurate ones**. *Rubinovitz v. Rogato*, 60 F.3d 906 (1st Cir. 1995); *Cordi-Allen v. Conlon*, 494 F.3d 245 (1st Cir. 2007); *Yerardi's Moody St. Restaurant v. Bd. of Selectmen*, 878 F.2d 16 (1st Cir. 1989); *Barrington Cove Ltd. P'ship v. R.I. Hous. & Mortg. Fin. Corp.*, 246 F.3d 1 (1st Cir. 2001). These departures are not discretionary in the *Engquist* sense, they are unconstitutional.

**104.** Once private actors coopt state power, then selective enforcement, uneven application of rules, and tolerance of their own violations are treated as state action for Equal Protection purposes. Defendants' joint action with judicial officers did more than create a single constitutional deprivation; it created the environment in which repeated departures from mandatory procedures became possible, producing the same pattern of disparate treatment that the First Circuit recognizes as actionable in Class-of-One claims. *Back Beach Neighbors Committee v. Town of Rockport,* 63 F.4th 126, 130-31 (1st Cir. 2023); Plaintiff challenges the selective application of mandatory rules governing notice, raise-or-waive, Rule 41(a)(1)(B), misapplied Rule 15(c) relation back, Rule 20 permissive joinder, *Sua sponte* dismissals, absent judicial neutrality. Each instance of differential treatment documented in Section S, paragraph 87, involves the selective application of mandatory procedural rules with objective content, not the exercise of inherently subjective, individualized discretion that *Engquist* contemplated. They are not judgment calls. They are rules. Their selective application to Plaintiff's detriment, while Defendants' greater and more numerous violations went unaddressed, places this case squarely within the class-of-one territory *Engquist* left intact.

**105.** Visible disparity begins within Plaintiff's own case, applied to any comparable motion by a represented party. The differential treatment is documented within the case and by direct external comparator. Within the case, including but not limited to: Defendant Romano's Motion to Vacate the Scheduling Order rested on a factual premise the court itself confirmed was false, yet Defendants received the dispositive remedy they never formally requested, while Plaintiff received none of the relief she sought based on accurate, documented arguments. Defendants' raise-or-waive violations were excused; Plaintiff's preserved arguments were completely disregarded. The court recharacterized Defendants' two non-dispositive motions as

motions for reconsideration, applying the principle that substance prevails over form, while her June 20, decision refused to see content over form for Plaintiff's February 8, 2023, filing, as the functional equivalent of a motion despite it having moved her to call a hearing; Before argument began at the June 20 hearing, Plaintiff was admonished without evidentiary support while Defendants' multiple Rule 11 and Rule 3.3 violations went unaddressed. Defendant Romano's own Motion to Vacate the Scheduling Order quoted verbatim the precise paragraph of Plaintiff's February 8 filing stating her intent to withdraw the Dismissal Agreement, proof that Defendants had actual written notice of her intent six weeks before the March 24 hearing, while claiming in the same motion Plaintiff had not provided at least 10 days notice, with the court taking that up. Two letters and a motion for sanctions for a Motion for Summary Judgment filed in bad faith, sanctions denied; Plaintiff directed to respond to it. Objection to the drafting of the Order for the June 20, 2023, decision, completely disregarded. Motions to Amend are freely given, yet Plaintiff's motion to add a negligence count was denied by applying the subsection of Rule 15(c) that governs new parties, not new claims against an existing party. **A few examples of differential treatment.**

**106.** The external comparator is direct and documentary. Two months before affirming the lower court's ruling in Plaintiff's case, the Rhode Island Supreme Court issued *Mill Road Realty Associates, LLC v. Town of Foster*, 326 A.3d 1085 (R.I. 2024), holding that when a trial justice rules *Sua sponte* on a theory first raised at the hearing without giving the parties notice and an opportunity to be heard, this is unfair, vacating the ruling and remanding. The procedural defect condemned is identical to the defect in Plaintiff's case. The Court declined to apply the same principle to Plaintiff's appeal two months later. No legally cognizable distinction exists between the two cases except that *Mill Road Realty* involved represented parties and Plaintiff was self-represented, *Clinton v. Babcock et al., No. 2023-310-Appeal* (WC 17-376) (R.I. 2024). Disparate

treatment reflects discretion exercised with an unequal hand, against a pro se litigant, **a pattern the Fourteenth Amendment forbids** regardless of a rule's facial neutrality, and fulfills the First circuit requirement for comparators with an 'extremely high degree of similarity' to themselves. *Back Beach Neighbors Committee v. Town of Rockport,* 63 F.4th 126, 130-31 (1st Cir. 2023).

**107.** The hostility and disparate treatment were not merely background; they were the mechanism that enabled Defendants' private misconduct to be carried into effect through judicial machinery. Under *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 941-42 (1982), *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970), and *Dennis v. Sparks*, 449 U.S. 24, 28-29 (1980), private actors who obtain significant aid from judicial power, act under color of state law. The dual standard applied to Plaintiff, excusing Defendants' violations while penalizing and criticizing Plaintiff's compliance, created the environment in which Defendants could accomplish, through procedure, what they couldn't accomplish on the merits. The class-of-one disparity and the joint-action conspiracy are both parallel and independent constitutional wrongs. Either one alone is sufficient to establish a deprivation of rights; together they reveal a coordinated pattern of misconduct that no constitutional system tolerates, especially toward the constitutionally recognized vulnerability of an unrepresented litigant.

