**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

JUDITH CLINTON,
*Plaintiff,*
v.
STEPHEN BROUILLARD, ESQ.,
TODD ROMANO, ESQ.,
VIGILANT INSURANCE COMPANY,
JEFFREY PASEK, DEBORAH SWIFT,
NORMAN RAFSOL, KEVIN RAMPE,
TOASTMASTERS INTERNATIONAL, and
DANIEL REX,
*Defendants.*

**C.A. No. 1:26-cv-00510-JJM-RLA**

RECEIVED
NOV 23 2026
U.S. DISTRICT COURT
DISTRICT OF R.I.

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT STEPHEN BROUILLARD'S MOTION TO DISMISS (ECF No. 41 and Memorandum, ECF No. 41-1), WITH INCORPORATED MEMORANDUM OF LAW**

Plaintiff Judith Clinton, pro se, opposes the motion to dismiss filed by Defendant Stephen Brouillard ("Mr. Brouillard"). (ECF 41). Plaintiff's responses to the motions of the other Defendants are addressed separately.

## INTRODUCTION

Mr. Brouillard describes this case as an attempt to undo a state-court result by suing a lawyer who represented his clients. (Memorandum, ECF 41-1 ("Mem") at 1–2, 7–8.) The First Amended Complaint (ECF 8) ("FAC") alleges something different. It alleges that Mr. Brouillard, acting in concert with Defendant Romano and through the processes of the Rhode Island Superior Court, did specific things that violate Plaintiff's constitutional rights: he refused to accept her first dismissal proffer unless she waived her right to appeal and to bring a federal civil rights claim, and demanded the same in writing while she was under documented duress, ¶¶ 48, 119; he signed the December 13, 2022 agreement while knowing that the third-party complaint it should have ended was still on the docket and that he had acknowledged in writing it was superseded, ¶¶52, 123; he kept that pleading alive over Plaintiff's repeated written

demands to withdraw it, ¶ 52; he signed a second stipulation two weeks later, on the premise that "remaining claims" existed, which was presented to the Clerk without notice to Plaintiff, ¶¶51–54, 124; he served a Motion to Enforce calendared on a date set for only dispositive motions over Plaintiff's objections, ¶60; and he drafted the order that the Superior Court entered over her written objection, concealing the mechanism used for the decision. ¶¶65–68. The FAC also alleges that a settlement discussion Chubb's adjuster invited was stopped on advice of counsel, and that these acts prevented her claims from reaching a merits adjudication or from being resolved through settlement. ¶¶ 9, 34(6), 79.

Mr. Brouillard accepts the FAC's well-pleaded allegations as true "[f]or purposes of this Motion only." (Mem at 2.) He does not dispute any of the facts above. His motion rests on seven arguments: **(1)** that Rooker-Feldman bars the action; **(2)** that he is not a state actor; **(3)** that Count I does not state a class-of-one claim; **(4)** that Count V pleads no class-based animus or agreement; **(5)** that the federal claims are untimely; **(6)** that the state-law claims fail; and **(7)** that dismissal should be with prejudice. None requires dismissal. Where a point is well taken, Plaintiff says so. If the Court finds any pleading deficiency, the remedy is leave to amend, not dismissal with prejudice.

**BACKGROUND**

Plaintiff relies on the allegations of the FAC, which the Court must accept as true. Mr. Brouillard agrees that, for this motion, the Court takes the facts alleged as true and may consider the public docket of the state case. (Mem at 2, 5) (citing *Boateng v. InterAmerican Univ., Inc.*, 210 F.3d 56, 60 (1st Cir. 2000), and *Watterson v. Page*, 987 F.2d 1, 3–4 (1st Cir. 1993).) Plaintiff does not dispute the dates he recites at pages 2–4, but the recitation omits filings that bear directly on this case and that the Vigilant Defendants included. (ECF 41 at 3) As the FAC pleads

Mr. Brouillard's role, he represented the five individual defendants in the state case, and the allegations against him concern not only what he filed but also what he did; both on his own and jointly with Mr. Romano: These actions are described in detail below in section II-C. What the pleading alleges beyond resort to court. The Superior Court ruled from the bench on June 20, 2023, and entered a written Order on September 1, 2023. ¶68. The Rhode Island Supreme Court affirmed on March 24, 2025; reargument was denied May 16, 2025; certiorari was denied October 20, 2025; and reargument of the certiorari was denied December 8, 2025. This action was filed July 28, 2026. (ECF 1.) - Mr. Brouillard's Background leaves out one of the most pertinent facts of Plaintiff's complaint – the filings of the Third-party complaint and the filing of the Crossclaim that superseded the third-party complaint shortly later.

**Pertinent Filings that Mr. Brouillard has Omitted from this Background**

The individual defendants filed a third-party complaint against Toastmasters for negligence as a defense against Plaintiff's claim against them for defamation. See 3rd Party Compl., *Clinton v. Babcock* (filed Sept. 13, 2017). Ms. Clinton subsequently amended her pleading to assert a claim against Toastmasters, and the individual defendants asserted a cross-claim against Toastmasters in their answer to the amended complaint, which was the exact claim originally made in the Third-party complaint, and that superseded the third-party complaint. *See Answer to Am. Compl.*, *Clinton v. Babcock* (filed Oct. 17, 2017). Mr. Brouillard mentions Toastmasters only in passing (Mem at 2–3) and omits both filings. Those filings are why his clients and Toastmasters were adverse parties, and why the representation that "remaining claims" existed in the December 27 stipulation after he signed a December 13, Dismissal Stipulation that dismissed All Claims, Crossclaim and Counterclaims under the Docket #, is false. ¶¶52–53. The FAC alleges that Mr. Brouillard acknowledged in writing that the third-party complaint was superseded but refused to

withdraw it, against Plaintiff's repeated written demands, to withdraw it. Mr. Brouillard signed the December 13, 2022 agreement dismissing "all claims, counterclaims, and crossclaims under the docket" while the third-party complaint remained on the docket and after he had acknowledged in writing that it was superseded; that Plaintiff relied on the agreement dismissing All claims, crossclaims and counterclaims under the docket #, when she dismissed her own complaint under Rule 41(a)(1)(B); and that two weeks later Mr. Romano represented to the Clerk in a second stipulation that "remaining claims" existed that Mr. Brouillard also signed, without notice to Plaintiff. ¶¶52–53, 123–124. Those allegations identify the documents, the dates, and the signatories, as Rule 9(b) requires. Whether Mr. Brouillard knew the representation was false when he signed, is a question of fact the FAC alleges, he did know ¶¶52, 123, and the motion does not answer.

## LEGAL STANDARD

On a motion under Rule 12(b)(6), the Court accepts the well-pleaded facts as true and draws reasonable inferences in Plaintiff's favor. *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2011). A claim is plausible when the facts alleged allow the reasonable inference that the defendant is liable, and the standard "is not akin to a probability requirement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiff bears the burden of establishing jurisdiction, and the FAC meets it on its face. ¶ 10; 28 U.S.C. §§ 1331, 1343(a)(3) and supplemental jurisdiction over the state-law claims, § 1367. A facial challenge to jurisdiction under Rule 12(b)(1), which is what this motion presents, is judged the same way. *Cebollero-Bertran v. Puerto Rico Aqueduct & Sewer Auth.*, 4 F.4th 63, 69 (1st Cir. 2021). A pro se complaint is held to less stringent standards than formal pleadings drafted by lawyers. *Erickson v. Pardus,* 551 U.S. 89, 93–94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). The Court may consider the state-court docket for the existence and procedural history of those proceedings, but not for the truth of

disputed statements in them. See *Watterson,* 987 F.2d at 3–4; *Boateng,* 210 F.3d at 60. Limitations is an affirmative defense; dismissal is proper only where the facts establishing it are clear on the face of the complaint and "conclusively" show the claim is time-barred. *In re Colonial Mortg. Bankers Corp*., 324 F.3d 12, 16 (1st Cir. 2003)

Arguments first raised in a reply memorandum are not properly before the Court. 'The purpose of a reply memorandum is not to file new arguments that could have been raised in a supporting memorandum,' and reply memoranda 'are limited to rebuttal of factual and legal arguments raised in the opposition.' *Noonan v. Wonderland Greyhound Park Realty LLC*, 723 F. Supp. 2d 298, 349 (D. Mass. 2010). Plaintiff does not answer new matter in the Vigilant Defendants' reply (ECF 45) except where noted as it bears on Mr. Brouillard's motion, and she asks the Court to disregard any argument not made in Mr. Brouillard's opening memorandum.

## ARGUMENT

### I. Rooker-Feldman does not bar this action.

### A. The doctrine is narrow.

The doctrine applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). In *T.M. v. University of Maryland Medical System Corp.,* 146 S. Ct. 1739, 1744 (2026), which Mr. Brouillard cites, the Court reaffirmed that the doctrine is "confined to cases of the kind from which the doctrine acquired its name," and applied it because the plaintiff there sought to void and enjoin the state-court consent order itself. That is the "paradigm situation" he quotes. (Mem at 5.) Plaintiff is not that plaintiff. She does not ask this Court to reject, vacate or revive any state ruling. She seeks accountability from private parties for their own conduct throughout years of state-court litigation.