**108.** The class-of-one disparity documented in this Count and in Section S is not separate from the joint action documented in Section J and also **Count II Deprivation of the Right to Counsel and Interference with Liberty to Contract.** It is the condition that made the joint action viable. Defendants' conduct in invoking the Third-Party Complaint without notice, filing the Motion to Enforce by hand-delivery outside normal practice, and dismissing Plaintiff's written objection to motion scheduling with "***when the motion is heard is for the judge to decide not you***" each reflects a calculation that procedural objections by a self-

represented litigant would not receive the scrutiny a represented party's objections would command. A represented party who raised a contemporaneous written objection to the calendaring of a non-dispositive motion alongside dispositive motions against a previous agreement, would not have had that objection dismissed without response. The pro se environment documented in Section S, in which Defendants' Rule 11 and Rule 3.3 violations were excused while Plaintiff's unsubstantiated procedural conduct was admonished and threatened with sanctions, was not merely the backdrop against which the joint action occurred, it was the mechanism that enabled it. The systematic use of Plaintiff's pro se status as a lever to accomplish through procedure what could not be accomplished on the merits. The attitude this environment enabled is perhaps most directly expressed in Defendant Brouillard's written response to Plaintiff's request for mediation during the appellate proceedings: ***"You don't have a chance of winning this appeal. We don't want to give you anything."*** That statement, made in writing, reflects confidence that the pro se environment, documented in this Count, had made the outcome a foregone conclusion, a confidence Defendant Romano expressed at the trial level in October 2021 and Defendant Brouillard expressed at the appellate level in 2023. Both statements are documented. Confidence that a non-lawyer would be treated differently to a lawyer's benefit, as established by the factual record documented in Section O above. Plaintiff alleges that Defendants Brouillard and Romano deliberately exploited a judicial environment they had reason to believe would operate on unequal terms, as Defendant Romano's October 2021 statement confirms, filing coordinated motions, false premises, and a concealing order into that environment with the calculated confidence that what they filed would be accepted and what Plaintiff filed would be rejected. The equal protection injury Count I addresses is not what the court did. It is what Defendants did, knowing what the court would do. That exploitation of a constitutionally

compromised judicial environment, with documented foreknowledge of its inequality, is the independent wrongful conduct actionable under 42 U.S.C. § 1983 through the joint action framework of *Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982)

**COUNT II - Deprivation of the Right to Counsel and Interference with Liberty of Contract (42 U.S.C. § 1983)**

**Against Defendants Brouillard, Romano, Chubb, and Toastmasters International**

**109.** Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

**110.** Defendants' intentional, sustained, abusive, and ethically compromising litigation conduct, tortiously interfered with Plaintiff's ability to retain counsel, causing Rhode Island attorneys to decline representation even when offered substantial compensation. As documented in Section B above, two Rhode Island law firms declined representation after reviewing the file, with many more reported to the court on the record, concluding that involvement would trigger mandatory reporting requirement obligations. One after a direct conversation with Defendant Romano in which he described the judicial outcome as predetermined. The liberty protected by the Due Process Clause encompasses "the right of the individual to contract." *Meyer v. Nebraska*, 262 U.S. 390, 399 (1923). The right to retain counsel of one's choosing is an exercise of that liberty. Plaintiff alleges that Defendants affirmatively created conditions under which the exercise of that liberty became impossible, by conduct so ethically compromised that experienced Rhode Island practitioners recognized involvement as a professional risk their firms were unwilling to assume, despite financial compensation. This deprivation was accomplished through joint action with state judicial machinery, making it actionable under 42 U.S.C. § 1983.*Dennis v. Sparks*, 449 U.S. 24, 27-28 (1980); *Tower v .Glover*, 467 U.S. 914, 920 (1984)

**COUNT III - Violation of Procedural and Substantive Due Process (42 U.S.C. § 1983)**

**Against Defendants Brouillard, Romano, Chubb, Pasek, Swift, Rafsol, Rampe, Toastmasters International, and Daniel Rex**

**111.** Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

**112.** The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner by an unbiased adjudicator. *Mathews v. Eldridge*, 424 U.S. 319 (1976). Defendants, acting individually and in concert, deprived Plaintiff of procedural due process by filing non-dispositive motions that became the occasion for a recharacterization no party requested, without notice to Plaintiff or an opportunity to respond, in violation of *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950), *Goldberg v. Kelly*, 397 U.S. 254 (1970), and *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 433-35 (1982); by supplying a factual narrative Defendants' own prior filings contradicted; and by engineering a result that mooted dispositive motions and avoided adjudication on the substance entirely.

**113.** Defendants deprived Plaintiff of substantive due process through a sustained **pattern of abuse of process**, fraud, and conspiracy specifically designed to prevent Plaintiff's claims from being heard on the merits, conduct that shocks the conscience under *County of Sacramento v. Lewis*, 523 U.S. 833 (1998), and serves no legitimate governmental interest. Defendants Chubb, Pasek, Swift, Rafsol, Rampe, are liable under this Count on theories of deliberate indifference under *Farmer v. Brennan*, 511 U.S. 825 (1994), active financing with knowledge, and institutional policy and custom under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), as established by the factual record documented in Section O above.

**COUNT IV - Violation of First Amendment Right to Petition and Backward-Looking Access to Courts (42 U.S.C. § 1983)**
**Against Defendants Brouillard, Romano, Chubb, Pasek, Swift, Toastmasters International**

**114.** Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

**115.** The First Amendment guarantees the right to petition the government for redress of grievances, including the right of access to courts, not merely the right to enter a courthouse, but the right to have a legitimate claim heard and decided on its merits through a judicial process that is not systematically corrupted by the opposing parties' deliberate misuse of judicial machinery. *Christopher v. Harbury*, 536 U.S. 403, 413-415 (2002). This is a backward-looking access-to-courts claim. Plaintiff's underlying claims are permanently lost. No state forum remains. The injury is final and irreversible. Under *Christopher*, the three required elements are satisfied: the lost claims are Plaintiff's right to merits adjudication of her state-court action, including the negligence claim systematically closed through coordinated conduct; the remedy sought is compensatory and punitive damages for the permanent extinction of those claims; and the predicate acts are Defendants' sustained abuse of process, coordinated vexatious pleadings, financing of bad-faith litigation across seven years, engineering the June 20, 2023 termination without adjudication on the merits. Defendants' conduct did not merely chill Plaintiff's right to petition. It extinguished it.