**I-B. Plaintiff brings an independent claim.**

A claim is not barred merely because it denies a legal conclusion a state court reached. If a federal plaintiff "present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party," the doctrine does not apply. *Exxon Mobil, 544 U.S. at 293; see Skinner v. Switzer*, 562 U.S. 521, 532 (2011). Rooker-Feldman does not bar a § 1983 claim challenging the statute, rule, or conduct a state court addressed, as distinct from challenging the state court's decision itself, even where state appellate courts reviewed the underlying proceedings. *Skinner v. Switzer*, 562 U.S. 521, 532 (2011). Here, the source of Plaintiff's injury is Defendants' own fraud and joint action conduct described throughout the Complaint that exists independently of and would remain wrongful regardless of the legal correctness of any resulting state-court order.

**The test is causation:** was the injury caused by the judgment itself? Here the causation runs the other way. The pleading alleges that Defendants' conduct, much of which predates the June 20, 2023 ruling by years, caused the injury. ¶29. The injuries pleaded include years of financed litigation conducted through fraud and process abuse, forced self-representation, three psychiatric hospitalizations, and the costs of that litigation, mental, physical and financial. ¶¶31, 36, 143. Those injuries flow from Defendants' conduct, not from any judgment, and the loss of Plaintiff's claims that Defendants' conduct produced is pleaded as final. ¶¶6,143. Timing is addressed in Part V-A-E.

Mr. Brouillard's cases are not to the contrary. In *Davison v. Government of Puerto Rico–Puerto Rico Firefighters Corps,* 471 F.3d 220, 222–23 (1st Cir. 2006), the plaintiffs challenged a fire-code order the Puerto Rico courts had upheld, and their "only real injury" was that judgment. In *Klimowicz v. Deutsche Bank National Trust Co.*, 907 F.3d 61, 66 (1st Cir. 2018), the claims

rested on the bank "wrongfully" acquiring title that it held under the state court's judgment, so the injury flowed from the judgment itself. A federal plaintiff who "alleges a constitutional violation by an adverse party independent of the injury caused by the state court judgment" is not barred by *Rooker Feldman*. *Davison,* 471 F.3d at 222. Plaintiff sues private parties for their own conduct and does not challenge the Order's validity. ¶74.

Mr. Brouillard says *Davison* "squarely rejected the very 'day in court' theory Plaintiff advances here." (Mem at 7.) Plaintiff advances no such theory. In *Davison* the plaintiffs asked the federal court to reject a final state judgment, and the First Circuit held that their only real injury was caused by it. *Davison,* 471 F.3d at 223. *Davison* also observed that a plaintiff who "may not have actually argued the merits of their claims in state court" is not thereby entitled to a "day in court" where that would mean the state court was wrong. Id. at 223. That passage concerned plaintiffs whose only injury was the judgment. Plaintiff does not claim a right to relitigate any state ruling, and she does not say the Superior Court wrongly denied her a hearing. She alleges that Defendants' own acts, much of them years before any ruling, caused the loss of her claims: the superseded pleading kept alive, the stipulations signed on a premise they knew to be false, the process used to displace pending dispositive motions. ¶¶51–54, 60,123–124, the alignment of the attorneys despite adverse positions, and the abuse of process against a forced pro se litigant who they knew had a disability and was vulnerable, causing Plaintiff to eventually surrender her claims to protect her health, all to the advantage of the Defendants. ¶¶11,27b,87,89,139,142. The FAC pleads that these acts were directed at a litigant whose self-representation followed from the conduct alleged, ¶31, and who had objected in writing. It alleges that Mr. Brouillard refused repeated written demands to withdraw the superseded pleading, ¶¶52–53; that Defendants' filing defending the "remaining claims" premise did not

respond to Plaintiff's Rule 11 assertions, ¶55; that non-dispositive motions were calendared on the dispositive-motions-only date over her written objection, ¶60; and that the order he drafted was entered verbatim over her documented objection. ¶¶65–68. Nothing in that sequence required a ruling to be wrong for the injury to have occurred. It required only that Defendants act, and that no one stop them. *Christopher v. Harbury,* 536 U.S. 403, 413–15 (2002), recognizes a backward-looking access-to-courts claim based on the loss of an underlying claim, and such a claim can be decided without deciding that any ruling was wrong. Liability rests on joint action under *Dennis v. Sparks*, 449 U.S. 24, 27–29 (1980), not on any finding that a ruling was wrong.

Mr. Brouillard adds *Efreom v. McKee*, 46 F.4th 9, 18 (1st Cir. 2022), and *Bishay v. Ricciuti*, 575 F. Supp. 3d 262, 268 (D. Mass. 2021). *Efreom,* as he describes it, involved an attempt "to undo the state-court rulings." *Bishay*, as he describes it, held that "the harm alleged is derived from decisions made by state court judges." Here the harm alleged derives from what Defendants did, their conduct, and the relief sought does not require undoing any ruling. ¶74.

Mr. Brouillard also points to Prayer for Relief ¶D, which asks for a declaration that the December 27, 2022 second Stipulation of Dismissal was executed through fraud upon the Court. (Mem at 6.) As Plaintiff explained in her response to the Vigilant Defendants (ECF 42 at 10), that request does not ask the Court to void the December 13 stipulation or to vacate or declare invalid the Superior Court's September 1, 2023, Order. Plaintiff does not ask this Court to void any state-court order. The fraud allegations (¶¶123–124) are facts showing **what** Defendants represented, to **whom,** and **when**. It is evidence of the concerted action and differential treatment alleged in Counts I and V, and they support the claims for damages. Proving those facts does not require this Court to revoke, or set aside any state-court judgment. *Exxon Mobil*, 544 U.S. at 284, 293.

**I-C. The injury alleged is caused by Defendants' conduct, not by the judgment.**

The pleading is explicit about what it does not ask: "Plaintiff does not challenge whether the order's entry was procedurally proper under Rhode Island law." ¶74. The conduct alleged consists of "Defendants' own choices, provable from their own filed documents, and conduct associated with those documents, requiring no assessment of the order's correctness." *Id.* A private party who obtains a ruling by fraud, or who conspires with others to do so, can be sued for that conduct without the federal court holding that the ruling was erroneous on its own terms. That is the sense of *Exxon's* statement that an independent claim survives even when it "denies a legal conclusion" the state court reached. *Exxon* 544 U.S. at 293.

Mr. Brouillard says every count depends on the proposition that Defendants "wrongfully brought about the termination of Plaintiff's state-court claims." (Mem at 7.) That describes the injury's context, not its cause. The FAC identifies the injury as the result of Defendants' acts: a false premise presented to the Clerk, process timed to displace pending motions, and an order drafted to conceal the mechanism of termination. ¶¶12,51–54, 60, 68. Acts are described in detail and with specificity below in Part II-C.The Court can decide whether those acts violated Plaintiff's rights without deciding that any ruling was wrong.

Mr. Brouillard rests on *Rooker-Feldman* alone and does not assert preclusion. He characterizes the Superior Court's ruling as having "errantly allowed" Plaintiff to reopen the case (Mem at 6), a merits view of the state ruling that he elsewhere says this Court may not examine. To the extent he raises preclusion for the first time in a reply, the argument should be disregarded, because it was not raised in the motion and Plaintiff has had no opportunity to respond. Plaintiff takes the state-court decisions as they stand and does not ask this Court to

void, reverse, or overturn them. Whether any of them has preclusive effect is a defense under state law and does not deprive this Court of jurisdiction. *Exxon Mobil*, 544 U.S. at 293.

## II. The First Amended Complaint pleads state action.

### A. The governing test.

State action has two components. **First,** "the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible." **Second**, "the party charged with the deprivation must be a person who may fairly be said to be a state actor," which may be because the person "has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). "Private persons, jointly engaged with state officials in the prohibited action, are acting 'under color' of law. . . . It is enough that [the person] is a willful participant in joint activity with the State or its agents." *United States v. Price*, 383 U.S. 787, 794 (1966). A private party who conspires with a state official to deprive another of constitutional rights acts under color of law. *Dennis v. Sparks*, 449 U.S. 24, 27–29 (1980).

### II-B. Plaintiff does not allege that representing a client is state action.

Mr. Brouillard relies on *Polk County v. Dodson*, 454 U.S. 312 (1981), for the rule that a lawyer representing a client is not, by that fact, a state actor. (Mem at 8.) Plaintiff does not contend otherwise. *Polk County* concerned a public defender sued for the way he performed his role. The FAC does not rest on his role. It alleges that he joined with others in conduct directed at the court's own processes. He also invokes *Estades-Negroni v. CPC Hospital San Juan Capestrano,* 412 F.3d 1 (1st Cir. 2005), for the rule that invoking state procedures is not enough.