**COUNT V - Conspiracy to Interfere with Civil Rights (42 U.S.C. §§ 1985(2) and (3), 1986) Against All Defendants**

**116.** Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

**117.** To state a claim under 42 U.S.C. § 1985(2), a plaintiff must allege: (1) a conspiracy of two or more persons; **(2)** to obstruct the due course of justice in any state; **(3)** with intent to deny equal protection of the laws; **(4)** resulting in injury to the plaintiff. No class-based animus is required under the first clause of § 1985(2), which independently prohibits conspiracies to obstruct justice. *Kush v. Rutledge*, 460 U.S. 719, 724-727 (1983). The institutionally financed, hourly-billing litigation strategy deployed against Plaintiff as a self-represented litigant, in which every prolongation generated billable revenue with no financial downside. Plaintiff's constitutionally

recognized vulnerability as an unrepresented litigant became the revenue-generating mechanism, not merely a litigation tactic. But a conspiracy in which obstruction of justice is a business model.

**118.** Including but not limited to **(a)** thwart Plaintiff's efforts to include negligence against Toastmasters. **(b)** coerce Plaintiff into dismissing her legitimate claims through sustained abuse of process; **(c)** file a fraudulent second Dismissal Agreement without Plaintiff's knowledge; **(d)**after their fraudulent dismissal was discovered, going along with the trial order, continuing with trial preparation, then later filing motions to enforce the dismissal as though it hadn't been rescinded despite taking actions in accordance with rescission, then; **(e)** file two non-dispositive motions timed to displace the pending dispositive motions; **(f)** supply a fabricated factual narrative to the court that the court itself refuted; and **(g)** pursue actions through the appellate process by raising arguments for the first time on appeal that the R.I. Supreme Court adopted, but which did not support the arguments proffered, and falsely claiming ignorance of Plaintiff's documented duress. **(h)** drafting and accepting the order that concealed the mechanism of termination.

**119.** The foreknowledge of the conspiracy is established by Defendant Romano's October 2021 statement and confirmed by the **pattern that followed**. Defendant Brouillard's written demand that Plaintiff waive her right to file a § 1983 complaint as a condition of settling, communicated while Plaintiff had just been advised to present herself to the Kent Hospital Emergency Room, establishing consciousness of constitutional wrongdoing. Attorneys who have done nothing actionable do not require, as their price of settlement without financial consideration, the permanent foreclosure of rights to appeal or § 1983 claims. That demand implicitly admits that the conduct being settled involved the exercise of state authority sufficient to support a § 1983 claim, under *Johnson v. Zerbst* 304 U.S. 458, 464 (1938) and its progeny, a waiver of constitutional rights must be voluntary, knowing, and intelligent, a coerced waiver is void.

**119a.** In a March 24, 2022 email exchange, Plaintiff wrote to Teresa Nehez, the Chubb claims adjuster referenced in ¶79 above, whose settlement overture was withdrawn as described therein. The March email exchange confirmed her understanding that Chubb's position, communicated to Plaintiff by phone, was that Chubb could not settle with Plaintiff because doing so would expose its insured to a future negligence claim from Toastmasters International. Nehez responded in writing: "Your understanding of Chubb's position regarding settlement on behalf of Lisa Nelson is accurate." Plaintiff's contemporaneous email further noted her understanding that defense counsel had shaped this position, a position that doesn't withstand scrutiny: Defendant Romano controlled the Toastmasters side of the underlying action, and any comparative-negligence claim against Nelson would necessarily have to be brought by Romano's own client against Brouillard's own client. That "Chubb's position," as confirmed in writing, rested on a risk from the opposing party that its own insured was nominally adverse to, is not explained as ordinary, independent defense strategy. It is consistent with, and further evidence of, the coordinated joint action alleged throughout this Complaint.

**120.** 42 U.S.C. § 1986 imposes liability on any person who, having knowledge of a § 1985 conspiracy, has power to prevent it but neglects to do so. Defendants Chubb, Rafsol, Rampe, Swift, Pasek, Toastmasters International, and Rex had actual and documented knowledge of the constitutional violations being committed against Plaintiff, established through years of written communications and an explicit § 1983 warning. Both institutional Defendants had the financial power and authority to halt the abusive litigation at any point and failed to do so.

**120a.** Vigilant's liability for this conduct rests on two related doctrines: apparent authority and agency by estoppel. Through the conduct described in Section R above, Vigilant created and maintained the appearance that Pasek, Swift, Rafsol, and Rampe acted with its authority, or with

the authority of the broader enterprise operating under the "Chubb" name of which Vigilant is a member. Under the doctrine of apparent authority, a principal is bound by the acts of an agent within the agent's apparent authority where a third party reasonably believes the agent has authority to act on the principal's behalf, and that belief is traceable to the principal's own manifestations. Restatement (Third) of Agency § 2.03. Under the related doctrine of agency by estoppel, where a principal's own conduct causes a third party to reasonably rely on the appearance of that authority, the principal is estopped from later denying it. Restatement (Third) of Agency § 2.05. Plaintiff reasonably relied on the apparent authority of Pasek, Swift, Rafsol, and Rampe as representatives of the insurer financing and directing the defense of the underlying action, as they represented themselves as acting on Chubb's behalf, communicating with each of them, and receiving communications and decisions from each of them, on that basis throughout the course of this matter. Vigilant is accordingly bound by, and accountable for, their conduct regardless of which specific entity within the enterprise formally employed them. No evidence in the record suggests any entity other than Chubb employed them; the evidence shows they consistently present themselves as part of the Chubb enterprise. For purposes of this lawsuit and the claims herein, it appears that Vigilant and Chubb are one and the same.