Plaintiff agrees that resort to court alone is not enough. The First Circuit has said that "something more than mere resort to a state court is required to transform the moving party into

'a co-conspirator or a joint actor with the judge,'" and that "[a]n actual conspiracy between a state court and a party attempting a plainly prohibited act would constitute 'state action.'" *Casa Marie, Inc. v. Superior Court of P.R.*, 988 F.2d 252, 259 (1st Cir. 1993) (quoting *Dennis*, 449 U.S. at 28; citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150–52 (1970)). The pleading alleges the "something more."

**II-C. What the pleading alleges beyond resort to court.**

The following acts of conduct by Mr. Brouillard both alone and in concert with Mr. Romano as alleged in the FAC have not been address in Mr. Brouillard's Motion to Dismiss. The joint-action allegations are at ¶¶4,59,65–68, 71–75, and are supported by specific facts, not labels. Regarding conduct that is outside and beyond the state court judgment The "Something More" than mere resort to state court required to show - The pleading alleges that:

1. **September 2020, Mr. Brouillard's Alignment with co-defendant's counsel, against his own clients.** His clients had a negligence crossclaim against Toastmasters International, the party Defendant Romano represented. In September 2020, after Plaintiff received a pertinent document in discovery that supported their negligence claim against Toastmasters, she proposed that his clients align with her against Toastmasters; he responded by threatening sanctions. When she moved to join her claim with the crossclaim, his objection cited the wrong rule (in violation of PRC 3.3) and he embedded a request for sanctions, asserting that she "must be confused" because she was self-represented. He concealed that the motion would have benefited his own clients. The FAC also alleges that he never pursued the crossclaim, made no discovery requests to Toastmasters and his clients answers in depositions provided evasive answers, concerning Toastmasters instructions to them, that their crossclaim for negligence allege were negligent, ¶¶27 (§ D), 37–38, thereby becoming a defacto attorney for Toastmasters in direct conflict with his representation of his clients. This alignment with counsel for Toastmasters was the driving force for the conduct of both attorneys working together to shield Toastmasters from negligence claims by Plaintiff and for the strategy of choosing

to continue litigation over settling by both Toastmasters and Chubb/Vigilant, with knowledge that Plaintiff had documentary evidence of Toastmasters negligence.

2. **Settlement discussion refused based on Prediction of Future Outcomes- October 2021**, Plaintiff's limited-scope attorney, retained to explore settlement, was told by Defendant Romano that the court's repeated denials of Plaintiff's motions to amend to add negligence claims to her complaint, showed "the judge was on their side" and that they did not have to settle. ¶¶32, 42, 44. The attorney's firm advised him not to file an appearance, and he withdrew from assisting her despite trying to persuade him otherwise, he provided her with a partial refund. ¶32. Plaintiff memorialized Mr. Romano's statement in a November 1, 2021, letter to him, copied to his managing partner, and he did not respond disputing it. Subsequently, Mr. Romano's law firm withdrew their representation of Toastmasters International. Upon termination of his employment at that firm, Mr. Romano took the case with him upon and continued representing Toastmasters (including now) ¶79. These Defendants now say the statement was "allegedly made" (Mem at 13) and elsewhere that it was "never in fact made." (Id. at 44.) A denial in a memorandum is not a fact on a motion to dismiss. The FAC pleads the statement as an expression of foreknowledge of how the court would rule. ¶¶12, 42.

3. **Settlement.** ¶44 alleges that a Chubb adjuster invited Plaintiff to discuss settlement, and before any discussion occurred the overture was withdrawn. Plaintiff was told it was withdrawn on advice of counsel; two adjusters confirmed in writing that it stopped on advice of counsel that settling would expose the insured to a comparative-negligence claim from Toastmasters consequently the offer to settle was withdrawn. ¶79.Further conduct under the alleged alignment supporting allegations of joint action.

4. **Mr. Brouillard insisted Plaintiff waive her rights In July 2022** Mr. Brouillard along with Mr. Romano, demanded that Plaintiff waive her right to appeal and to bring a § 1983 claim as the price of a settlement with no financial consideration, just after she had been advised to present herself to an emergency room, which both Mr. Brouillard and Mr. Romano were aware of. ¶¶48, 119.

5. **The two stipulations.** Mr. Brouillard (and Mr. Romano) signed the December 13, 2022 agreement dismissing all claims, counterclaims and crossclaims under the docket, ¶¶49, 123, after acknowledging in writing that the third-party complaint was superseded and

refusing, against Plaintiff's repeated written demand, to withdraw it. ¶¶52–53, 123. Two weeks later he and Mr. Romano signed, and Defendant Romano filed, a second stipulation dismissing "remaining claims," without notice to Plaintiff. ¶¶51, 124.

6. **Defendants caused the Clerk to reopen a closed file**, without Plaintiff's knowledge or consent, by mis-representing that "remaining claims" existed. The December 13 agreement covered all claims, crossclaims and counterclaims under the docket, and the third-party complaint had been superseded by a crossclaim years earlier. Both attorneys knew this when they signed the first agreement and again when the second was filed. ¶¶ 34(10), 49, 51–54, 122–124. The Chief Clerk reopened the closed file and accepted the second stipulation on that representation, after a clerk's employee had concluded it was not proper to reopen a closed file. ¶54. The pleading alleges that Defendants obtained the Clerk's action by a representation they knew to be false. ¶¶51–54, 124.

7. **The calendaring.** After recission of the dismissal stipulation was granted and the case was again proceeding to trial, at a pretrial conference a scheduling order was created with a date in June agreed to hear dispositive motion only. On May 26, 2023, eleven days prior to the hearing for dispositive motions only, Mr. Brouillard served a Motion to Enforce the dismissal stipulation, calendared on June 5, the date set exclusively for dispositive motions, together with Defendant Romano's Motion to Vacate the Scheduling Order. The Motion to Enforce was hand-delivered to the court outside the normal practice of electronic filing. Plaintiff objected in writing and had not agreed. He responded only that "***when the motion is heard is for the judge to decide not you,***" and did not address the objection. The date was later continued to June 20 on another medical excusal, and the two motions remained calendared alongside the dispositive motions.¶¶60,108, 118(e),

8. **Two non-dispositive motions were calendared** for a date set for dispositive motions only, over Plaintiff's written objection and without her agreement, so that the pending dispositive motions were displaced. ¶¶60, 118(e), 133.

9. **The Order** was drafted by Mr. Brouillard and entered verbatim over Plaintiff's documented objection, and it "concealed the mechanism of termination." ¶¶12, 65–68, 73–74, 118(h). The pleading identifies a four-part sequence documentable from the court record: a false factual narrative (¶¶63, 75); relief granted on the motion that rested on the falsity ¶¶62, 75; acceptance of that relief without objection or surprise ¶70; and Mr.

Brouillard's drafting of the order memorializing it ¶¶65–68, 73, 75. The Order is one piece of evidence of what Defendants did. This Court is not asked to revoke the Order for its rightness or wrongness. The pleading alleges that Defendants' acceptance of the outcome "without a word of objection or clarification," and the absence of any objection to relief their own motions had not requested, are consistent with an outcome they anticipated. ¶¶62, 69–70.

10. **Forced Pro se status** As the complaint alleges and document, ¶¶27,31-33, Plaintiff's "forced pro se status and repeated failure of available reporting channels to address the underlying conduct," ¶¶34-35, leaving her without representation in a case defined by coordinated private misuse of judicial machinery, Defendants exploited Plaintiff's vulnerability: The litigation environment marked by coordinated filings, concealment, and procedural manipulation, became so structurally abusive that attorneys declined representation after reviewing the record, recognizing that entering the case would require confronting misconduct that had already evaded institutional oversight, transforming attrition and obstruction of justice into a business model that leveraged Plaintiff's involuntary pro se status as the mechanism of defeat. Twenty hours of deposition testimony under conditions so threatening and aggressive that she was required to hire a private security guard for her physical safety, reported on the record; Forced pro se status - Filing a false vexatious abuse of process counter claim that had to be dismissed after deposition testimony by Mr. Brouillard's client revealed the claim of damages was false because her insurance was paying for the litigation and she was not incurring any costs as the claim alleged. Forced pro-se status ¶¶34-35,87,89,139,142, leaving her without representation in a case defined by coordinated alignment and private misuse of judicial machinery, Defendants exploited this vulnerability: Private parties' exploitation of a forced pro se litigant's vulnerability, with foreknowledge of judicial alignment, supports relief under 42 U.S.C. §§ 1983 and 1985. As the FAC alleges and documents, ¶¶27,31-33. Mr. Brouillard does not address this issue in his Motion to Dismiss.