**COUNT VI - Fraud as a Constitutional Deprivation of Due Process (42 U.S.C. § 1983 and Rhode Island Common Law)**
**Against Defendants Brouillard, Romano, Chubb, Pasek, and Swift**

**121.** Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

**122.** The fraudulent acts alleged in this Count were not merely common-law fraud between private parties. Because they were carried out through state judicial machinery, causing a public official to reopen a closed file based on a knowingly false representation, as documented in paragraphs 54 above. The reopened file was used as the platform for the judicial action described in Section J, depriving Plaintiff of due process under the Fourteenth Amendment.

**123. First Fraud:** Defendants Brouillard and Romano executed the December 13, 2022 Dismissal Agreement, which by its own terms purported to dismiss all claims, counterclaims, and crossclaims under the docket number. Plaintiff relied upon this agreement and filed the dismissal under Rule 41(a)(1)(B), thus closing the case. At the time they signed it, Defendant Brouillard knew this representation was false: he had separately admitted, in writing, that the Third-Party Complaint was superseded, yet had refused, against Plaintiff's repeated written demand, to withdraw it, preserving its nominal existence on the docket for the very purpose later served in the second Stipulation described below. This fraud, standing alone, caused Plaintiff's deprivation of adjudication on the merits and any settlement proceeds she would otherwise have been entitled to.

**124. Second Fraud:** Two weeks after the case was marked closed, December 27, 2022, Defendants Brouillard and Romano executed and filed a second Stipulation of Dismissal, representing to the Clerk that "remaining claims" existed under the docket, as described in Section J above. That false representation, made to a public official for the purpose of inducing the reopening of a closed judicial file, violates R.I. Gen. Laws §§ 11-18-1, 11-41-13, and 11-41-11.1, and constitutes a fraud upon the Court within the meaning recognized by the First Circuit in *Aoude v. Mobil Oil Corp., 892 F.2d 1115 (1st Cir. 1989),* and by the Supreme Court in *Chambers* v. NASCO, Inc., *501 U.S. 32 (1991)* conduct that corrupts the judicial process itself and is independently actionable as a damages claim regardless whether any resulting order is disturbed.

**125.** All elements of common-law fraud are satisfied. Plaintiff alleges, on information and belief, that the December 27, 2022, Stipulation served an undisclosed financial purpose and is entitled to a full accounting of any financial transaction the Stipulation may have been designed to facilitate. Defendants' coordinated misrepresentations were the mechanism by which the Clerk's

Office and the Court took action that permanently extinguished Plaintiff's claims without fair notice and are independently actionable under 42 U.S.C. § 1983.

**COUNT VII - Denial of Constitutional Right of Access to Courts Through Systematic Pretextual Closure of Negligence Claim (42 U.S.C. § 1983)**

**Against Defendants Brouillard, Romano, and Toastmasters International**

**126.** Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

**127.** Plaintiff possessed a legally cognizable, factually supported, and procedurally available negligence claim against Defendant Toastmasters International, grounded in Toastmasters International's negligent supervision, governance, and failure to exercise reasonable care over the conduct of its members. Toastmasters International had an existential institutional motivation to ensure this case produced no record of negligence liability: a finding of negligence against a membership organization for the conduct of its members would have established adverse precedent with implications for the thousands of clubs they oversee internationally. That motivation financed and drove the attrition strategy throughout this complaint, with both Defendant attorneys acting in concert to shield Toastmasters International despite one of them formally representing parties who held a claim of negligence against it. A conflict of interest.

**128.** The negligence claim was available through at least four independent procedural vehicles. Defendants coordinated conduct closed each one: **(a)** Defendant Brouillard opposed the Motion to Join Claims under Rule 20, citing Rule 21 instead. a motion that directly served his own clients' interests not Romano's, destroying the presumption of adversarial integrity and a conflict of interest; **(b)** Plaintiff's motion to add a negligence count was denied by applying the subsection of Rule 15(c) that governs new parties, not new claims against an existing party; **(c)** Defendants opposed the fourth amended complaint by characterizing factual detail added to an existing Breach of Contract claim as "disguised negligence claims" bootstrapping the previous application of

subsection of Rule 15 ( c) to a breach of contract claim, and **(d)** Defendants opposed Plaintiff's Motion for Reconsideration, after which Plaintiff was directed by the judge toward the single most discretionary and least successful form of available review, a Petition for Writ of Certiorari for an interlocutory decision. Four separate procedural vehicles, opposed by the same two attorneys, protecting the same party from the same exposure, each moving in the same direction, is the evidentiary signature of coordinated joint action under *Lugar v. Edmondson Oil Co.* and *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970).

**129.** The negligence claim cannot be refiled. Like the other claims described in Count IV, it was permanently lost when the state-court proceedings concluded. On appeal, Plaintiff renewed her challenge to the Rule 15(c) rulings, which had never previously received appellate review on the merits. The Rhode Island Supreme Court's decision did not separately address the denial of the Motion to Join Claims, the misapplied Rule 15(c) rulings, or the denial of the Fourth Amended Complaint. Those rulings were not affirmed on the merits and remain unreviewed. This Court remains the only forum in which the constitutional injury their coordinated closure produced can be redressed through the federal remedy § 1983 authorizes.

**COUNT VIII - Deprivation of the Right to Trial (42 U.S.C. § 1983; R.I. Const. Art. I, § 15; U.S. Const. Amend. XIV)**

**Against Defendants Brouillard, Romano, Chubb, Pasek, Swift, and Toastmasters International**

**130.** Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

**131.** Article I, Section 15 of the Rhode Island Constitution provides: "The right of trial by jury shall remain inviolate." Plaintiff's claims for defamation, intentional infliction of emotional distress, breach of contract, and abuse of process were legal claims entitling her to trial under this guarantee, a right also protected as a liberty interest under the Due Process Clause of the Fourteenth Amendment. *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 433-35 (1982). The deprivation of

Plaintiff's right to trial caused by Defendants' own conduct as described throughout this Complaint not by the legal correctness of any ruling it produced, constitutes a deprivation of a federally protected right actionable under 42 U.S.C. § 1983. Plaintiff need not prove, and does not allege, what the outcome of the dispositive motions would have been; the deprivation is the fact that they were never heard and never will be, established by the factual record documented in Section O.