11. **Sanctions for Romano's Motion for Summary** Judgment epitomized preferential treatment he had come to rely on. It contained five pages of factual assertions that were not only "genuine disputed issues of material fact" but, in many instances, demonstrably false, and submitted "without a notarized affidavit" as required. Plaintiff wrote two letters

notifying the court that the motion was defective and filed a Motion for Sanctions for bad-faith conduct, requesting only that it be withdrawn, as responding to it would be highly burdensome. The FAC alleges that Plaintiff made a motion for sanctions against Mr. Romano for filing a bad faith Motion for Summary Judgment, he opposed it on the false assertion that the dismissal agreement had been reinstated, which it had not, and that the court lacked jurisdiction to decide anything until Plaintiff filed a Rule 60(b) motion; a Rule 3.3 violation. He abandoned that position when the court denied sanctions; and he drafted the denial order himself and submitted it, which the judge signed and entered. ¶59. An attorney who tells a court it cannot rule, and then writes the order in which it does, is not engaged in routine practice. Defendant Romano's acceptance of this ruling without objection, consistent with his October 2021 statement to Plaintiff's limited-scope attorney expressing confidence "the judge is on their side," reinforced the dynamic Romano had previously predicted and further emboldened conduct undertaken with the expectation of judicial alignment. The episode is presented as evidence of judicial alignment and as an additional instance of differential treatment supporting the class-of-one claim in **Count I.** Plaintiff does not ask this Court to revoke the ruling. She alleges what Mr. Romano asserted and what he did.

12. **The appeal.** In response to Plaintiff's request to mediate during the appeal, Mr. Brouillard wrote: "You don't have a chance of winning this appeal. We don't want to give you anything." ¶ 108. The FAC also alleges that Defendants falsely claimed ignorance of Plaintiff's documented duress on appeal. ¶118(g).

Viewed in isolation, each act might be called aggressive but permissible advocacy. Viewed together, the pleading alleges, they were coordinated in timing, sustained across seven years, financed by institutional clients, and directed at a litigant whose self-representation followed from conduct alleged in the FAC, after attorneys who reviewed the file declined to enter the case. ¶¶ 7, 31, 32, 42, 44, 133. That is the "something more" that distinguishes this case from a defendant who simply files papers and wins. The pleading also alleges that Mr. Brouillard

opposed the joinder motion, and never pursued his clients' crossclaim against Toastmasters, although both served Toastmasters rather than his own clients. ¶¶ 9, 27 (§ D), 37–38.

The FAC also pleads facts bearing on why Defendants expected the treatment they received. The pleaded sequence begins in September 2020 as stated above **Mr. Brouillard's Alignment with co-defendant's counsel**. Mr. Brouillard's memorandum does not address the allegations that he opposed the motion to join Toastmasters although it would have benefited his own clients ¶37, that he threatened sanctions after Plaintiff proposed that his clients align with her against Toastmasters, then opposed the motion, misstated the wrong governing rule in violation or Rule 3.3, said "she must be confused because she is Pro se," ¶37, and he did not disclose the motion would have benefited his clients or that his clients' crossclaim against Toastmasters was never pursued ¶ 38. Mr. Brouillard's motion does not mention the joinder motion. It refers to the filings only to say they "echoed each other" and were closely timed, in a passage about state action. (Mem at 10.) Defendants may disagree about what the events mean, but the Court takes the pleaded facts as true, and Mr. Brouillard's memorandum does not dispute them. This combined with Mr. Romano's statement to Plaintiff's limited scope attorney to explore settlement telling him no need to explore settlement because "the judge is on our side," gave these Defendants assurances that they could continue the conduct they engaged in for the purposes of "defeating her claim," through their war of attrition against her. From these facts a factfinder may infer that Defendants shared a plan and expected the process to favor them. That is the joint activity the pleading alleges. ¶1,4,9,15,73.

**II-D. The absence of a named judge does not defeat joint action.**

Mr. Brouillard argues that *Dennis* found state action only because the complaint alleged bribery of a judge, and that Plaintiff "expressly declines to name the presiding justice." (Mem at 9 (citing

¶12).) Two points answer this. **First,** ¶12 does not decline to allege joint action. It states that the FAC does not allege that a neutral judicial officer "simply erred," and that the claims are actionable "without any finding that the resulting judicial ruling was legally erroneous." ¶12. That is a statement about what Plaintiff asks the Court to decide, not a disclaimer of the joint participation she alleges. **Second**, the State's participation in the challenged conduct need not be by a judge, and a judge need not be a defendant. The pleading names the Chief Clerk and alleges that his office accepted and entered the second stipulation on the misrepresentation that remaining claims existed, ¶54, it alleges the calendaring and drafting facts set out above. *Dennis* holds that a private party who is a willful participant in joint action with state officials acts under color of law, *Dennis* 449 U.S. at 27–29, and the judge's immunity there did not extend to the private parties. Whether facts alleged are enough to show an agreement is addressed in Part IV.B.

Mr. Brouillard also says that state action in *Dennis* existed "only because" the complaint there alleged bribery, and that Plaintiff "does not allege any corrupt agreement with the Superior Court." (Mem at 9.) Bribery was what the *Dennis* plaintiffs alleged. It was not the legal test. The test is whether a private party was "a willful participant in joint activity with the State or its agents." *Dennis,* 449 U.S. at 27–28; *Lugar,* 457 U.S. at 937; Price, 383 U.S. at 794. A defendant is a joint actor if the pleading alleges facts from which an agreement to use the State's processes to deprive the plaintiff of her rights can be inferred. See *Parker v. Landry*, 935 F.3d 9, [13–14] (1st Cir. 2019). The FAC alleges such facts: a representation that caused the Clerk to accept a second stipulation ¶¶ 51–54; a statement by Mr. Romano that "the judge is on their side" ¶¶ 32, 42, 44; two non-dispositive motions calendared on the dispositive-motions-only date over Plaintiff's objection, one of them delivered to the court by hand, a one-hour drive from Mr. Brouillard's office, departing from his practice of electronic filing ¶ 60; and an order drafted by

Mr. Brouillard and entered verbatim ¶¶ 65–68. These are dated, specific facts, not the "cascade of conclusory allegations" described in *Cruz-Arce v. Management Administration Services Corp.*, 19 F.4th 538, 543–44 (1st Cir. 2021). Nor does Plaintiff rely on *respondeat superior*. She sues him for what he did. Mr. Brouillard's memorandum does not address the hand delivery of the Motion to Enforce or Plaintiff's written question whether the hearing date was obtained through private communication with the court, which neither Defendant answered. ¶60."

The Vigilant Defendants rely on *Casa Marie, Inc. v. Superior Court of Puerto Rico*, 988 F.2d 252 (1st Cir. 1993), for the proposition that a judge's decision to let a litigant draft a judgment is not state action. (ECF 45 at 5–6.) *Casa Marie* reviewed a permanent injunction. The First Circuit declined to find state action because the district court "made no findings of fact on the residents' conspiracy allegation, and no uncontroverted record evidence supports it." Id. at 259. It did not decide that a pleading like this one fails to allege state action. The FAC does not rest on a drafted order alone. It pleads that the Clerk reopened a closed file on a misrepresentation made by counsel, ¶54; that the order denying sanctions was drafted by Mr. Romano, despite objecting the judge lacked jurisdiction to make a decision which was based on the same false assertion that the dismissal stipulation had been "reinstated" in the Pre-trial conference. Multiple false statements and assertions of fact and law. ¶59; that Mr. Brouillard's proposed order omitted the court's own recharacterization of the motions and was entered verbatim over Plaintiff's objection, ¶¶65–68,73–75. On this motion those facts are taken as true.

**III.- Count I states a claim.**

Mr. Brouillard argues that Count I fails because represented and self-represented litigants are not "similarly situated," citing *Cordi-Allen v. Conlon*, 494 F.3d 245, 250–52 (1st Cir. 2007), and that *Engquist v. Oregon Department of Agriculture*, 553 U.S. 591 (2008), bars class-of-one claims based on discretionary decisions. (Mem at 9–10.) Four points answer this.

**First,** Mr. Brouillard answers that the differential treatment was "the conduct of the trial justice, not of Mr. Brouillard, who for the reasons stated above is not a state actor." (Mem at 10.) That assumes the conclusion. Part II shows that the FAC pleads joint action, and a private party who is a willful participant in joint activity with state officials acts under color of state law; the official's act does not shield him. *Dennis,* 449 U.S. at 27–29; *Lugar*, 457 U.S. at 937. Count I does not rest on the trial justice's decisions. It alleges that Defendants used the court's process to obtain treatment of Plaintiff different from that given to similarly situated parties: the reopening of a closed file on a representation they knew to be false, the calendaring of non-dispositive motions ahead of pending dispositive ones, and an order drafted by Mr. Brouillard and entered verbatim over Plaintiff's written objection. ¶¶54, 60, 65–68, 74, 105. Those are Defendants' acts.

**Second,** the FAC pleads comparators. *Cordi-Allen* asks whether the comparators "engaged in the same activity" without distinguishing circumstances. 494 F.3d at 251. The comparison here is to the represented parties in this same case, before the same court, under the same rules. Defendants' raise-or-waive violations were excused while Plaintiff's preserved arguments were disregarded. Their non-dispositive motions were recharacterized as motions for reconsideration, while her February 8 filing was not treated as the functional equivalent of a motion. Plaintiff was admonished at the June 20, 2023 hearing without evidentiary support, while Defendants' Rule 11 and Rule 3.3 violations went unaddressed despite being called out. The dual standard applied to Plaintiff, excusing Defendants' violations while penalizing and criticizing Plaintiff's compliance, created the environment in which Defendants could accomplish, through procedure, what they couldn't accomplish on the merits. ¶105,107. Plaintiff ties those allegations to Defendants through what they sought and obtained: the motions they filed and the order Mr. Brouillard drafted. She relies on them to show the differential treatment

Defendants obtained and accepted, not to ask the Court to revoke any ruling. Whether a comparison is close enough is a fact-intensive inquiry that the Court should not resolve against Plaintiff on the pleadings. Any comparisons that may be made are for the purpose of showing differential treatment, not to overturn any decision.