**COUNT IX Abuse of Process , Deprivation of Liberty and Access to Courts (42 U.S.C. § 1983) Against Defendants Brouillard, Romano, Chubb, Pasek, Swift, and Toastmasters Intl.**

**132.** Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

**133.** The filing of twelve or more contentious motions calendared for a single hearing; the **documented pattern** of advancing jurisdictional or factual arguments designed to bring pressure to bear for the purpose of procuring a dismissal agreement a consequence of that pressure; the refusal to discuss settlement for seven years; the coordination of filing timing to maximize pressure on a self-represented litigant; and the filing of two non-dispositive motions to displace pending dispositive motions and engineer a procedural termination, all constitute abuse of process. The abuse of process alleged herein constituted a deliberate misuse of state judicial machinery to deny Plaintiff due process and access to the courts. Because it was accomplished through joint participation with state judicial authority, it is independently actionable under 42 U.S.C. §§ 1983, 1985, and 1986. The financing and authorization of these tactics by Defendants Chubb, Toastmasters International, and their supervisory personnel after written notice of constitutional harm and resulting psychiatric hospitalizations makes those entities jointly liable. When an insurer's retained attorney blocks the insurer's own claims adjuster from settling, directs the litigation strategy over the insurer's own personnel, and does so in a forum he has predicted will rule in his favor regardless of the merits, the insurer is no longer a neutral financing party. It has become a participant in constitutional deprivation. *Lugar v. Edmondson Oil Co., 457 U.S. 922,*

*941–42 (1982), Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970*) and Dennis v. Sparks, 449 U.S. 24, 28–29 (1980).* This sequence is consistent with the supervisory-liability framework established in Section Q and Section O.

**COUNT X - Malicious Prosecution Deprivation of Liberty Access to Courts (42 U.S.C. § 1983) Against Defendants Brouillard, Romano, Chubb, and Toastmasters International**

**133.** Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

**135.** Defendants engaged in malicious prosecution by filing and maintaining pleadings, a superseded Third-Party claim, and motions for improper and ulterior purposes, to exhaust Plaintiff financially and medically and coerce her into abandoning her claims rather than to achieve any legitimate legal objective. The prosecution of several claims was without probable cause, including the meritless trademark claim, Plaintiff had not used any mark commercially and an Abuse of Process counterclaim, deposition testimony by Defendants' own clients established the factual basis was false; The prosecution was undertaken with malice, inferred from the filing and maintenance of claims Defendants knew to be without evidentiary support. The malicious prosecution alleged herein was part of a coordinated effort to burden Plaintiff with baseless proceedings and prevent adjudication of her claims on the merits, violating her constitutional rights under the Fourteenth Amendment and independently actionable under 42 U.S.C. § 1983.

**COUNT XI - Intentional Infliction of Emotional Distress as Conscience-Shocking State-Enabled Misconduct (42 U.S.C. § 1983; State Law IIED) Against All Defendants**

**136.** Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

**137.** The extreme and outrageous conduct alleged herein was undertaken as part of a coordinated campaign to deprive Plaintiff of due process, equal protection, and access to the courts. All Defendants, individually and collectively, intentionally inflicted upon Plaintiff extreme emotional distress through sustained fraud, conspiracy, abuse of process, and violation of her civil

and constitutional rights. This conduct was extreme and outrageous, exceeding all bounds of decency as demonstrated by the continuation of coordinated motion filing and refusal to discuss settlement after receiving notice that their tactics had caused repeated psychiatric hospitalization requiring inpatient treatment. The conscience-shocking standard under *County of Sacramento v. Lewis*, 523 U.S. 833 (1998), is satisfied by seven years of coordinated exploitation of documented psychiatric vulnerability, financed by institutional defendants with actual notice of the harm being caused, that produced three acute psychiatric hospitalizations and permanent psychological injury. As a direct and proximate result, Plaintiff suffered multiple hospitalizations, inpatient psychiatric treatment at Butler and Kent hospitals, partial hospitalizations, and permanent psychological injury requiring ongoing treatment, all these events were reported directly to the Court via fax and delivered in real time at the time they occurred with follow up as it developed. Further, the court declared on the record, in several different hearings, to be aware of Plaintiff's health issues.

**138. Preclusion Analysis -** The Rhode Island Supreme Court's opinion affirming the September 1, 2023 order addressed only the trial justice's plenary authority to reverse her interlocutory rescission based on Defendants' claimed lack of notice before the March 24 hearing. It was affirmed. *Clinton v. Babcock et al., No. 2023-310-Appeal* (WC 17-376) (R.I. 2024) It did not examine the conduct that set the entire sequence in motion: Plaintiff's February 8 filing exposing the December 27, 2022, Stipulation, Defendants' failure to object at the March 24 hearing, their subsequent treatment of the rescission as operative, and their later assertion that it had been "reinstated." The court did not review the substance of Plaintiff's February 8 document, her § 1983 reservation, the constitutional violations alleged, the fraud evidence presented, or the false statements embedded in Defendants' motions; and did not separately address the interlocutory Rule 15(c) issues to amend adding negligence, the motion to amend to add details to breach of contract allegations, or the Motion to Reconsider the denial of the fourth amendment to add allegations to breach of contract. Those

denials were not affirmed by RI Supreme Court and remain unreviewed. Nor did it address the December 27 Stipulation on its merits. Under *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280 (2005), this Court may examine what no prior court decided: It is in the framework of being an "independent action," meaning No court has litigated or decided whether Defendants conduct, as an independent claim against Defendants individually, was wrongful: Neither issue preclusion nor claim preclusion bars Plaintiff's § 1983 claim. A § 1983 joint-action claim against private parties requires proof of state action, joint participation, and specific conduct: elements neither raised nor capable of adjudication in the appeal. Plaintiff's filings reserved the claims; never decided; it couldn't have been brought in that proceeding in the first instance.