**Third,** representation by counsel is not a "distinguishing circumstance." (Mem at 10.) Mr. Brouillard cites no case so holding, and the test points the other way. A comparator need only be similarly situated in the respects relevant to the treatment at issue. The treatment alleged here is the application of rules that bind every litigant: notice before a ruling on a theory first raised at the hearing, the calendaring of motions according to the dates set for them, and Rule 11. ¶¶60, 87(f), Whether a litigant is a lawyer is irrelevant to whether those rules are enforced evenly. If representation matters at all, it cuts the other way, since all litigants are bound by Rule 11, counsel are bound by Rule 11 and Rule 3.3. ¶105. Nor does the law treat self-representation as a reason for more stringent treatment. *Erickson,* 551 U.S. at 94. His brief also omits the qualifier in ¶5, which alleges comparison to represented parties "in identical procedural postures."

**Fourth**, *Engquist* concerns forms of state action that "by their nature involve discretionary decision making based on a vast array of subjective, individualized assessments." *Engquist* 553 U.S. at 603. The departures alleged here are from fixed requirements, such as notice and an opportunity to be heard before a ruling on a theory first raised at the hearing, ¶¶87(f), 106, not from discretionary judgment calls. *Engquist* itself recognizes that a class-of-one claim lies where there is a "clear standard against which departures, even for a single plaintiff, could be readily assessed." Id. at 602–03.

Count I does not ask this Court to decide whether any state-court ruling was right or wrong, or to change it. A class-of-one claim asks whether Plaintiff was 'intentionally treated differently from others similarly situated' without a rational basis for the difference. Village of *Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *Cordi-Allen v. Conlon*, 494 F.3d 245, 250–52 (1st Cir. 2007). The rulings enter only as evidence of how Plaintiff and the comparators were treated, and the comparison is complete without deciding whether either result was correct. The relief sought is damages for Defendants' conduct, not rejection of any order. ¶¶ 6, 13, 15; see *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284, 293 (2005). If the Court concludes that the existing count needs further factual support, Plaintiff requests leave to amend under Rule 15(a)(2).

## IV. Count V states a claim.

### A. Plaintiff's class is not "pro se status."

Mr. Brouillard says Plaintiff's only claimed class is her self-represented status, which cannot support a § 1985 claim, citing In re Marrett, No. 25-30440-EDK, 2026 WL 479029, at *7–8 (Bankr. D. Mass. Feb. 19, 2026). (Mem at 10–11.) He characterizes that case as addressing the identical question. It does not. The decision is a Memorandum of Decision on the automatic stay and whether certain real property was property of the bankruptcy estate. It does not address § 1985 or class-based animus. It is also a bankruptcy-court decision and is not controlling here. Nor does the FAC rest on pro se status alone. ¶¶ 17, 36, 48–49, 139–142. Plaintiff is a senior citizen (currently 73, ¶17 with a documented psychiatric condition, supported by hospitalizations and diagnoses. ¶¶36, 48–49. *Marrett* did not analyze those characteristics or decide whether facts tying the alleged conduct to age or disability would satisfy § 1985's class-based-animus requirement. Plaintiff preserves for appellate review the question whether a forced pro se litigant, together with age and disability, is a protected class under § 1985(3). ¶¶ 139–142. Her self-

representation was not a choice. It was forced: multiple Rhode Island attorneys declined to enter the case after reviewing the file, even when offered substantial compensation, many of those rejections were reported to the court on the record, and all concluded that entering the case would trigger mandatory reporting obligations under Rhode Island Rule of Professional Conduct 8.3(a). ¶¶31, 110. Self-representation is the instrument through which Defendants allegedly acted on her vulnerability, not offered as a separate class. ¶142. Whether persons with disabilities are a class under § 1985(3) is unsettled. Compare *Lake v. Arnold,* 112 F.3d 682, 688 (3d Cir. 1997) (mentally retarded persons), with *Wilhelm v. Continental Title Co.*, 720 F.2d 1173 (10th Cir. 1983). The First Circuit requires "a class-based, invidiously discriminatory animus," *Knowlton v. Shaw*, 704 F.3d 1, 11–12 (1st Cir. 2013), and a "distinctive and identifiable group," *Aulson v. Blanchard,* 83 F.3d 1, 5 (1st Cir. 1996). To the extent the Court finds the FAC does not tie Defendants' conduct to her age or disability, Plaintiff requests leave to amend. See Part IV-D.

As for the animus, the pleading alleges that Defendants knew all of this. Before the December 13, 2022 agreement, hearings had been reset six times on documented medical grounds, and her doctor's written request to pause the proceedings until she retained counsel or recovered was not acted on. ¶49. The pleading alleges that Defendants proceeded in the face of that knowledge, extracting dismissal agreements during documented psychiatric crises and relying on the absence of counsel, itself a product of the conduct alleged. ¶¶31, 48–49, 140, 142. ¶142 states the claim: that "institutionally financed counsel who deliberately deploys litigation attrition against a forced pro se litigant, with foreknowledge of judicial alignment and in the documented absence of any moderating economic pressure, crosses from aggressive advocacy into the deliberate deprivation of constitutional rights."

**IV-B. The pleading alleges an agreement.**

Defendants offer no explanation for the alignment alleged in the First Amended Complaint. The State Court Defendants filed a crossclaim against Toastmasters and never pursued it. Their counsel propounded no discovery to Toastmasters, coached deposition answers that avoided any testimony about Toastmasters' negligence, and opposed Plaintiff's motion to join her claim against Toastmasters, which would have served his own clients. FAC ¶¶ 37–38. Defendants filed a 3rd party complaint against Toastmasters, See 3rd Party Compl., *Clinton v. Babcock* (filed Sept. 13, 2017). Ms. Clinton subsequently amended her pleading to assert a claim against Toastmasters, and the individual defendants asserted a cross-claim against Toastmasters in their answer to the amended complaint, which was the exact claim originally made in the Third-party complaint, and which superseded the third-party complaint. See Answer to Am. Compl., *Clinton v. Babcock* (filed Oct. 17, 2017). Mr. Brouillard mentions Toastmasters only in passing (Mem at 2–3) and omits both filings. Mr. Brouillard does not say why he left this sequence out of the background in his motion.

The FAC pleads that the third-party complaint was superseded by a crossclaim years earlier, that Mr. Brouillard admitted this in writing, and that he refused Plaintiff's repeated written demands to withdraw it, for years. ¶52. The memorandum mentions the December 27, 2022 stipulation only to argue that Plaintiff's request for a declaration about it is barred. (Mem at 6.) It does not respond to the allegations that the claim was superseded, that he admitted it, or that he refused to withdraw it, and it offers no other explanation for them.

At this stage the question is whether the facts pleaded make the inference of coordination plausible, not who is entitled to draw it. Defendants' own account also confirms the pleaded premise. They state that the December 27, 2022, Stipulation was meant to dismiss "all remaining

claims (i.e., the third-party complaint) between the State Court Defendants and Defendant Toastmasters International." (Id. at 15.) In fact, there were no remaining claims. If by their own description, a live claim stood between Brouillard's clients and Romano's client until the day the two lawyers dismissed it together, why then did neither side ever prosecute it against the other?

Mr. Brouillard says the allegations of parallel filings and shared objectives are conclusory. (Mem at 11.) The pleading alleges more than parallel filings. It alleges the alignment described above ¶¶27, 37–38, the withdrawal of the November 2021 settlement overture from Chubb/Vigilant, on advice that protected Toastmasters ¶79, the two stipulations signed by both attorneys ¶¶ 49, 51, 123–124, Defendant Romano's statement about "the judge is on our side." ¶¶32, 42, 44, the false assertion the dismissal stipulation was "reinstated" in the April 21, 2023 pre-trial conference, the calendaring of two non-dispositive motions on the dispositive-motions date over Plaintiff's written objection ¶60, and the order Mr. Brouillard drafted and Mr. Romano accepted verbatim ¶¶65–68. Mr. Brouillard's motion does not address the alignment with Toastmasters' counsel. A conspiracy claim must "plausibly allege facts indicating an agreement among the conspirators to deprive the plaintiff of her civil rights." *Parker v. Landry*, 935 F.3d 9, 18 (1st Cir. 2019).The alleged agreement, and facts from which it can be inferred, ¶118, meet that standard.

**IV-C. Section 1986.**

Section 1986 carries its own one-year limitation, 42 U.S.C. § 1986, and Plaintiff does not oppose dismissal of that claim as untimely.