**139. PRESERVED** - Matter of First Impression for the First Circuit -The theory preserved herein addresses the broader intersection of institutional financing, foreknowledge of judicial alignment, and deliberate exploitation of forced pro se vulnerability, elements that go beyond what the Counts in this complaint ask this Court to decide and that are presented as a matter of first impression for the First Circuit which rests on recognized First Circuit and Supreme Court precedent requiring no further development by this Court; the preserved theory is presented as an additional and alternative basis for relief under 42 U.S.C. §§ 1983 and 1985, and its novelty does not affect the viability, sufficiency, or independence of any other count in this complaint. Plaintiff acknowledges that no federal court has yet directly addressed the intersection of three documented features of this case as a unified theory of liability under 42 U.S.C. §§ 1983 and 1985: **(1)** institutional litigation financing without moderating economic pressure, evidenced by multiple settlement refusals across seven years, despite legal circumstances fundamentally changing; **(2)** foreknowledge of judicial alignment, evidenced by Defendant Romano's October 2021 statement; and **(3)** the deliberate exploitation of a forced pro se litigant's constitutionally recognized vulnerability as the operative mechanism for obtaining a predetermined outcome, and utilizing it

as a business model that exploits the imbalance. Plaintiff presents this theory as a matter of first impression and preserves it for review by the Court of Appeals for the First Circuit.

**140.** The existing scholarship on litigation attrition exclusively addresses its effect on opposing plaintiff's counsel; attorneys whose contingency practice is itself a business built for attrition, professionally hardened against it, and financially structured to absorb it. That analysis does not transfer to a self-represented litigant. A plaintiff's attorney who absorbs prolonged institutional defense litigation does so as a professional choice, within a business model designed for exactly that friction. A senior citizen forced into pro se status by the ethical toxicity of the very proceedings she is challenging has no such capacity. She is simultaneously held by the courts to the same procedural and substantive standards as licensed counsel, required to know what attorneys know, file what attorneys file, and argue what attorneys argue, while possessing none of the training, resources, institutional support, or professional infrastructure that make meeting those standards achievable for a practitioner. The gap between what the system demands and what it provides is not incidental. It is the gap that institutionally financed litigation attrition is designed to exploit. That gap is not without constitutional remedy. The Supreme Court has held that courts must construe pro se pleadings liberally and hold them to less stringent standards than those drafted by counsel. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). It has further held that procedural fairness requirements under the Due Process Clause are heightened, not diminished when one party is unrepresented, imposing affirmative obligations on courts to account for the represented/unrepresented asymmetry. *Turner v. Rogers*, 564 U.S. 431, 448-449 (2011), *Mathews v. Eldridge*, 424 U.S. 319 (1976); Whether the pro se status is forced or not, when a pro se litigant's rights are at stake, courts must apply the *Mathews* test with heightened care, add safeguards, relax technical barriers, and ensure the process does not block access to justice. In *Castro v. United*

*States, 540 U.S. 375 (2003)* the Supreme Court recognized that pro se litigants face unique risks of forfeiting fundamental rights **when courts recharacterize filings without adequate safeguards.** Together, these U. S. Supreme court cases mandate that courts must ensure a fair, accurate, and meaningful process for SRLs.

**141.** These holdings do not merely permit accommodation, they constitutionalize it. A judicial environment in which a self-represented litigant's accurate arguments are disregarded while represented parties' false assertions are accepted without examination is not merely unfair. It is a judicial environment operating in direct tension with the Supreme Court's mandate, and one that private parties with foreknowledge of that environment exploit as an instrument of constitutional deprivation. The adversarial system's foundational assumption of rough parity, on which the toleration of prolonged litigation rests, does not hold, when the accommodations that parity requires are absent and that absence becomes the mechanism of a coordinated litigation strategy. The risk Rule 3.3 and the misrepresentation-of-law doctrine exist to guard against, is at its highest, precisely, where this imbalance exists: a self-represented litigant has no professional colleague positioned to immediately recognize and challenge a misstatement of law, making the tribunal itself the only remaining safeguard. That safeguard did not function here, consistent with the disparate treatment documented in Section S. Where that safeguard fails to function, and the failure runs in only one direction, repeatedly, the failure itself becomes part of the record of joint action and disparate treatment this Complaint alleges.

**142.** The constitutional building blocks of this theory are established: *Boddie v. Connecticut*, 401 U.S. 371 (1971), holds that due process requires meaningful access to courts, not merely nominal access, and that process which functionally forecloses adjudication violates that guarantee; *M.L.B. v. S.L.J.*, 519 U.S. 102 (1996), holds that wealth cannot operate as an absolute

barrier to access to civil justice; *Turner v. Rogers*, 564 U.S. 431 (2011), establishes that self-represented litigants occupy a constitutionally recognized position of vulnerability that imposes affirmative procedural obligations; *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991), establishes that the sustained weaponization of judicial process in bad faith is legally cognizable; *Roadway Express, Inc. v. Piper*, 447 U.S. 752 (1980), establishes the federal court's inherent authority to sanction attorneys who willfully abuse the judicial process upon a finding of bad faith; and *Griffin v. Breckenridge*, 403 U.S. 88 (1971), establishes that § 1985 liability requires class-based discriminatory animus, a requirement satisfied here by the documented, deliberate targeting of Plaintiff's forced pro se status and documented medical condition as the operative instrument of litigation strategy. No court has yet assembled these principles into the claim Plaintiff now presents: that institutionally financed counsel who deliberately deploys litigation attrition against a forced pro se litigant, with foreknowledge of judicial alignment and in the documented absence of any moderating economic pressure, crosses from aggressive advocacy into the deliberate deprivation of constitutional rights actionable under 42 U.S.C. §§ 1983 and 1985. Self-represented parties appear in the overwhelming majority of civil cases nationally. "Over the last decade there has been a dramatic rise in self-represented litigants. **In more than 75% of civil cases, at least one party is self-represented.**" *The Landscape of Civil Litigation in State Courts - National Center for State Courts,* (2021). The question of whether the adversarial system's assumption of parity can itself be weaponized as a constitutional instrument against a pro se litigant has never been more urgent. This Court is invited to reach it. If it doesn't, the First Circuit is asked to do so.