**IV-D. Alternatively, leave to amend.**

If the Court concludes that Count V needs more, Plaintiff requests leave under Rule 15(a)(2) to plead the class-based theory within Count V, including the facts bearing on her age and disability. Count V incorporates only paragraphs preceding it (¶116), so the class-based

paragraphs that follow the counts (¶¶139, 142) are not part of it as drafted. Dismissal without prejudice, with leave to amend, is the appropriate disposition.

**V. The claims are timely.**
**A. The injury was not complete until the Order was entered.**

Mr. Brouillard measures accrual from the June 20, 2023, hearing. (Mem at 13.) The Superior Court's written Order was entered on September 1, 2023. ¶ 68. Rhode Island allows appeals from a "final judgment, decree or order of the superior court," R.I. Gen. Laws § 9-24-1, and Plaintiff's appeal was taken from that Order. Three years from September 1, 2023 is September 1, 2026. This action was filed July 28, 2026. (ECF 1.) A claim accrues when the plaintiff has a complete and present cause of action. *Wallace v. Kato*, 549 U.S. 384, 388 (2007) (cited at Mem at 12). Mr. Brouillard himself says the termination was 'memorialized in the September 1, 2023, order that Mr. Brouillard drafted.' (Mem at 13.) "The termination was not complete until the order that memorialized it was entered."

**V-B. Alternatively, accrual occurred when the state litigation ended.**

A claim that challenges the state litigation process accrues no earlier than the end of that process. In *Reed v. Goertz*, the Court held that 'the statute of limitations begins to run at the end of the state-court litigation.' 598 U.S. 230, 232 (2023)/ Plaintiff relies on *Reed* by analogy: her claims challenge what Defendants did in the state process, and that process ended on March 24, 2025, when the Rhode Island Supreme Court affirmed, and on May 16, 2025, when it denied reargument. Counted from either date, this action, filed July 28, 2026, is timely. A claim accrues when the plaintiff has 'a complete and present cause of action.' *Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal.*, 522 U.S. 192, 201 (1997).

**V-C. Knowing of the claim is not the same as a complete injury.**

Mr. Brouillard points to Plaintiff's reservation of her § 1983 rights on February 8, 2023, and to his July 2022 demand that she waives them, as proof that she understood her theory early. (Mem at 13; ¶¶ 48, 55.) Suspecting that a ruling may be wrong and preserving the point for later review in case, is different from knowing of a completed injury. *Wallace v. Kato*, 549 U.S. 384, 388 (2007). Reserving a right is what a litigant does while the process is still under way, and here it was. After March 24, 2023, Plaintiff was moving toward dispositive motions or trial in the state court, the stipulation's effect was the very question that court was still deciding, and Plaintiff had no occasion to bring a federal claim challenging a process that was still under way. The injury alleged was not complete until the Order was entered, and not final until the litigation ended in the appellate court with the denial of reargument. May 16, 2025.

Brouillard cites *Martin v. Somerset County*, 86 F.4th 938, 943–44 (1st Cir. 2023), for the rule that a § 1983 claim accrues when the plaintiff knows or has reason to know "of the injury that is the basis for the claim." (Mem at 13. )*Martin* should not be read to mean that every § 1983 claim accrues when a plaintiff knows of some injury. The relevant injury is the one that forms the basis of the particular claim, and accrual depends on the nature of that claim and the facts that establish knowledge. Plaintiff does not agree but for discussion of accrual, here Brouillard himself identifies that injury as "the termination of her case without a merits adjudication," which he says "was memorialized in the September 1, 2023 order that Mr. Brouillard drafted." *Id.* The June 20, 2023, ruling was not a termination. The trial justice called it a decision on reconsideration of "its interlocutory decision," and said that "when a change of course is proper" she had "inherent power" to modify an interlocutory order "prior to final judgment." *Clinton v. Babcock*, 332 A.3d 173, (R.I. 2025). The Supreme Court likewise described the ruling as one in

which the trial justice reversed "her previous interlocutory ruling," and noted her "plenary authority to afford relief from interlocutory judgments." *Id. Clinton v. Babcock, 332 A.3d 167, 172 (R.I. 2025); see id. at 172 n.7.* A claim based on termination was not complete and present until the September 1, 2023 order, which is within the three-year period. For a claim governed by *Reed v. Goertz*, 598 U.S. 230 (2023), "where the end of the state litigation may control."

**V-D. The conduct pleaded extends into the limitations period.**

Even on Mr. Brouillard's view that each claim runs from the last act attributed to him, the pleading alleges later acts. It alleges that during the appeal he stated, in response to Plaintiff's proposal to mediate, "You don't have a chance of winning this appeal. We don't want to give you anything," ¶108, and that Defendants continued their conduct through the appeal, which the Rhode Island Supreme Court decided on March 24, 2025 with denial of reargument on May 16, 2025. ¶¶108, 118. Whether those later acts are separately actionable cannot be resolved against Plaintiff on a motion to dismiss.

**V-E. Dismissal on limitations grounds is not warranted.**

Limitations is an affirmative defense, and dismissal is proper only where the facts establishing it are clear on the face of the complaint and conclusively show the claim is time-barred. *In re Colonial*, 324 F.3d at 16. The FAC pleads that the Order was entered on September 1, 2023, that the state litigation did not end until 2025, and that Defendants continued to act during the appeal. ¶¶ 68, 108. Those facts do not conclusively establish a time bar.

**VI. The state-law claims.**

**A. The litigation privilege does not bar the claims.**

Mr. Brouillard invokes Rhode Island's absolute litigation privilege, citing *Evoqua Water Technologies LLC v. Moriarty*, 334 A.3d 429 434–35 (R.I. 2025), and argues it bars the tort claims "to the extent they rest on" his statements and filings. (Mem at 14.) Three points answer this. **First,** the privilege is a defense to state-law tort claims. State law cannot immunize conduct

that violates § 1983 or § 1985(3). *Martinez v. California*, 444 U.S. 277, 284 n.8 (1980). The federal counts are unaffected.

**Second,** *Evoqua* protected a witness's testimony at a hearing and described the privilege as one that exists so that witnesses may "speak freely." *Evoqua Water Technologies LLC v. Moriarty*, 334 A.3d 429 434–35 (R.I. 2025), at 7–9. The question it asks is whether the communication was "made in the context of a judicial or quasi-judicial proceeding" and was "material, pertinent or relevant" to the issues. *Id.* It did not decide whether the privilege shields a party's own counsel from a claim of fraud on the court, and it did not hold that conduct is privileged merely because a lawyer performed it during litigation. The FAC alleges conduct, not only statements: the demand that Plaintiff waive her right to appeal and to sue under § 1983 as the price of settlement ¶¶ 48, 119; the maintenance of a superseded pleading for an undisclosed purpose ¶¶52–53; the alignment with the co-defendant's counsel ¶¶37–38; more than twenty hours of deposition under conditions that required a private security guard ¶34(4); a meritless trademark claim and a frivolous abuse-of-process counterclaim ¶34(5).The former included in the December 13, 2022 Dismissal Stipulation and the later dismissed after deposition testimony proved the claim was false, frivolous and vexatious with false claims of damages for costs of legal expenses when there were none as his client's insurance was paying the legal fees.

**Third,** neither stipulation is a pleading, and the privilege should not be extended to them on this motion. The December 13 agreement is the basis of a representation made to Plaintiff to induce her own act, not a statement to the court on an issue in the case. ¶123; see Part VI.B. The December 27 stipulation was filed without notice to Plaintiff and without her knowledge or consent. ¶51. Whether a dismissal of "remaining claims" that the FAC alleges did not exist was "material, pertinent or relevant to the issues" is not a question the Court can resolve against

Plaintiff on a motion to dismiss. *Cf. Ims v. Town of Portsmouth*, 32 A.3d 914, 929 (R.I. 2011) "communication that was a prerequisite to, not part of a judicial proceeding, was not privileged".

**VI-B. Count VI (fraud).**

Mr. Brouillard says Plaintiff's fraud claim is directed at representations to the Superior Court and the Clerk and not at representations made to her on which she justifiably relied. (Mem at 14.) That overlooks ¶123 that pleads the "**First Fraud**": Defendants Brouillard and Romano executed the December 13, 2022 agreement, which by its terms purported to dismiss all claims, counterclaims and crossclaims, under the docket; Plaintiff "relied upon this agreement and filed the dismissal under Rule 41(a)(1)(B), the case was marked closed/dismissed on December 13, 2022. The memorandum Plaintiff filed with the Stipulation stated that she was acting to protect her health and asserted that it should be the last document filed in the case. ¶ 49.Mr. Brouillard knew the representation was false because he had admitted in writing that the third-party complaint was superseded, yet refused to withdraw it. ¶123. That is a representation to Plaintiff, her reliance, and her damage: "the deprivation of adjudication on the merits and any settlement proceeds she would have been entitled to." ¶123.