## PRAYER FOR RELIEF

**143.** As a direct and proximate result of Defendants' violations of Plaintiff's constitutional and statutory rights, Plaintiff has suffered and continues to suffer: severe emotional distress and

psychological injury including three acute psychiatric hospitalizations and ongoing treatment; loss of the right to trial and the opportunity to have her claims heard on the merits after seven years of litigation; lost settlement proceeds and lost value of claims that would have been adjudicated on the merits; legal expenses for initial counsel and limited scope assistance, seven years of out-of-pocket litigation costs including court costs, filing fees, travel, and security guard expenses; tortious interference with the right to counsel; reputational harm from false accusations made in judicial proceedings without evidentiary basis; and from Defendants' fraud upon the Court.

**144.** **WHEREFORE,** Plaintiff Judith Clinton respectfully requests that this Court:

**A.** Enter judgment in Plaintiff's favor against all Defendants, jointly and severally, on all Counts;

**B.** Award compensatory and punitive damages in amounts to be determined at trial, compensatory for all harm identified above, and punitive in an amount sufficient to deter Defendants and others similarly situated from engaging in like conduct, in view of the deliberate, sustained, and coordinated nature of the constitutional violations alleged herein;

**C.** Issue a declaratory judgment that Defendants violated Plaintiff's constitutional rights under the First and Fourteenth Amendments, Article I, Sections 5 and 15 of the Rhode Island Constitution, and 42 U.S.C. §§ 1983, 1985, and 1986;

**D.** Issue a declaration that the December 27, 2022, second Stipulation of Dismissal was executed through fraud upon the Court and fraud upon Plaintiff by Defendants Brouillard and Romano, in violation of R.I. Gen. Laws §§ 11-41-13, 11-18-1, and 11-41-11.1, and that this fraud is a predicate act of the conspiracy and constitutional violations alleged herein;

**E.** Order an accounting of: (i) any and all financial transactions facilitated by the filing of the December 27, 2022 second Stipulation of Dismissal, including the identity of all parties to any such transaction, amounts transferred, date of transfer, source of funds, characterization for insurance or tax purposes, and the identity of all persons with knowledge of the transaction; and (ii) all legal fees billed and collected by Defendants Brouillard and Romano, and all litigation costs authorized and paid by Defendants Vigilant

Insurance Company under Claim No. 092018000033 and Toastmasters International, in connection with the defense of docket WC-2017-0376 from its inception through December 10, 2025, including all billing records, invoices, payment records, and any financial benefit received by any defendant in connection with the outcome of the litigation or the filing of the December 27, 2022 Stipulation of Dismissal.

**F.** Issue a preliminary and permanent injunction requiring all Defendants to preserve all documents, communications, and records relating to the underlying state-court litigation, the December 27, 2022, Stipulation, and any financial transactions arising therefrom, pending resolution of this action;

**G.** Award reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988; and

**H.** Grant such other and further relief as this Court deems just, equitable, and proper.

## DEMAND FOR JURY TRIAL

**145.** Plaintiff demands trial by jury on all claims so triable pursuant Fed. R. Civ. P. 38(b) and U.S. Const. Amend. VII.

## RULE 11 CERTIFICATION

Pursuant to Federal Rule of Civil Procedure 11, by signing below, Plaintiff certifies to the best of her knowledge, information, and belief that this Complaint: (1) is not being presented for an improper purpose; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the Complaint otherwise complies with the requirements of Rule 11.

Respectfully submitted,

**JUDITH CLINTON**
Plaintiff, Pro Se
418 Benefit Street
Providence, RI 02903
**jclinton14@msn.com**
**860-389-0402**

**Dated:** August 28, 2026

**VERIFICATION**

I, Judith Clinton, declare under penalty of perjury under the laws of the United States that the foregoing Complaint is true and correct to the best of my knowledge, information, and belief.

**Executed on:** 8-28-2026 Judith Clinton, Plaintiff Pro Se

# EXHIBIT A

---

## COMPETING PROPOSED ORDERS

*Submitted by the Parties Following the June 20, 2023 Hearing*

**Defendant Brouillard's Proposed Order**

*Omitting the Court's Sua Sponte Recharacterization Language Concealing the Legal Mechanism of Termination - Entered Verbatim as the September 1, 2023 Order Over Plaintiff's Written Objection*

---

*Clinton v. Brouillard et al.*

United States District Court for the District of Rhode Island

*Referenced in Complaint ¶¶ 60-68, 73, 87, Count I and Count V*

Brouillard Stephen, Romano Todd, Pasek Jeffrey, Swift Debra, Rafsol Norman, Rampe Kevin, Rex Daniel, Chubb Limited a/k/a and d/b/a,Vigilant Ins. Ace American Ins. Chubb Group, Toastmasters International,

Case Number: WC-2017-0376
Filed in Washington County Superior Court
Submitted: 6/22/2023 1:27 PM
Envelope: 4162328
Reviewer: Matthew H.

STATE OF RHODE ISLAND
WASHINGTON, SC.

SUPERIOR COURT

JUDITH CLINTON,
*Plaintiff,*

vs.