Mr. Brouillard's motion does not dispute that he knew the third-party complaint was superseded. The FAC alleges that he acknowledged it in writing, refused Plaintiff's repeated written demands to withdraw it, and then signed a second stipulation dismissing "remaining claims." ¶¶52–53, 123–124. He cannot have it both ways. If the superseded pleading was a nullity, the December 13 agreement did dismiss everything, and the second stipulation's premise that "remaining claims" existed was false. If it was still alive, the December 13 agreement's statement that it dismissed all claims, counterclaims and crossclaims under the docket was false, and he knew it when he signed. Either way the representation was false when made, he knew it,

and Plaintiff relied on it. Rule 9(b) allows knowledge and intent may be alleged generally, Fed. R. Civ. P. 9(b), and the FAC supports them with facts: the written acknowledgment, the refusal to withdraw, and the undisclosed financial purpose of the second filing, alongside the hourly-billing incentive and his alignment with Toastmasters' counsel. ¶¶37–38, 117, 125.

The **second fraud,** ¶124, concerns the December 27 stipulation presented to the Clerk. As to particularity, the pleading identifies **who** signed each document, **when, what it stated, and why** it was false. ¶49, 51–54, 123–124.

The Vigilant Defendants answer that Plaintiff 'could have ended the litigation at any time,' which she 'ultimately did by voluntarily dismissing her claims.' (Reply at 10.) That recasts the pleading. In July 2022, in acute psychiatric crisis and directed by her doctors to present herself to the emergency room, Plaintiff offered to dismiss all claims, and Defendants Brouillard and Romano refused unless she waived her right to appeal and her § 1983 claim, for no consideration. ¶¶34(8), 48, 119. The December 13, 2022, dismissal she then filed, without those terms. It was filed pro se; again in acute distress, through the Vigilant claims personnel acting as liaison with the attorneys because Plaintiff was unable to get the assistance of a single attorney. Not a single one would help. Again, in acute distress, absent the limiting language the attorney previously insisted on, it was done to protect her health, and the Vigilant Defendants' claims personnel were informed of her condition and her inability to retain counsel facilitated it. Dismissal undertaken with those conditions can hardly be called anything but surrender at the hands of a superior power that was holding out, for that event. t¶49. The Reply does not address those allegations. A motion to dismiss tests the pleading, not counsel's account of it.

**VI-C. Count IX (abuse of process).**

Mr. Brouillard argues that process used for its designed end cannot be abused, and that the pleading describes only the filing of motions and stipulations. (Mem at 14–15.) Abuse of process lies where a legal procedure "has been perverted to accomplish an ulterior or wrongful purpose for which it was not designed." *Nagy v. McBurney*, 392 A.2d 365, 370 (R.I. 1978). The pleading alleges an ulterior purpose: that the litigation was deployed to exhaust a self-represented litigant until she surrendered her claims, ¶¶34,46,133, and that the second stipulation was filed for an undisclosed financial purpose and to resolve a pleading kept alive despite that Mr. Brouillard had admitted it was superseded, ¶¶52–53,125. His motion does not address ulterior purpose at all. The FAC alleges that process regular in form, was used to accomplish that purpose. ¶¶ 51–54, 60, 62, 133.

**VI-D. Count X (malicious prosecution).**

Mr. Brouillard misidentifies the proceeding on which Count X rests. It rests not on Plaintiff's own claims in the State Court Action but on the claims his clients asserted against her: a trademark infringement claim and an abuse-of-process counterclaim, both false, frivolous, unsupported and vexatious. FAC ¶135. Plaintiff was the defendant on those claims, and favorable termination is measured by how they ended. Mr. Brouillard argues that the abuse-of-process counterclaim was dismissed without prejudice and so did not terminate in her favor. (Mem at 15.) The question is why the claim ended, not what the dismissal was called. The FAC pleads that Defendants' clients abandoned it after testifying at deposition that they had suffered no financial damage, because insurance paid their expenses. ¶¶ 34(5), 135. Abandonment on that record is not a compromise or settlement within *Nagy*, 392 A.2d at 368 Plaintiff paid nothing and released nothing. Whether the stipulation reflects abandonment or compromise depends on facts the Court cannot resolve against Plaintiff on this motion.

## VI-E. Count XI (intentional infliction of emotional distress).

Mr. Brouillard argues that litigation conduct, "filing motions, opposing Plaintiff's positions, and declining to settle," is not outrageous. (Mem at 15.) Plaintiff does not contend that defending a lawsuit is itself outrageous. The pleading alleges a sustained course of conduct against a self-represented senior citizen, forced to be pro se, with a documented psychiatric condition whom Defendants knew to be vulnerable. ¶¶31, 36, 46, 48–49. It alleges that Mr. Brouillard demanded, as the price of release from litigation that was damaging her health, that she give up her right to appeal and to bring a federal civil rights claim, at a time she had been told to present herself to a hospital emergency room, ¶¶48,119; that Plaintiff was subjected to more than twenty hours of depositions under conditions so threatening that she required a private security guard, reported on the record, ¶34(4); and that he maintained for years a pleading he had admitted was superseded, over repeated written demands that he withdraw it, and then used it as the basis for a second dismissal. ¶¶ 52–53, 123–124. That is not a defendant who has "done no more than insist on his legal rights in a permissible way." (Mem at 15.) Demanding that a litigant surrender her right to appeal and to bring a civil rights claim, and keeping alive a pleading one has admitted is superseded, is not the pursuit of legal rights. Rhode Island's Abusive Litigation Statute, R.I. Gen. Laws § 8-8.4-6, recognizes injuries of this kind as comparable to physical violence. ¶36. Whether conduct is extreme and outrageous is judged on the facts alleged and on the defendant's knowledge of the plaintiff's vulnerability, and it cannot be resolved against her on the pleadings. See *Swerdlick v. Koch*, 721 A.2d 849, 862–63 (R.I. 1998). . It is judged on the facts alleged and on the defendant's knowledge of the plaintiff's vulnerability, and it cannot be resolved against her on the pleadings. See *Swerdlick v. Koch*, 721 A.2d 849, 862–63 (R.I. 1998). Rhode Island follows Restatement (Second) of Torts § 46 *cmt. f* on defendants who know of a plaintiff's susceptibility. The federal claim in Count XI is addressed in Parts VI.

The Vigilant Defendants say the injuries pleaded, "lost settlement proceeds, the lost value of [the state] claims," arise from the judgment. (Mem at 2–3.) Those describe what Plaintiff lost, not what caused the loss. A defendant whose conduct causes a plaintiff to lose a claim answers in damages measured by what the claim was worth. Plaintiff alleges that Defendants' conduct violated her constitutional rights and caused the loss. ¶¶14, 143. Awarding those damages would require this Court to find that Defendants' conduct caused the loss, not that the state judgment was wrong. *Exxon Mobil*, 544 U.S. at 293. Plaintiff sues under 42 U.S.C. § 1983 for the violation of her rights, and damages under that statute compensate the injury the violation caused. *Carey v. Piphus*, 435 U.S. 247, 254–55, 264 (1978). The Vigilant Defendants say "all of the requested relief stems from" the loss of her claims. (ECF 45 at 3.) That is not what ¶143 pleads. Only two of its heads, the loss of the right to trial and lost settlement proceeds or value of her claims, concern the outcome of the state case. The others do not: psychiatric hospitalization, legal expenses and litigation costs, interference with the right to counsel, and reputational harm. Much of that injury was incurred before the state court ruled. The FAC pleads hospitalization in November 2021 and February 2022, ¶47, and the loss of the limited scope attorney in 2021, ¶¶ 31–32, 44, 110. It was caused by the conduct pleaded, not by a judgment that did not yet exist. *Exxon Mobil*, 544 U.S. at 284. The deprivation of her causes of action is itself a deprivation of property protected by due process. *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428 (1982). ¶ 143. None of these injuries requires this Court to find the state judgment wrong. The pleading is explicit about what it does not ask: "Plaintiff does not challenge whether the order's entry was procedurally proper under Rhode Island law." ¶74. The conduct alleged consists of "Defendants' own choices, provable from their own filed documents, and conduct associated with those documents, requiring no assessment of the order's correctness." *Id.* A private party who obtains a

ruling by fraud, or who conspires with others to do so, can be sued for that conduct without the federal court holding that the ruling was erroneous on its own terms. That is the sense of *Exxon Mobil's* statement that an independent claim survives even when it "denies a legal conclusion" the state court reached. *Exxon Mobil* 544 U.S. at 293.

**VI-F. Count VIII and the remaining state-law claims.**

As to Count VIII, Plaintiff does not oppose dismissal, without prejudice, of the freestanding damages theory under Article I, § 15 of the Rhode Island Constitution. See *Bandoni v. State,* 715 A.2d 580, 595 (R.I. 1998). The federal due process claim in Count VIII remains. Mr. Brouillard asks the Court to decline supplemental jurisdiction if the federal claims are dismissed. (Mem at 13.) Because at least one federal claim remains, the Court has supplemental jurisdiction over state-law claims that "derive from a common nucleus of operative fact." *City of Chicago v. International College of Surgeons*, 522 U.S. 156, 164–65 (1997); 28 U.S.C. § 1367(c).