C.A. NO.: WC-2017-0376

CHAD BABCOCK, LISA NELSON, REGINA FOSTER BARTLETT, CARYN SULLIVAN, MARIA DIMAGGIO and TOASTMASTERS INTERNATIONAL,
*Defendants.*

**ORDER**

This case came on for hearing on June 20, 2023 before the Honorable Justice Sarah Taft-Carter on six (6) motions filed by the Defendants to which Plaintiff objected, including Chad Babcock, Lisa Nelson, Regina Foster Bartlett, Caryn Sullivan, and Maria DiMaggio's Motion to Enforce Dismissal Stipulation and Toastmasters International's Motion to Vacate Scheduling Order Set at the April 21, 2023 Pre-Trial Conference. After hearing thereon and consideration thereof, it is hereby:

**ORDERED**

1. Defendants' Chad Babcock, Lisa Nelson, Regina Foster Bartlett, Caryn Sullivan, and Maria DiMaggio's Motion to Enforce Dismissal Stipulation and Toastmasters International's Motion to Vacate Scheduling Order Set at the April 21, 2023 Pre-Trial Conference are hereby GRANTED, such that the parties' Dismissal Stipulation filed on December 13, 2022 is hereby reinstated in full force and effect; and

2. All other pending motions in the case, including those scheduled for hearing on June 26, 2023, are deemed moot.

ENTERED as an Order of this Court this 1st day of September, 2023.

ENTERED:

Sarah Taft-Carter
Sarah Taft-Carter, Associate Justice

PER ORDER:

Christine Tierney
Deputy Clerk

PRESENTED BY:

/s/ Stephen J. Brouillard
Stephen J. Brouillard, Esq. (#6284)
Bianchi Brouillard Sousa & O'Connell, P.C.
56 Pine Street, Suite 250
Providence, RI 02903
Tel: 401-223-2990
Fax: 877-548-4539
sbrouillard@bbsolaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on the 22nd day of June, 2023, I filed and served this document through the electronic filing system on the following parties:

Todd J. Romano, Esq.
Lewis Brisbois Bisgaard & Smith LLP
One Citizens Plaza, Suite 1120
Providence, RI 02903

I hereby certify that on the 22nd day of June, I filed and served this document via email, on the following parties:

Judith Clinton, Pro Se
418 Benefit Street
Providence, RI 02903
jclinton14@msn.com

The document electronically filed and served is available for viewing and/or downloading from the Rhode Island Judiciary's Electronic Filing System.

/s/ Stephen J. Brouillard

# EXHIBIT B

---

## COMPETING PROPOSED ORDERS

*Submitted by the Parties Following the June 20, 2023 Hearing*

**Plaintiff's Proposed Order**

*Quoting the Court's Own Transcript Language Regarding the Recharacterization of Defendants' Motions as Motions to Reconsider*

---

*Clinton v. Brouillard et al.*

United States District Court for the District of Rhode Island

*Referenced in Complaint ¶¶ 60-68, 74, 87, Count I and Count V*

Brouillard Stephen, Romano Todd, Pasek Jeffrey, Swift Debra, Rafsol Norman, Rampe Kevin, Rex Daniel, Chubb Limited a/k/a and d/b/a,Vigilant Ins. Ace American Ins. Chubb Group, Toastmasters International,

STATE OF RHODE ISLAND
WASHINGTON COUNTY, SC.

SUPERIOR COURT

JUDITH CLINTON :
*Plaintiff/Counterclaimant:*
VS :
CHAD BABCOCK, LISA NELSON,
CARYN SULLIVAN, REGINA FOSTER
BARTLETT MARIA DIMAGGIO and :
TOASTMASTER INTERNATIONAL
*Defendants*

C.A. NO.: WC-2017-0376

**ORDER**

This case came on for hearing on June 20, 2023, before the Honorable Justice Sarah Taft-Carter on six (6) motions filed by the Defendants to which Plaintiff objected, including Chad Babcock, Lisa Nelson, Regina Foster Bartlett, Caryn Sullivan, and Maria DiMaggio's Motion to Enforce Dismissal Stipulation and Toastmasters International's Motion to Vacate Scheduling Order Set at the April 21, 2023, Pre-Trial Conference.

The two Orders granted were granted by the Court as a Motion for Reconsideration when the Court stated, "because the Court looks to the substance of the motion rather than its form or label, this Court will regard defendants' motions as motions for the Court to reconsider its interlocutory decision to grant plaintiff's request to withdraw the stipulation of dismissal "After hearing thereon and consideration thereof, it is hereby:

**ORDERED**

Defendants' Chad Babcock, Lisa Nelson, Regina Foster Bartlett, Caryn Sullivan, and Maria DiMaggio's Motion to Enforce Dismissal Stipulation and Toastmasters International's Motion to Vacate Scheduling Order Set at the April 21, 2023, Pre-Trial Conference are hereby GRANTED, such that the parties' Dismissal Stipulation filed on December 13, 2022 is hereby reinstated in full force and effect; and,

2. All other pending motions in the case, including those scheduled for hearing on June 26, 2023, are deemed moot.

ENTERED as an Order of this Court this ______ day of ________________________, 2023.

ENTERED PER ORDER

_______________________________ _______________________________
Sarah Taft-Carter, Associate Justice Deputy Clerk

_______________________________

PRESENTED BY: Judith Clinton, Pro se.
418 Benefit Street
Providence, RI 02903
(860) 389-0402
Jclinton14@msn.com

WASHINGTON
SUPERIOR COURT
CLERK'S OFFICE
FILED
23 JUN 30 AM 9:54

**CERTIFICATION**

I hereby certify that on June 30, 2023, I filed and served this document, (Order for June 20, 2023 hearing revised 6-30-23) It was serviavia email on the following parties:

Stephen J. Brouillard
Bianchi, Brouillard, Sousa and O'Connell
56 Pine Street
Providence, RI 02903
sbrouillard@bbsolaw.com

Todd Romano #6859
Lewis Brisbois
One Citizens Plaza, Suite 1120
Providence, RI 02903
Todd.Romano@lewisbrisbois.com

Submitted by

Judith Clinton
Pro se Plaintiff
418 Benefit Street
Providence, RI 02903
860-389-0402
Jclinton14@msn.com

WASHINGTON
SUPERIOR COURT
CLERK'S OFFICE
FILED
23 JUN 30 AM 9:54