**VII. Dismissal with prejudice is not warranted; alternatively, Plaintiff should be allowed to amend.**

Mr. Brouillard argues that amendment would be futile because the defects are fundamental. (Mem at 16.) The defects he identifies depend on how he characterizes the pleading: that it seeks revoking of the state ruling, that he is only a lawyer, and that pro se status is the only class. The FAC pleads otherwise, and where the Court finds a gap, it can be cured by additional allegations. If the Court finds any deficiency, Plaintiff requests dismissal without prejudice and leave under Rule 15(a)(2) to file a motion to amend, with a proposed Second Amended Complaint, The First Amended Complaint is Plaintiff's only amendment. It was made at the Vigilant Defendants' request and added no new defendants. See Part V.E of her response to the Vigilant Defendants' motion. No court has found a defect in it. If the Court finds any deficiency, Plaintiff requests dismissal without prejudice and leave under Rule 15(a)(2) to file a motion to amend, with a proposed Second Amended Complaint. It would not be futile. It would:

**(1)** attribute each allegation to specific Defendants, separating Mr. Romano, Toastmasters and Mr. Rex from each other and from Mr. Brouillard and the Vigilant Defendants; **(2)** state the facts each count relies on and plead the federal and state-law theories in separate counts; **(3)** add detail on the agreement and on the financing and approval of the tactics pleaded, including what Toastmasters and Mr. Rex knew, and when, about the superseded third-party complaint and Plaintiff's medical condition before the December 13 and December 27, 2022 stipulations, the January 2023 letter to Mr. Rex, and the circumstances of each stipulation; **(4)** add what Mr. Romano knew and when, including the November 2021 communications; **(5)** add a count for aiding and abetting the fraud alleged in Count VI; **(6)** plead the class-based claim in Count V with the facts in Part IV.C: Plaintiff's age and documented diagnosis, when and how each Defendant learned of them, and what each did in that knowledge; **(7)** as to Count X, state who brought each claim against Plaintiff in the state action, how and when each ended, that neither ended in a compromise, and the injury Plaintiff suffered, including that experts declined to work with a self-represented party and that a second attorney whom she agreed to pay a $20,000 retainer declined after reviewing the file, stating that he was an old family friend of the first attorney who had withdrawn after speaking with Mr. Romano; and Plaintiff was unable to get the assistance of a single attorney after contacting more than 6 and offering $5000 to help with the December 12-(13), 2022 dismissal proffer. **(8)** conform ¶31, and ¶52 to the record; **(9)** add dated acts and communications, including those within the limitations period, together with the supporting documents and state-court docket entries; **(10)** add such further facts, with dates and sources, as Plaintiff has identified since filing; and **(11)** correct dates, citations and paragraph numbering, including the date of the certiorari denial in ¶16, the year of the Rhode Island Supreme Court's decision in *Clinton v. Babcock, No.* 2023-310-Appeal, which ¶¶88, 106 and

138 give as 2024 but was issued in 2025, and the two paragraphs numbered 133, together with conforming and clerical changes.. **(12)** add that Mr. Brouillard's November 6, 2021 written statement that "There are no third party claims" was sent to Mr. Romano,

## VIII. Plaintiff challenges what Defendants did; Not what the Superior Court decided.

Mr. Brouillard closes with the proposition that Plaintiff is "indisputably a state-court loser" whose claims "were voluntarily dismissed." (Mem at 6.) The FAC makes no allegation that her injuries are caused by the state-court judgment. The pleading states that Plaintiff "is not challenging the June 20 ruling as a matter of law; she challenges the process by which it was produced and the joint actions of Defendants that led up to it and caused it." ¶61; see ¶74. The pleading alleges that the process was carried out through "falsehoods, strategic manipulation, and counsel's calculated misuse of procedural machinery," ¶64, the exploitation of Plaintiff's disability that was exacerbated by the joint action conduct, the improper alignment of the defendants to cause the circumstances endangering Plaintiff's health, causing her to surrender her claims to protect her health. ¶¶11,27-b,31,87,89,139,(3),142; that Defendants drafted the order that "concealed the mechanism of termination." ¶¶12, 118(h); see ¶¶9, 69.

Mr. Brouillard invokes the "critical datum": whether this suit is "an end-run around a final state-court judgment." (Mem at 5 (quoting *Klimowicz,* 907 F.3d at 66).) It is not. An end-run would re-assert the claims Plaintiff litigated in state court: defamation and emotional distress against five Toastmasters club members and the related claims against Toastmasters International, or it would be seeking a ruling that would allow those claims to be rehabilitated and finally adjudicated. Plaintiff does not seek this. ¶¶30, 131. She asserts none of them. Counts IV and VII are backward-looking access-to-courts claims of the kind recognized in *Christopher v. Harbury*, 536 U.S. 403, 413–415 (2002). ¶¶6,13,96,115. Plaintiff's underlying claims are permanently extinguished, no state forum remains, and she seeks no ruling that revives them.

¶74. She sues these Defendants for their own conduct over more than six years: the coordination, the financing, and false statements to the court and its Clerk that the pleading alleges, caused the loss of her claims and a trial on the merits. ¶¶,13,30,34, 46,90. *Id* 536 U.S. 403, 413–15 (2002).

Finally, Mr. Brouillard characterizes the claims as having been "voluntarily dismissed" and affirmed on appeal. (Mem at 6.) Plaintiff acknowledges the decisions. Plaintiff does not ask this Court to revoke any decision. The Supreme Court addressed what Plaintiff showed in that proceeding. Its statement that she "fails to point to anything in the record that would support an argument alleging fraud, mutual mistake, or other extraordinary circumstances" applied the state standard for vacating the December 13 agreement. It's approval of the trial justice's finding on duress, concerned whether Plaintiff carried her burden on that record. *Clinton v. Babcock*, 332 A.3d 173 (R.I. 2025). It did not address the right to a jury trial, due process, 42 U.S.C. § 1983, 1985, or whether Defendants' conduct violated Plaintiff's federal rights. The FAC alleges what Defendants did. Whether those allegations are proved is for later in this case, and resolving it does not require rejecting any state judgment. ¶¶6,74. It does not discuss the representations Defendants made to the Clerk and the trial court: that 'remaining claims' existed when the December 27, 2022, stipulation was filed, and that the April 21 conference had reinstated the dismissal. ¶¶63, 122–124. No court has examined those representations or the conduct behind them, or whether Defendants' own conduct violated Plaintiff's rights, and the FAC does not ask this Court to revoke any ruling. ¶138.and they could not have been raised on that appeal. This Court is asked to examine private-party conduct, by different defendants, on claims no prior court decided. Discovery, fact-finding, and adversarial testing of Defendants' independent conduct can occur only here. ¶64. This is a different court, different defendants, different claims which are claims of constitutional violations under 42 U.S.C. § §1983 and 1985. Mr. Brouillard

does not argue that the constitutional rights alleged are not protected. Apart from his arguments on Counts I and V, his memorandum does not challenge the merits of Plaintiff's constitutional claims. Plaintiff asks the Court to treat those claims as unchallenged for purposes of this motion. Any argument first raised in a reply memorandum is not properly before the Court on this motion, and Plaintiff has had no opportunity to answer it, *Noonan,* 723 F. Supp. 2d at 349.

## CONCLUSION

**Plaintiff respectfully requests that the Court:**

1. Deny the motion to dismiss as to Counts I, II, III, IV, VI, IX and XI as against Mr. Brouillard;
2. Deny the motion as to Count V, except as to the claim under 42 U.S.C. § 1986, or in the alternative dismiss without prejudice and grant leave to amend;
3. Deny the motion as to Count VIII to the extent it asserts a claim under the Due Process Clause of the Fourteenth Amendment, and dismiss without prejudice the freestanding damages theory under Article I, § 15 of the Rhode Island Constitution;
4. Deny the motion as to all counts, except the claim under 42 U.S.C. § 1986 and the freestanding damages theory under Article I, § 15 of the Rhode Island Constitution;
5. Retain supplemental jurisdiction over the remaining state-law claims;
6. In the alternative, to the extent the Court finds any pleading deficiency, dismiss without prejudice and grant Plaintiff leave under Rule 15(a)(2) to file a motion to amend, with a proposed Second Amended Complaint addressing all pending motions, within thirty days after the later of the Court's order or the completion of Rule 12 briefing as to all Defendants; and
7. Grant such other relief as is just.

Pursuant to Local Rule Cv 7(c), Plaintiff does not request oral argument or an evidentiary hearing.

Respectfully submitted,
Judith Clinton Plaintiff, pro se

Judith Clinton – Plaintiff Pro se
418 Benefit Street
Providence, RI 0293
Jclinton14@msn.com
860-389-0402
**No. 1:26-cv-00510-JJM-RLA**

**CERTIFICATE OF SERVICE**

I, Judith Clinton, the Pro se Plaintiff in **No. 1:26-cv-00510-JJM-RLA** certify that on November 23, 2026, I delivered this document **Plaintiff's Response in Opposition to Defendant Stephen Brouillard's Motion to Dismiss with Incorporated Memorandum of Law**, to the Clerk's Office for filing in the CM/ECF system and served it by email on all counsel of record.

Signed________________________ Dated 11-23-26