**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

JUDITH CLINTON,
*Plaintiff,*

v. C.A. No. 1:26-cv-00510-JJM-RLA

STEPHEN BROUILLARD, ESQ.,
TODD ROMANO, ESQ.,
VIGILANT INSURANCE COMPANY,
JEFFREY PASEK, DEBORAH SWIFT,
NORMAN RAFSOL, KEVIN RAMPE,
TOASTMASTERS INTERNATIONAL, and
DANIEL REX,
*Defendants.*

**PLAINTIFF'S RESPONSE IN OPPOSITION TO THE MOTION TO DISMISS OF DEFENDANTS TODD J. ROMANO, TOASTMASTERS INTERNATIONAL AND DANIEL REX (ECF No. 43 and Memorandum, ECF No. 43-1), WITH INCORPORATED MEMORANDUM OF LAW**

**INTRODUCTION**

Plaintiff Judith Clinton, pro se, opposes the motion to dismiss filed by Defendants Todd J. Romano, Toastmasters International ("Toastmasters") and Daniel Rex (together, "these Defendants"). (Memorandum, ECF 43-1 ("Mem").) These Defendants also join, "where applicable," the motions of the Vigilant Defendants (ECF 39-1) and Mr. Brouillard (ECF 41-1). (Mem at 1.) Plaintiff has responded to those motions (ECF 42; to ECF 39) and incorporates those responses to the extent these Defendants join them. This response addresses the arguments in these Defendants' memorandum, and where a point is shared it cites the earlier response instead of repeating it.

These Defendants describe Plaintiff as "having lost every step of the way" and say she now "seeks to malign" them and their counsel. (Mem at 2.) The First Amended Complaint (ECF 8) ("FAC") alleges something different. ¶ 1.

FILED
NOV 25 2026
U.S. DISTRICT COURT
DISTRICT OF RHODE ISLAND

Plaintiff brings this civil rights action for damages and declaratory relief under 42 U.S.C. §§ 1983, 1985, 1986, and 1988. She alleges that private attorneys, corporate insurers, and institutional actors jointly used state judicial machinery to deprive her of due process, equal protection, the right to petition, and the right to trial. Plaintiff alleges that Defendants acted in concert with one another and through invocation of state court procedures in a manner that satisfies state-action requirement under *Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982), *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970) (private party who is a "willful participant in joint activity with the State or its agents" acts under color of law).

It alleges that Mr. Romano and Mr. Brouillard, attorneys for adverse parties, acted together through the processes of the Rhode Island Superior Court to prevent Plaintiff's claims from reaching a merits adjudication or from being resolved through settlement, ¶¶9, 34(6); that they did so through specific acts, including stopping a settlement discussion that Chubb/Vigilant's adjuster had invited, ¶79; refusing Plaintiff's first dismissal proffer unless she waived her right to appeal and to bring a federal civil rights claim, ¶48; filing a second stipulation without notice to Plaintiff on the premise that "remaining claims" existed, when in fact there were no remaining claims. ¶¶51–54, 124; calendaring two non-dispositive motions on a date set only for dispositive motions, over Plaintiff's written objections, ¶60; an order drafted by one, accepted by the other, and entered by the court verbatim, over Plaintiff's written objection, which concealed how the ruling was reached, ¶¶65–68; and that they did so against a litigant whose self-representation was not voluntary, ¶¶31–32,110, and whose age (73,) and medical condition were documented and known to them as well as to the court. ¶¶17, 56. These are the acts the FAC pleads with the most specificity. They are examples of a sustained pattern of joint action across the years of this litigation, not the limit of it. ¶¶ 9, 76.

The memorandum is 50 pages, signed by Mr. Romano, who is a defendant and who appears for himself and two others, Toastmasters International and its CEO, Daniel Rex. These Defendants dispute some of those allegations, for example by asserting that Mr. Romano's statement that "the judge is on their side" was "never in fact made." (Mem at 44.) A motion to dismiss does not resolve such disputes. It tests whether the FAC, taking its facts as true, states a claim. These Defendants ask for dismissal on the grounds that *Rooker-Feldman* bars the action; that they are not state actors; that Counts I and V fail to state a claim; that the federal claims are untimely; and that the state-law claims fail. (Mem at 49–50.) None requires dismissal. If the Court finds a deficiency, the remedy is leave to amend.

## BACKGROUND

Plaintiff relies on the allegations of the FAC, which the Court must accept as true. She also notes what these Defendants' own memorandum says about the two stipulations, not for the truth of their characterizations but because it shows what they say the filings were for. They state that the individual defendants "filed an answer and third-party complaint against Defendant Toastmasters International" and later "an answer and crossclaim" (Mem at 3), but do not say that the crossclaim superseded the third-party complaint, which the FAC alleges Mr. Brouillard admitted in writing. ¶¶52–53, 123. They state that the December 13 agreement dismissed "all claims, counterclaims, and crossclaims" and was signed by "all parties" (Mem at 3), and that the December 27 stipulation dismissing "all remaining claims" was filed "specifically with the third-party complaint in mind" and was a "belt-and-suspenders" "formality." (*Id.* at 4; see *id.* at 15.) The FAC alleges that both attorneys knew when they signed the December 13 agreement that no claims remained and knew it again when they drafted the December 27 document. ¶ 52. They also assert that, "[u]pon filing, that dismissal stipulation had the attributes of a consent order and could only

be vacated by written motion with notice to each party." (Mem at 4–5 (citing *Resendes v. Brown*, 966 A.2d 1249 (R.I. 2009)).)[1]

They assert that "Plaintiff goes on to allege that Defendant Toastmasters International coopted state power." (Mem at 10.) The FAC alleges that Toastmasters through its attorneys ¶46 joined with state actors in the conduct described, with the knowledge, approval, and financial support of Toastmasters. It is enough that [the person] is a willful participant in joint activity with the State or its agents." *United States v. Price*, 383 U.S. 787, 794 (1966). A private party who conspires with a state official to deprive another of constitutional rights acts under color of law. *Dennis v. Sparks*, 449 U.S. 24, 27–29 (1980). See Part II.

## LEGAL STANDARD

A complaint survives Rule 12(b)(6) if its facts, taken as true, state a plausible claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2011). These Defendants state the plausibility standard (Mem at 8) but, unlike Mr. Brouillard (ECF 41-1 at 2), do not say they accept the FAC's allegations as true for purposes of their motion, and they dispute some of them. They leave most of the pleaded facts unanswered. The Court accepts well-pleaded facts, draws reasonable inferences for Plaintiff, and reads a pro se complaint liberally. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). The Court may consider the state-court docket for the existence and procedural history of those proceedings, but not for the truth of disputed statements in them. See *Watterson v. Page*, 987 F.2d 1, 3–4 (1st Cir. 1993); *Boateng v. InterAmerican Univ., Inc.*, 210 F.3d 56, 60 (1st Cir. 2000).

---

[1]The case law cited does not distinguish a dismissal stipulation as having attributes of a "consent order" without the assent of counsel and without judicial oversight, neither of which existed in this case. This is the same inapplicable case law cited by Defendants for the first time in their appellate brief, never raised in the Superior Court, in violation of the raise-or-waive doctrine, yet taken up by that court. It is noted now only as it relates to Count I concerning disparate treatment which takes into account aspects of the litigation for its history only.

The *Rooker-Feldman* argument arises under Rule 12(b)(1), but these Defendants dispute no jurisdictional fact pleaded. They argue that Plaintiff "seeks federal review and rejection of her unfavorable state court outcomes." (Mem at 49.) The FAC disclaims that request six times. ¶¶ 6, 11, 13, 15, 61, 74. Its allegations are taken as true. See *Valentin v. Hosp. Bella Vista*, 254 F.3d 358, 363 (1st Cir. 2001). Romano's reliance on *Aversa* (Mem at 7) does not change this. Even where a court may consider evidence on a Rule 12(b)(1) motion, these Defendants have submitted none. Their account of the state proceedings is made in a memorandum, not in affidavits, depositions, or exhibits.

Plaintiff does not object to the Court's considering the January 14, 2022, petition for certiorari for what it says, since the FAC refers to it. ¶14. She objects to the use of it to resolve a disputed fact against her: these Defendants characterize it as showing knowledge of a § 1983 claim (Mem at 41–42), while the FAC pleads that it documented treatment "for a future claim." ¶14. *See* Part VI. The same is true of their account of the state proceedings (Mem at 4–5) and their assertions that the statement of October 2021 was "never in fact made" (Mem at 44). These are counsel's statements and characterizations, not matters of public record. If the Court considers them, Rule 12(d) requires that the motion be treated as one for summary judgment and that "all parties must be given a reasonable opportunity to present all the material that is pertinent." Fed. R. Civ. P. 12(d). Plaintiff asks the Court to exclude them. If it does not, she requests notice and a reasonable opportunity to respond with evidence, including discovery under Rule 56(d) on the joint-action facts (FAC ¶¶51–60, 62–63, 65–68).

Arguments first raised in a reply memorandum are not properly before the Court. 'The purpose of a reply memorandum is not to file new arguments that could have been raised in a supporting memorandum,' and reply memoranda 'are limited to rebuttal of factual and legal

arguments raised in the opposition.' *Noonan v. Wonderland Greyhound Park Realty LLC*, 723 F. Supp. 2d 298, 349 (D. Mass. 2010). Plaintiff does not answer new matter in the Vigilant Defendants' reply (ECF 45) except where noted as it bears on Mr. Brouillard's motion, and she asks the Court to disregard any argument not made in Mr. Brouillard's opening memorandum or Mr. Romano's memorandum.

These Defendants' account of the state proceedings (Mem at 5–6, 21–23) is addressed in Part I-D, and their repeated statements that Plaintiff is "unqualified" because she has no law license (Mem at 14, 16, 35) are addressed in Part II-D. Disagreement about the facts is a reason for discovery and trial, not a ground for dismissal.

## ARGUMENT

### I. *Rooker-Feldman* does not bar this action.

### I-A. The doctrine is narrow, and the FAC brings an independent claim.

Plaintiff incorporates Parts I.A and I.B of her response (ECF 46 at5-8) to Mr. Brouillard's motion (ECF 41), which answers the same *Rooker-Feldman* argument and the same authorities. In short, the doctrine is confined to cases in which a state-court loser asks a federal court to reject a state judgment. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284, 293 (2005); *T.M. v. Univ. of Md. Med. Sys. Corp.*, 146 S. Ct. 1739, 1744 (2026). The FAC alleges injuries caused by Defendants' own conduct, much of it years before any ruling, ¶¶9, 12, 28–29, 34, and says repeatedly that it asks for no review of any state ruling. ¶¶6, 11, 16, 61, 74, 124. The relief it requests is damages and declaratory relief concerning Defendants' conduct. ¶144. Whether any state ruling has preclusive effect is a separate question that these Defendants do not develop.

### I-B. Plaintiff challenges what Defendants did, not what the Superior Court decided.

These Defendants assert that Plaintiff, "having lost every step of the way," seeks to reverse her "unfavorable state court outcomes" (Mem at 2, 48), and they repeat the same characterization, that Plaintiff seeks "rejection" of the state-court outcomes, on eight pages of their memorandum

(Mem at 2, 16, 20, 22–24, 26, 49), each time without identifying any relief requested in the FAC to void, revoke, or reverse a state-court ruling. Repeating the characterization does not make it accurate. This is a §1983 claim, not a *Rooker-Feldman* claim. Whether Defendants' conduct violated Plaintiff's rights is a question this Court can decide without deciding that any state court was wrong. The FAC says so repeatedly:

> ¶ 6: "Plaintiff doesn't seek reversal of any state-court judgment; she seeks damages for Defendants' conduct engineering and producing it."
>
> ¶ 11: the claim is "independent." The injury flows from Defendants' conduct "rather than from the mere existence of a state-court judgment," and "would remain wrongful regardless of the legal correctness of any resulting state-court order." It ends: "Not a *Rooker-Feldman* case, it's a § 1983 case."
>
> ¶ 13: Defendants' conduct is "independently actionable whether or not the rulings those acts produced were legally correct, and that does not require this Court to find the state court wrongly decided any issue before it."
>
> ¶ 15: the complaint "does not allege that the presiding justice's rulings were themselves actionable, nor does it ask that the rulings be vacated or relitigated."
>
> ¶ 61: "Plaintiff is not challenging the June 20 ruling as a matter of law; she challenges the process by which it was produced."
>
> ¶ 74: "Plaintiff does not challenge whether the order's entry was procedurally proper under Rhode Island law."
>
> ¶ 138: no court has decided whether Defendants' conduct, as an independent claim, was wrongful, and neither issue nor claim preclusion bars the § 1983 claim.

Nowhere does the FAC ask this Court to reject, vacate, overturn, or declare incorrect any state-court decision. The relief it requests, ¶144, is damages, declaratory relief about what Defendants did, and an accounting under 42 U.S.C. §§ 1983 and 1985 for violations of Plaintiff's constitutional rights. None of it is directed at a state-court judgment or order.

The Vigilant Defendants say the injuries pleaded, "lost settlement proceeds, the lost value of [the state] claims," arise from the judgment. (ECF 45 at 2–3.) Those describe what Plaintiff lost,

not what caused the loss. A defendant whose conduct causes a plaintiff to lose a claim answer in damages measured by what the claim was worth. Plaintiff alleges that Defendants' conduct violated her constitutional rights and caused the loss. ¶¶14, 143. Awarding those damages would require this Court to find that Defendants' conduct caused the loss, not that the state judgment was wrong. *Exxon Mobil*, 544 U.S. at 293. Damages under § 1983 compensate the injury the violation caused. *Carey v. Piphus*, 435 U.S. 247, 254–55, 264 (1978).

The Vigilant Defendants also say "all of the requested relief stems from" the loss of her claims. (ECF 45 at 3.) That is not what ¶143 pleads. Only two of its heads, the loss of the right to trial and lost settlement proceeds or value of her claims, concern the outcome of the state case. The others do not: psychiatric hospitalization, legal expenses and litigation costs, interference with the right to counsel, and reputational harm. Much of that injury was incurred before the state court ruled. The FAC pleads hospitalization in November 2021 and February 2022, ¶47, and the loss of her limited scope counsel in 2021, ¶¶31–32, 44, 110. It was caused by the conduct pleaded, not by a judgment that did not yet exist. *Exxon Mobil*, 544 U.S. at 284. The deprivation of her causes of action is itself a deprivation of property protected by due process. *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428 (1982). None of these injuries requires this Court to find the state judgment wrong. The conduct alleged consists of "Defendants' own choices, provable from their own filed documents, … requiring no assessment of the order's correctness." ¶74. A private party who obtains a ruling by fraud, or who conspires with others to do so, can be sued for that conduct without the federal court holding that the ruling was erroneous on its own terms. That is the sense of *Exxon Mobil*'s statement that an independent claim survives even when it "denies a legal conclusion" the state court reached. 544 U.S. at 293. See Part VII (Count VIII).

This is a federal civil-rights case alleging that private attorneys, insurers, and institutional defendants acted jointly through state-court process to deprive Plaintiff of due process, access to the courts, and adjudication on the merits. The constitutional injury alleged came from Defendants' conduct, fraud, and coordination, not from the mere fact of winning and losing state-court rulings or from the "normal," "benign," or "mundane" filing of papers. The state case was permanently extinguished through Defendants' misconduct rather than ordinary judicial decision making.

**I-C. The state-court decisions are not before this Court.**

These Defendants argue that the Court would have to "sit in review of" the Rhode Island Supreme Court's "findings" on fraud and duress, and of the trial court's "re-imposition" of the December 13 stipulation. (Mem at 21–24.)[2] The court imposed nothing in the first instance. The FAC alleges that the December 13 agreement was a stipulation that Plaintiff, then without counsel, filed under Rule 41(a)(1)(B) without a court order and without consideration, and while under documented duress. ¶¶ 48–49.

Plaintiff acknowledges the Supreme Court's decision and does not seek to revoke it. That decision addressed what Plaintiff showed in that proceeding. Its statement that she "fails to point to anything in the record that would support an argument alleging fraud, mutual mistake, or other extraordinary circumstances" applied the state standard for vacating the December 13 agreement. *Clinton v. Babcock*, 332 A.3d 167, (R.I. 2025). The Supreme Court described Plaintiff's assertion of duress only as stemming from "health issues," and held that the trial justice's finding that Plaintiff "did not adequately demonstrate that she was under duress" was "supported by the

[2]These Defendants also assert that the court "appeared to reinstate" the dismissal on April 21, 2023. (Mem at 5.) The FAC alleges that his motion was built on the false assertion that it had been reinstated in the Pre-trial conference; the court confirmed on the record that the April 21 conference reinstated nothing. There were fifteen additional false assertions in that same motion called out in writing and oral argument. ¶¶ 63,34

record." *Id.* at 172. That ruling concerned whether Plaintiff carried her burden on the record before that court. The opinion does not mention the documented medical grounds on which hearings were reset six times, her doctor's written request to pause the proceedings, or Defendants' knowledge of her condition, all of which the FAC pleads as facts. ¶49. The FAC does not ask this Court to revisit the finding. It asks the Court to accept the facts the FAC alleges, ¶49, as true at this stage.

These Defendants' statement that Plaintiff's duress claim was "found to be completely unsubstantiated" (Mem at 2) is not what the Supreme Court said, and it is offered to contradict facts the FAC pleads. A motion to dismiss does not permit that.

Nor did the Supreme Court address the right to a jury trial, due process, 42 U.S.C. §§ 1983 and 1985, or whether Defendants' conduct violated Plaintiff's federal rights. It addressed a narrow procedural question and left Defendants' conduct unexamined. The FAC alleges what Defendants did. Whether those allegations are proved is for later in this case, and resolving it would not require rejecting any state judgment. ¶¶ 6, 74. These Defendants do not argue that the constitutional rights alleged are not protected.

**I-D. Mr. Romano's Account of the State Proceedings Is Not a Pleaded Fact.**

Mr. Romano chooses to revisit the events that followed the December 27, 2022, stipulation. He caused the Clerk to reopen a closed file on a representation that the dismissal covered "remaining claims," which the FAC alleges was false. ¶¶51–54. In recounting the events that led to the state-court decisions, it is these Defendants, not Plaintiff, who puts those decisions before this Court. He recasts what happened afterward: that the trial court convened the parties "*Sua sponte*, without motion pending" and that Plaintiff "opportunistically attempted to unilaterally renege" on the agreement "via an oral motion" (Mem at 5); that the court "appeared to reinstate" the dismissal on April 21, 2023 (*id.*); and that Plaintiff produced no "scintilla of evidence" (*id.* at

6). Each is a factual assertion by counsel, offered in a memorandum as if it were testimony. None is a pleaded fact, and none can be considered on this motion.

Contrary to these Defendants' retelling of events, the FAC alleges that on February 8, 2023, Plaintiff filed a written statement withdrawing and rescinding the December 13, 2022, agreement on three stated grounds, and that the court treated the filing as a motion and scheduled it for hearing six weeks later. ¶55. At the March 24, 2023, hearing, the Superior Court reviewed that filing together with Plaintiff's reply to Defendants' March 13 objection, including email evidence demonstrating there were no "remaining claims." ¶56; see ¶¶52–53. The full record of medical excusals that had produced six documented continuances had been hand-delivered to the judge in real time as it arrived by fax, from Plaintiff's doctors or emergency room staff six hearings reset based upon them ¶56. The court granted rescission, telling Plaintiff, "Now you will have your day in court." *Id.* No Defendant objected to the rescission, to the duress Plaintiff cited, or to notice at any point during the hearing. *Id.* All parties then agreed to trial and pre-trial dates, a pre-trial order issued, and the parties prepared for trial. ¶¶56–58. This was not an "opportunistic attempt to unilaterally renege" on anything, as Mr. Romano asserts. This speaks to Defendants' conduct, not to any decision of the court. The Supreme Court held that the trial justice had authority to revisit her interlocutory ruling, and the FAC does not challenge that authority. ¶74. These Defendants offer no affidavit, declaration, transcript, or record citation for their account (Mem at 4–6). The FAC names Mr. Romano as a participant in the events he now describes, ¶¶54–58, and his account is unsworn, untested, and contradicted by the pleaded facts. On a motion to dismiss, the Court takes the FAC's facts as true, and an unsworn account by a party's own counsel does not displace them. A motion to dismiss tests whether the FAC, taking its facts as true, states a claim and whether this Court has jurisdiction. It does not ask the Court to hear a Defendant's account of the state

proceedings or to decide whether those proceedings were rightly decided. Whether notice was adequate, whether the evidence of duress was sufficient, and whether the dismissal was properly enforced are questions that arose in the state proceedings. The FAC does not ask this Court to decide them. ¶¶6, 74. Arguing them here takes this motion beyond its purpose. If these Defendants' account is to be tested, it is tested through an answer, discovery, and evidence, not on a motion to dismiss.

**II. The FAC pleads joint action under color of state law.**

**II-A. The governing test.**

State action has two components. **First,** "the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible." **Second,** "the party charged with the deprivation must be a person who may fairly be said to be a state actor," which may be because the person "has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). "Private persons, jointly engaged with state officials in the prohibited action, are acting 'under color' of law. . . . It is enough that [the person] is a willful participant in joint activity with the State or its agents." *United States v. Price*, 383 U.S. 787, 794 (1966). A private party who conspires with a state official to deprive another of constitutional rights acts under color of law. *Dennis v. Sparks*, 449 U.S. 24, 27–29 (1980).

These Defendants recite the First Circuit's three tests (Mem at 25) but do not cite *Lugar*, *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970), or *Dennis*, and they do not respond to the rule those cases establish: a private party who is a willful participant in joint activity with the State or its agents acts under color of law. Their argument that the FAC does not identify the state actors misses the allegations actually pleaded. The FAC identifies the Clerk's acceptance of the

December 27 stipulation, the court's entry of an order drafted by Mr. Brouillard, entered by the Court on September 1, 2023, and the additional acts of alleged state participation set forth in ¶¶54, 65–68 and 71–75. See Parts II.B–II.C. The question is therefore not whether a private attorney becomes a state actor merely by appearing in court or submitting a proposed order. Plaintiff alleges something materially different: joint participation between private and state actors in the challenged activity itself. The doctrines meet at the alleged deprivation. *Christopher v. Harbury*, 536 U.S. 403, 413–15 (2002), identifies the protected litigating opportunity allegedly lost, while *Lugar* and *Dennis* address when private participation with state officials in causing that loss is attributable to the State.

**II-B. The FAC alleges more than resort to court.**

Plaintiff agrees that representing a client, or using a court procedure, is not by itself state action. (Mem at 27–28 (citing *Polk County v. Dodson*, 454 U.S. 312, 318 (1981)).) "Something more than mere resort to a state court is required," but "[a]n actual conspiracy between a state court and a party attempting a plainly prohibited act would constitute 'state action.'" *Casa Marie, Inc. v. Superior Court of P.R.*, 988 F.2d 252, 259 (1st Cir. 1993) (citing *Dennis*, 449 U.S. at 28). The FAC pleads the something more. It alleges that Mr. Romano and Mr. Brouillard, whose clients were adverse, shared an objective and coordinated their conduct through the Superior Court's processes. ¶¶ 9, 12.

**The pleaded facts of "something more" are:**

1. **September 2020 Alignment:** Mr. Brouillard and Toastmasters' counsel. Mr. Brouillard's clients had a negligence crossclaim against Toastmasters, the party Mr. Romano represented. In September 2020, after Plaintiff received a document in discovery that supported a negligence claim against Toastmasters, she proposed that his clients align with her against Toastmasters. He responded by threatening sanctions. When she moved to join her claim with the crossclaim, his objection cited the wrong rule and included a

request for sanctions, asserting that she "must be confused" because she was self-represented. The FAC alleges that he never pursued the crossclaim, made no discovery requests to Toastmasters, and that his clients gave evasive deposition answers about Toastmasters' instructions to them, the conduct their own crossclaim alleged was negligent. ¶¶ 27 (§ D), 37–38. The FAC alleges that this alignment with Toastmasters' counsel was the shared objective of both attorneys: to shield Toastmasters from Plaintiff's negligence claims, and to continue the litigation rather than settle with knowledge that Plaintiff held documentary evidence of Toastmasters' negligence. ¶¶9, 34(6). Mr. Romano is the only Defendant who answers the alignment allegations at all. His Memorandum does not say those events did not happen, and it offers no explanation for them, except that Plaintiff is not licensed, and therefor not qualified to speculate. Mr. Brouillard's memorandum does not respond to the allegations that he opposed the motion to join Toastmasters although it would have benefited his own clients, or that his clients' crossclaim against Toastmasters was never pursued, ¶¶ 37–38, and the Vigilant Reply does not mention them.

**2. October 2021: the statement about the judge.** Plaintiff's limited-scope attorney, retained to explore settlement, was told by Mr. Romano that the court's repeated denials of Plaintiff's motions to amend to add negligence claims showed "the judge was on their side" and they did not have to settle. ¶¶ 32, 42, 44. The attorney's firm advised him not to file an appearance, and he withdrew, giving Plaintiff a partial refund. ¶32. Plaintiff memorialized Mr. Romano's statement in a November 1, 2021, letter to him, copied to his managing partner, and he did not respond disputing it. Mr. Romano's firm withdrew from representing Toastmasters; when his employment there ended, Mr. Romano took the matter with him and continued representing Toastmasters. ¶79. These Defendants now say the statement was "allegedly made" (Mem at 13) and elsewhere that it was "never in fact made." (*Id.* at 44.) A denial in a memorandum is not a fact on a motion to dismiss. The FAC pleads the statement as an expression of foreknowledge of how the court would rule, ¶¶12, 42, and a refusal to discuss settlement based on it.

**3. The withdrawn settlement overture.** In November 2021, A Chubb adjuster invited Plaintiff to discuss settlement, and before any discussion occurred the overture was withdrawn. ¶44. Plaintiff was told it was withdrawn on advice of counsel, and two adjusters confirmed in writing that it stopped on advice of counsel because settling would expose the insured to a comparative-negligence claim from Toastmasters. ¶ 79. The FAC alleges

that Mr. Brouillard citing a risk from the party he was nominally adverse to, as a reason not to resolve a separate claim against his own clients, is not explicable as independent defense strategy, and is consistent with the coordinated joint action alleged. ¶ 79."

**4. July 2022: the waiver demand**. Mr. Brouillard, along with Mr. Romano, demanded that Plaintiff waive her right to appeal and to bring a § 1983 claim as the price of a settlement with no financial consideration, just after she had been advised to present herself to an emergency room, which both were aware of. ¶¶ 48, 119.

**5. The two stipulations**. Mr. Brouillard (and Mr. Romano) signed the December 13, 2022, agreement dismissing all claims, counterclaims and crossclaims under the docket, ¶¶49, 123, after acknowledging in writing that the third-party complaint was superseded and refusing, against Plaintiff's repeated written demand, to withdraw it. ¶¶52–53, 123. Two weeks later he and Mr. Romano signed, and Defendant Romano filed, a second stipulation dismissing "remaining claims," without notice to Plaintiff. ¶¶51, 124.

**6. The Clerk and the closed file**. Defendants caused the Clerk to reopen a closed file, without Plaintiff's knowledge or consent, by representing that "remaining claims" existed. The December 13 agreement covered all claims, crossclaims and counterclaims under the docket, and the third-party complaint had been superseded by a crossclaim years earlier. Both attorneys knew this when they signed the first agreement and again when the second was filed. ¶¶34(10),49,51–54,122–124. The Chief Clerk reopened the closed file and accepted the second stipulation on that representation, after a clerk's employee had concluded it was not proper to reopen a closed file. ¶54. The pleading alleges that Defendants obtained the Clerk's action by a representation they knew to be false. ¶¶51–54, 124.

**7. The sanctions motion**. Mr. Romano's Motion for Summary Judgment contained five pages of factual assertions that the FAC alleges were disputed and, in many instances, demonstrably false, submitted "without a notarized affidavit" as required. Plaintiff wrote two letters notifying the court that the motion was defective and moved for sanctions, asking only that it be withdrawn, as responding to it would be highly burdensome. ¶ 59. The FAC alleges that Mr. Romano opposed the sanctions motion on the assertion that the dismissal agreement had been reinstated, which it had not, and that the court lacked jurisdiction to decide anything until Plaintiff filed a Rule 60(b) motion; that he abandoned that position when the court denied sanctions; and that he drafted the denial order himself,

which the judge signed and entered. ¶ 59. An attorney who tells a court it cannot rule, and then writes the order in which it does, is not engaged in routine practice. A pattern of contesting the court's authority while accepting favorable rulings only when it served Defendants' interests is itself evidence of the coordinated posture. The episode is also pleaded as an instance of differential treatment supporting Count I. The FAC alleges that Mr. Romano's acceptance of this ruling without objection, consistent with his October 2021 statement that the court was 'on their side,' further emboldened conduct undertaken with the expectation of judicial alignment. ¶ 59.Plaintiff does not ask this Court to revoke the ruling. She alleges what Mr. Romano asserted and what he did.

**8. The calendaring.** After rescission of the dismissal stipulation was granted and the case was again proceeding to trial, a scheduling order was set at the pretrial conference with a June date to hear dispositive motions only. On May 26, 2023, eleven days before that hearing, Mr. Brouillard served a Motion to Enforce the dismissal stipulation, calendared on June 5, the date set exclusively for dispositive motions, together with Mr. Romano's Motion to Vacate the Scheduling Order. The Motion to Enforce was hand-delivered to the court outside the normal practice of electronic filing. Plaintiff objected in writing she had not agreed. He responded only that "when the motion is heard is for the judge to decide not you," and did not address the objection. The date was later continued to June 20 on another medical excusal, and the two non-dispositive motions remained calendared alongside the dispositive motions. ¶¶ 60, 108, 118(e), 133.

**9. The Order.** The Order was drafted by Mr. Brouillard and entered verbatim over Plaintiff's documented objection, and it "concealed the mechanism of termination." ¶¶ 12, 65–68, 73–74, 118(h). The pleading identifies a four-part sequence documentable from the court record: a false factual narrative (¶¶ 63, 75); relief granted on the motion that rested on the falsity while Mr. Romano contested the Court's jurisdiction to rule until a Rule 60B motion to vacate was decided on the Dismissal Stipulation, maintaining the same position he asserted in the motion for sanctions. (¶¶62, 75); acceptance of that relief without objection or surprise (¶70); and Mr. Brouillard's drafting of the order memorializing it (¶¶65–68,73,75). The Order is one piece of evidence of what Defendants did. This Court is not asked to consider the Order for its rightness or wrongness. The pleading alleges that Defendants' acceptance of the outcome "without a word of objection or clarification," the

absence of any objection to relief their own motions had not requested, is consistent with an anticipated outcome. ¶¶ 62, 69–70. A pattern of contesting the court's authority while accepting favorable rulings only when it served Defendants' interests is itself evidence of the coordinated posture. ¶76 presented as further evidence of judicial alignment Romano predicted in October 2021, and as an additional instance of differential treatment supporting the class-of-one claim in **Count I.**

**10. Forced pro se status**. The FAC alleges that Plaintiff's "forced pro se status and repeated failure of available reporting channels to address the underlying conduct" left her without representation in a case defined by coordinated private use of judicial machinery. ¶¶ 27, 31–35, 87, 89, 139, 142. It alleges that attorneys declined representation after reviewing the record, ¶¶ [__]; that she sat for twenty hours of deposition under conditions so threatening that she hired a private security guard, reported on the record, ¶ [__]; and that a counterclaim against her was abandoned after Mr. Brouillard's clients testified that insurance was paying for the litigation, so that the claimed damages did not exist. ¶¶ 34(5), 135. These Defendants treat Plaintiff's pro se status as a fixed characteristic. They do not address the FAC's allegation that it was the product of the litigation conduct pleaded in ¶¶ 5, 41, and 87–88, and the memorandum does not respond to it.

**11. The sanctions motion**. Mr. Romano's Motion for Summary Judgment contained five pages of factual assertions that the FAC alleges were disputed and, in many instances, demonstrably false, submitted "without a notarized affidavit" as required. Plaintiff wrote two letters notifying the court that the motion was defective and moved for sanctions, asking only that it be withdrawn, as responding to it would be highly burdensome. ¶ 59. The FAC alleges that Mr. Romano opposed the sanctions motion on the assertion that the dismissal agreement had been reinstated, which it had not, and that the court lacked jurisdiction to decide anything until Plaintiff filed a Rule 60(b) motion; that he abandoned that position when the court denied sanctions; and that he drafted the denial order himself, which the judge signed and entered. ¶ 59. An attorney who tells a court it cannot rule, and then writes the order in which it does, is not engaged in routine practice. A pattern of contesting the court's authority while accepting favorable rulings only when it served Defendants' interests is itself evidence of the coordinated posture. The episode is also pleaded as an instance of differential treatment supporting Count I. The FAC alleges that

Mr. Romano's acceptance of this ruling without objection, consistent with his October 2021 statement that the court was 'on their side,' further emboldened conduct undertaken with the expectation of judicial alignment. ¶ 59.Plaintiff does not ask this Court to revoke the ruling. She alleges what Mr. Romano asserted and what he did.

**12. The appeal.** In response to Plaintiff's request to mediate during the appeal, Mr. Brouillard wrote: "You don't have a chance of winning this appeal. We don't want to give you anything." ¶108. The FAC also alleges that Defendants falsely claimed ignorance of Plaintiff's documented duress on appeal. ¶118(g).

Each act, taken alone, might be called advocacy. The FAC alleges that together they were coordinated in timing, sustained over years, and directed at a litigant whose self-representation was not voluntary, ¶¶31–32, 110,

n a calculation that a self-represented litigant's objections would simply be disregarded, where a represented party's would have been addressed, and that they filed coordinated motions, false premises, and a concealing order into that environment with the calculated confidence that what they filed would be accepted and what Plaintiff filed would be rejected. ¶ 108. From those facts the Court can reasonably infer that Mr. Romano and Mr. Brouillard shared an objective and an understanding of how the process would operate. That is the "willful participant in joint activity with the State or its agents" that *Dennis* and *Lugar* describe, and it is pleaded with dates, documents and paragraph citations, not labels. It is not a "cascade of conclusory allegations." Cf. *Cruz-Arce v. Mgmt. Admin. Servs. Corp.*, 19 F.4th 538, 543–44 (1st Cir. 2021).

**II-C. These Defendants' remaining state-action arguments.**

These Defendants say the FAC "does not sufficiently plead the identity of said judicial officers" and that Plaintiff "must instead resort to pure speculation." (Mem at 26; see *id.* at 35.) The FAC does not name a judge because the joint action alleged does not depend on one. State participation is alleged through the Clerk's acceptance of the second stipulation and the court's

entry of an order these Defendants drafted and accepted. ¶¶54, 65–68. *Dennis* holds that a private party who is a willful participant in joint action with state officials acts under color of law, 449 U.S. at 27–29, and the FAC does not allege that any judge was bribed. ¶12. The FAC does not name the judge because the joint action alleged does not depend on her liability. Judicial immunity does not change whether private parties who participate in joint activity with the State, act under color of law. *Dennis,* 449 U.S. at 29. The FAC alleges the State's part: the Clerk's reopening of the closed file, the court's recharacterization of Defendants' motions and its entry of the order they drafted and accepted, ¶¶54, 65–68, 72–75. It also alleges that Defendants anticipated that treatment and acted in reliance on it. ¶¶12, 59, 69–70, 76. The identity of the presiding justice appears on every state-court order, which these Defendants themselves, (not Plaintiff) ask the Court to consider. (Mem at 4 (citing *Watterson,* 987 F.2d at 3).)

These Defendants also argue that Toastmasters' financing of its own defense cannot be state action. (Mem at 27.) The FAC does not allege that financing a defense is state action. It alleges that Toastmasters, through its counsel, took part in the joint conduct described above; that it was a party to the December 27 stipulation; and that it, with Mr. Rex, received written notice in January 2023 that the defense risked violating Plaintiff's rights before continuing to finance it. ¶¶ 26, 53a, 76, 120. See Part VIII.

**II-D. Mr. Romano's statements that Plaintiff is 'unqualified' because she has no law license do not bear on whether the FAC states a claim.**

These Defendants repeatedly say Plaintiff is 'unqualified' because she is not a licensed attorney. That is not a ground on which the Court may disregard the facts the FAC pleads.

> "based on Plaintiff's misunderstanding of the law and her related assumption of what would be in another party's best interest." (Mem at 14.)........."Plaintiff, being adverse to all Defendants, is completely and uniquely unqualified to speculate as to what legal course of action is in her opponents' best interests. This specific deficit renders all such allegations from Plaintiff as defective and worthy

> of dismissal." (Mem at 14.)......."Plaintiff, not being a licensed attorney, is unqualified to speculate as to how certain litigation choices made in the interest of an opposing party actually constitutes such constitutional violations." (Mem at 16.)........."Sinister yet empty posturing requires Plaintiff to assume and speculate as to what would actually be in the best interests of Defendant Toastmasters International and the State Court Defendants. Plaintiff is unqualified to opine on this topic, she was adverse to Toastmasters International, and is not a licensed attorney."........... "Furthermore, Plaintiff does not surpass mere speculation in asserting the extent to which these Defendants are involved." (Mem at 35.)

Plaintiff does not ask the Court to infer improper motive from sharp advocacy. The concern is narrower. These Defendants repeatedly invoke Plaintiff's self-representation as grounds for disregarding her ability to describe, interpret, and draw reasonable inferences from conduct directed at her.[3] Taken at face value, the argument would apply to every self-represented litigant, and the right to conduct one's own case under 28 U.S.C. § 1654 would mean only the right to be disregarded. That is not the law. Pro se pleadings are construed liberally, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and whether the facts alleged support reasonable inferences for Plaintiff is for the Court under the pleading standard, see *Instituto de Educación Universal Corp. v. U.S. Dep't of Educ.*, 209 F.3d 18, 23 (1st Cir. 2000), not for opposing counsel through repeated characterizations of Plaintiff as "unqualified."

The same rules bind every litigant who invokes the process. Super. R. Civ. P. 11 binds attorneys and unrepresented parties alike. A law license does not confer a lesser obligation of candor or factual support, and the absence of one does not exempt a self-represented litigant. The Rules of Professional Conduct, including Rule 3.3(a)(1) (a lawyer shall not knowingly "make a false statement of fact or law to a tribunal") and Rule 8.4(c) (conduct involving "dishonesty, fraud,

---

[3] Plaintiff has no law license. However, she is college educated, a former business owner, worked in the television and film industry for 20 years, has seven years of litigation experience in this case and 73 years of lived experience. She notes this only in response to Mr. Romano's repeated statements that she is "unqualified" to draw inferences from opposing counsel's conduct.

deceit or misrepresentation"), mark the boundary of ordinary advocacy. R.I. Rules of Prof'l Conduct 3.3(a)(1), 8.4(c). Plaintiff acknowledges that a violation of those rules does not itself create a cause of action, and she does not assert one. The conduct underlying the alleged violations is relevant because it forms part of, and is evidence of, independently actionable violations of law. The FAC alleges that Defendants went beyond ordinary advocacy: ¶¶63, 124. It alleges that this conduct was joint action that deprived Plaintiff of federal rights, ¶¶54, 63–64, and that she was held to the same standards as licensed counsel while represented parties' false assertions were accepted without examination. ¶¶ 85, 140–141.

**Rule 11**; begins from a principle of equal accountability before the Court. It expressly **binds both attorneys and unrepresented parties**. A law license does not confer a lesser obligation of candor, factual support, or legal responsibility, just as the absence of a law license does not exempt the self-represented citizen from those obligations. Whatever differences may exist in legal training, experience, or professional status, **Rule 11** establishes a common threshold of responsibility for those who invoke the judicial process. Professional status may differ, but accountability for representations made to the court is not reserved to one status of litigant. The same is true in the other direction. All litigants are equal before the court and are entitled to equal protection under the law. The FAC alleges that Plaintiff, as a self-represented litigant, was held to the same procedural and substantive standards as licensed counsel, ¶140, while represented parties' false assertions were accepted without examination and the **Rule 11** violations Plaintiff identified received no scrutiny, ¶¶85, 141. The Rules of Professional Conduct, including **Rule 3.3** (candor toward the tribunal) and **Rule 8.4(c)** (conduct involving dishonesty, fraud, deceit, or misrepresentation), and **Super. R. Civ. P. 11**, mark the boundary of ordinary advocacy, and the FAC alleges the boundary was crossed: a knowingly false statement of law and facts to the court,

calling the dismissal agreement a "consent order," knowing the prerequisites for that; a false factual premise, and a false representation to the Clerk. ¶¶63,124; see R.I. Rules of Prof'l Conduct **3.3(a)(1)** (lawyer shall not knowingly "make a false statement of fact or law to a tribunal"), **8.4(c)** (conduct involving "dishonesty, fraud, deceit or misrepresentation"); Super. R. Civ. P. 11. Rule 11 binds attorneys and unrepresented parties alike. A standard that binds her must bind those who invoke the process against her. That asymmetry is what the preserved theory addresses. ¶¶139–141.

As the FAC alleges, Plaintiff's forced pro se status, together with her age (73), her documented medical condition, and the interference with her access to counsel, is central to the deprivation of due process, equal protection, and access to the courts. ¶¶17, 27, 31–35, 87, 89, 139–142. Plaintiff preserves the theory pleaded at ¶¶ 139–141: that private parties' exploitation of a forced pro se litigant's vulnerability, with foreknowledge of her disability, supports relief under 42 U.S.C. §§ 1983 and 1985.

**III. Count I states a claim.**

These Defendants argue that represented and self-represented litigants are "not similarly situated" and that Count I challenge "discretionary acts by the state judiciary." (Mem at 29–31.) Plaintiff incorporates Part III of her response to Mr. Brouillard's motion (ECF 39 at 9–10), which answers the same *Cordi-Allen* and *Engquist* arguments, and adds the following. Count I does not ask this Court to decide whether any state-court ruling was right or wrong, or to change it. A class-of-one claim asks whether Plaintiff was 'intentionally treated differently from others similarly situated' without a rational basis for the difference. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *Cordi-Allen v. Conlon*, 494 F.3d 245, 250–52 (1st Cir. 2007). The rulings enter only as history and of evidence of how Plaintiff and the comparators were treated, and the comparison is complete without deciding whether either result was correct. The relief sought is damages for

Defendants' conduct, not revocation of any order. ¶¶ 6, 13, 15; see *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284, 293 (2005).

**First,** Count I concerns what Defendants did and counted on. The FAC alleges the reopening of a closed file on a representation alleged to be false, ¶54; motions calendared to displace pending dispositive motions over Plaintiff's written objections, ¶60; false assertions that went unaddressed while Plaintiff was admonished without evidence of wrongdoing, sanctions threatened. ¶¶59, 63, 85, 105; and an order drafted by Mr. Brouillard and entered verbatim over her written objection. ¶¶65–68. It alleges that Defendants acted on a calculation that a self-represented litigant's objections would simply be disregarded, where a represented party's would have been addressed, and that they filed coordinated motions, false premises, and a concealing order into that environment with the calculated confidence that what they filed would be accepted and what Plaintiff filed would be rejected. ¶108.

The FAC alleges that the expected outcomes which were received, emboldened further conduct. ¶59. The injury Count I addresses is not what the court did. It is what Defendants did, knowing what the court would do. ¶108. These Defendants say Count I challenges only 'discretionary acts by the state judiciary.' (Mem at 31.) That treats every act listed above as the court's alone. The FAC pleads otherwise: that Defendants themselves made the representations to the Clerk, calendared the motions, asserted false premises, misstated the law, and drafted orders, and that they did so jointly. They didn't object to the recission and when Plaintiff asserted her right to rescind based on duress, they didn't object. She repeated it to be sure they heard it and they still didn't object. Then on appeal they claimed ignorance of her duress and now assert it is "unsubstantiated" which is based on that there was not a "valid record of it made, which was a consequence of Plaintiff's "forced" pro se status. They also took part in the court's process when

it suited them. After rescission, all parties agreed to trial and pre-trial dates, Defendants filed twenty-two motions in limine, witness lists, and jury instructions, and each filed a dispositive motion, both being highly paid to do so. ¶¶46,56–57, and they attended the April 21, 2023 pre-trial conference without objection, ¶58. The FAC alleges that by this conduct Defendants ratified the rescission. ¶ 58. Weeks later, the same Defendants, one falsely asserted that the dismissal had been reinstated and the other that it was never rescinded, and that the court lacked jurisdiction to act, ¶¶59–60, and calendared their own non-dispositive motions on the date set for dispositive motions only. ¶¶ 60, 62. The court's June 20 ruling followed from what Defendants had put before it. ¶¶ 62–68 and that they did so jointly. ¶¶54, 60, 65–68; see Part II-B.

**Second,** the FAC pleads comparators. *Cordi-Allen* asks whether the comparators "engaged in the same activity" without distinguishing circumstances. *Cordi-Allen v. Conlon*, 494 F.3d 245, 251 (1st Cir. 2007) (cited at Mem 30). The comparison here is to Defendants themselves: parties before the same court, in the same case, under the same rules. Their raise-or-waive violations were excused while Plaintiff's preserved arguments were disregarded. Their Rule 11 and Rule 3.3 violations went unaddressed while she was admonished and threatened with sanctions. Their non-dispositive motions were recharacterized as motions for reconsideration, while her February 8 filing was not treated as the functional equivalent of a motion. ¶105; see ¶87. Whether those comparators are similar enough is a question about the pleaded facts, not a ground for dismissal. Mr. Romano describes the June 20 ruling as made "upon motion" and "in the moment Sua sponte." (Mem at 21–22.) The FAC alleges the court ruled on a theory neither motion asserted. ¶74. The June 20 transcript shows the justice recharacterizing Defendants' motions as motions to reconsider the March 24 rescission. ¶65. Brouillard's proposed order omitted that recharacterization and described the ruling only by the original motion titles, "enforcement" and "vacating the scheduling

order." And mooted the dispositive motions. *Id.* Plaintiff objected in writing and identified the omission. ¶66. Mr. Romano's reply did not say that her language was inaccurate. ¶67. On September 1, 2023, the court entered Brouillard's order verbatim. ¶ 68. These are Defendants' own drafting choices, provable from their own filings. The FAC challenges their conduct; what they asked for, drafted, and left uncorrected. It does not ask this Court to decide whether the ruling was right. ¶¶6, 74.

**Third,** representation is not a "distinguishing circumstance." These Defendants rely on one out-of-circuit district-court decision, *Grundstein v. Ohio*, 2006 WL 3499990, at *7 (N.D. Ohio Dec. 5, 2006), which lists the sanctions, malpractice liability, and discipline that attorneys face and pro se litigants do not. (Mem at 30.) That list works against them. If attorneys are held to greater duties, Defendants' alleged violations going unaddressed while Plaintiff was admonished is the disparity. ¶¶ 85, 105. And their argument that her pro se status explains the difference restates the claim (¶¶ 5, 88); it does not answer it. The requirements at issue bind every litigant: notice before a ruling on a theory first raised at the hearing, calendaring motions for dates set for only dispositive motions, and Rule 11. ¶¶60, 87(f). The law does not treat self-representation as a reason for more stringent treatment. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).The law treat everyone equally.

**Fourth,** *Engquist v. Oregon Department of Agriculture*, 553 U.S. 591, 603 (2008), concerns forms of state action that "by their nature involve discretionary decision making based on a vast array of subjective, individualized assessments." The departures alleged here, a ruling as made "upon motion" and "in the moment *Sua sponte*" are also from fixed requirements: notice and an opportunity to be heard before a ruling on a theory first raised at the hearing, ¶¶87(f), and the dates the court itself set for dispositive motions. ¶60. These Defendants say Plaintiff 'clearly seeks' review because she 'cannot put forth an equal protection claim under § 1983 otherwise.'

(Mem at 23.) The FAC pleads otherwise. ¶¶ 6, 74. Mr. Romano adds in a footnote that Plaintiff seeks review of 'each preceding decision by the State Courts,' pointing to her references to the denial of her fourth motion to amend and the denied certiorari petition. (Mem at 22 n.5.) The FAC refers to those events as history, ¶14, Referring to a ruling to describe what happened is not asking the Court to reject it. The rulings are offered as evidence of how Plaintiff was treated compared to represented parties, not as rulings for this Court to review.

**IV. Count V states a claim under 42 U.S.C. § 1985.**

These Defendants argue that Count V fails because the FAC alleges only that Defendants "chose litigation over settlement," which they call "a complete misunderstanding of the adversarial process,"[4] and because Plaintiff's pro se status is not a protected class. (Mem at 36–37.) Neither point defeats the count.

**First,** the FAC alleges a conspiracy, not a choice to litigate. Part II.B sets out the facts: two attorneys for adverse parties, one acting against his own clients' interests; Insurer settlement invitation blocked that protected an adverse party, a second stipulation filed without notice on a premise both knew to be false; motions calendared to displace pending dispositive motions; and an order drafted by one, accepted by the other, and entered verbatim. ¶¶9, 37–38, 51–54, 60, 65–68, 117–119. It also alleges that both attorneys refused Plaintiff's first dismissal proffer unless she waived her right to appeal and to bring a federal civil rights claim, ¶¶ 48, 119, a demand that has no purpose in ordinary adversarial litigation.

[4] The adversarial system of adjudication in which each party bears responsibility for advocating its own position, challenging the opposing party's evidence and arguments, and presenting the facts and law supporting the relief it seeks, while the court remains a neutral arbiter responsible for applying the law and ensuring that the proceedings comply with governing procedural and evidentiary rules.

**Second,** Plaintiff acknowledges that the second clause of § 1985(2), which concerns conspiracies to obstruct justice in state courts, and § 1985(3) require "some racial, or perhaps otherwise class-based, invidiously discriminatory animus." *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971); see *Kush v. Rutledge*, 460 U.S. 719, 724–27 (1983) (first clause, concerning federal-court proceedings, does not). Plaintiff does not contend that proceeding pro se, standing alone, defines a class. The FAC alleges that Defendants targeted her forced pro se status together with her age (73), ¶17, and her documented medical condition, and that this was the instrument of their litigation strategy. ¶8,140, 142. Whether Defendants acted from animus is a question of intent, which may be alleged generally, Fed. R. Civ. P. 9(b), and is not resolved on the pleadings. Their only authority is a bankruptcy-court decision, *In re Marrett*, 2026 WL 479029, at *7–8 (*Bankr. D. Mass.* Feb. 19, 2026), which does not bind this Court. It is cited as finding pro se status insufficient for a § 1985 claim. (Mem at 37.) The decision does not say that. It is a Memorandum of Decision addressing whether certain real property was property of the bankruptcy estate and whether the automatic stay was violated. It does not address § 1985, class-based animus, or pro se status, and it is not authority for the proposition for which it is cited. These Defendants also say Plaintiff 'acknowledges' that her pro se status does not create a class. (Mem at 37 (citing FAC ¶142).) FAC ¶142 does not say that. It cites *Griffin v. Breckenridge*, 403 U.S. 88 (1971), and pleads that the class-based animus requirement is 'satisfied here by the documented, deliberate targeting of Plaintiff's forced pro se status.' ¶142; see ¶¶139–141. Whether that theory is cognizable is a question these Defendants answer with no authority. Plaintiff recognizes that whether a group defined in this way is a class under § 1985 has not been decided in this Circuit. The FAC preserves the question. ¶139. If the Court concludes that class-based animus is not adequately alleged, Plaintiff requests leave to amend. See Part IX; see also Part III-C of Plaintiff's response to the Vigilant Defendants' motion (ECF 42 at 26) (requesting leave to plead the class-based theory in Count V).

**1986 -** Plaintiff does not oppose dismissal of the claim under 42 U.S.C. § 1986 as untimely under that section's one-year period. (Mem at 40–41.) Count V otherwise stands under § 1985.

**V. The fraud allegations satisfy Rule 9(b).**

These Defendants argue that the FAC does not plead the **time, place and content** of the alleged falsehoods. (Mem at [31–36].) Rule 9(b) requires the circumstances constituting fraud to be stated with particularity and allows knowledge to be alleged generally. Fed. R. Civ. P. 9(b). The FAC states **who:** Mr. Romano and Mr. Brouillard. ¶124. It states **what**: that "remaining claims" existed under the docket. It states **when**: December 27, 2022. It states **where and how:** in a Stipulation of Dismissal filed in WC-2017-0376 and accepted by the Chief Clerk. ¶¶ 51,54,124. It states **why** the representation was false: the December 13 agreement had dismissed All claims, crossclaims and counterclaims under the docket, and the third-party complaint had been superseded by a crossclaim years earlier, Mr. Brouillard admitted in writing to Plaintiff there were no remaining third party claims. ¶¶52–53, 123. The FAC pleads the false "reinstated" assertion of the April 21 conference, ¶63, with the same particularity.

**VI. The federal claims are timely.**

These Defendants argue that every federal claim accrued on January 14, 2022, when Plaintiff petitioned the Rhode Island Supreme Court for certiorari, so that the three-year period expired on January 14, 2025, and the one-year § 1986 period on January 14, 2023. (Mem at 37–41.) They say Plaintiff "conveniently omits" the petition (*id.* at 39). The Petition was not omitted. The FAC pleads it, and they cite ¶14 themselves. The FAC describes the petition as "asserting disparate treatment and documenting it for a future claim." ¶14. A petition for certiorari denied without more is not a merits adjudication and has no precedential effect. R.I. Sup. Ct. R. 13. Plaintiff incorporates Part V-C of her response to Mr. Brouillard's motion (ECF 46 at 26-27 ), which addresses accrual under *Reed v. Goertz*, 598 U.S. 230 (2023), and adds four points specific

to this argument. At the outset, limitations is an affirmative defense, and dismissal on that ground is proper only if the facts establishing it are clear on the face of the complaint. *Rodi v. S. New Eng. Sch. of Law*, 389 F.3d 5, 12 (1st Cir. 2004); *In re Colonial Mortg. Bankers Corp.*, 324 F.3d 12, 16 (1st Cir. 2003). The FAC does not plead January 14, 2022, as the date of injury.

**First,** the petition did not concern the injury pleaded. Accrual requires that the plaintiff know or have reason to know of "the injury which is the basis of his claim." (Mem at 37–38 (quoting *Rodriguez-Garcia v. Municipality of Caguas*, 354 F.3d 91, 97 (1st Cir. 2004)).) The petition challenged the denial of motions to amend, "asserting disparate treatment and documenting it for a future claim." ¶14. The injury the FAC pleads is the loss of Plaintiff's claims, ¶¶6,143, caused by acts that had not yet occurred: the December 13 and December 27, 2022, stipulations, the March 24 and June 20, 2023 hearings, and the September 1, 2023 Order. ¶¶ 49, 51–54, 62–68. A claim cannot accrue before the conduct that causes the injury, and a § 1983 claim accrues only when the plaintiff has "a complete and present cause of action." *Wallace v. Kato*, 549 U.S. 384, 388 (2007) (cited at Mem 37). A petition made "for a future claim" is by its own description not a complete one. Suspecting that rulings were wrong and preserving the point for review in case they were, is different from knowing of an injury that has not happened. Their footnote 9 refers to 'additional dates, earlier than January 14, 2022,' but cites no filing (Mem at 39 n.9), and footnote 10's assertion that a series of acts 'blossomed into an alleged injury' by that date (Mem at 42 n.10) contradicts ¶¶14, 43, and 143. On these Defendants' theory, Plaintiff's claims accrued on January 14, 2022, before the December 2022 stipulations, the reopening of the file on a misrepresentation, the 2023 hearings, pre-trial activity, the calendaring of non-dispositive motions ahead of the dispositive motions over Plaintiff's objection, and the September 1, 2023 Order drafted by Mr. Brouillard, the very conduct on which the FAC rests. ¶¶49, 51–54, 62–68.

The rule they quote tolls the period 'until a series of wrongful acts blossoms into an injury on which suit can be brought.' (Mem at 42 n.10 (quoting Gorelik v. Costin, 605 F.3d 118, 122 (1st Cir. 2010)).) On the FAC's allegations, that injury was complete only when the claims were terminated without a merits adjudication. ¶¶62–68, 143. A claim cannot accrue before the conduct that gives rise to it. *Wallace v. Kato*, 549 U.S. at 388.

**Second,** the injury was not complete until the state litigation ended. A backward-looking access-to-courts claim requires the loss of the underlying claim. *Christopher v. Harbury*, 536 U.S. at 413–15. Plaintiff's claims were not lost before the case was terminated by the September 1, 2023 Order, which is within three years of the July 28, 2026, filing, and the Supreme Court itself treated the Court's ruling as interlocutory. *Clinton v. Babcock*, 332 A.3d at 172. *Reed* holds that a § 1983 claim challenging the state-litigation process accrues when the state-court litigation, including the appeal, ends. 598 U.S. at 232, 236–37. These Defendants try to confine *Reed* to DNA testing (Mem at 39–40) but offer no reason why its rule for when a state process injury becomes final applies only there. The state litigation here ended with the Rhode Island Supreme Court's decision of March 24, 2025, and its denial of reargument on May 16, 2025, both within three years of filing.

**Third,** even under the rule these Defendants state, the FAC alleges acts within the limitations period. Their own authority, cited for § 1985, holds that 'the statute of limitations runs separately from the occurrence of each civil rights violation that causes actual damage.' (Mem at 38.) The entry of the Order drafted by Mr. Brouillard on September 1, 2023, ¶ 68, and Defendants' conduct on appeal, ¶87(h), fall within three years of filing. Earlier acts remain admissible as background evidence of the joint action alleged. See *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).

**Fourth,** the fraudulent concealment alleged is not answered by what Plaintiff knew in January 2022. ¶16; R.I. Gen. Laws § 9-1-20. These Defendants say that any concealed fact was discovered by that date. (Mem at 41–42.) But the concealment alleged occurred afterward: a second stipulation filed without notice to Plaintiff, ¶51; the false assertion that the April 21 conference had reinstated the dismissal, ¶¶59, 63; that the recission did not occur, and an Order that "concealed the facts and the mechanism of termination." ¶¶ 12, 65, 68. Knowledge in January 2022 of earlier rulings cannot be knowledge of facts concealed in 2022 and 2023, and the FAC alleges actual misrepresentations to the Clerk and the court, which these Defendants' own authority requires. (Mem at 41 (citing *Hyde v. Roman Catholic Bishop of Providence*, 139 A.3d 452, 465–66 (R.I. 2016)).) The FAC also pleads documented psychiatric hospitalizations and medical excusals during this period, ¶¶47–49, 56, which bear on equitable tolling if the Court reaches it. See *Arellano v. McDonough*, 598 U.S. 1, 6 (2023).

**VII. The state-law claims are adequately pleaded.**

These Defendants argue that the state-law claims fail on independent grounds. (Mem at 43–47.) If the federal claims remain, these claims are within the Court's supplemental jurisdiction. 28 U.S.C. § 1367(a). Counts IX and X are pleaded as deprivations of liberty and access to the courts under §1983, ¶¶ 133, 135, and Counts VI, VIII and XI are pleaded under § 1983 as well as state law. These Defendants analyze them only as common-law torts, so their argument does not address the claims as pleaded. Even on their terms, the FAC meets the elements, except as noted for Count X.

**Litigation privilege**. These Defendants say an absolute privilege bars every state-law claim because each rests on "filings and statements made by Attorney Romano in court." (Mem at 29 (citing *Evoqua Water Techs. LLC v. Moriarty*, 334 A.3d 429, 434 (R.I. 2025)).) Three answers. **First,** they acknowledge that Rhode Island "has not directly stated that the litigation privilege

applies to attorneys." (*Id.* at 29 n.8.) **Second,** the privilege concerns communications, and the FAC rests on conduct as well: reopening a closed file through a misrepresentation to the Clerk, calendaring motions to displace pending ones, hand-delivering a motion, and drafting an order. ¶¶ 54, 60, 65–68, 108. **Third,** a state-law privilege is a defense to state-law torts and cannot bar a claim under § 1983. *Martinez v. California*, 444 U.S. 277, 284 n.8 (1980).

**Fraud (Count VI).** These Defendants say the FAC alleges no false statement by Toastmasters or Mr. Rex and no reliance on Mr. Romano's statements. (Mem at 43.) The FAC **pleads reliance**: Plaintiff relied on the December 13 agreement the attorneys executed, and she filed her dismissal under Rule 41(a)(1)(B), based upon it, specifically that it dismissed All claims, crossclaims and counterclaims under the docket. ¶123. The second fraud was a misrepresentation to the Clerk that there were "remaining claims," on which the Clerk reopened the closed file, and it is pleaded as a constitutional deprivation and as a fraud upon the court that is independently actionable. ¶¶ 54, 122, 124. By these Defendants' own account, Toastmasters filed the December 27 stipulation through counsel. (Mem at 4.) Mr. Romano's statement that "the court was on their side" is pleaded as evidence of foreknowledge, not as a misrepresentation Plaintiff relied on. ¶¶ 12, 42.

**Abuse of process (Count IX).** The elements are that the defendant instituted process against the plaintiff and used it for an ulterior purpose it was not designed to accomplish. (Mem at 44 (quoting *Palazzo v. Alves*, 944 A.2d 144, 154 (R.I. 2008)).) The FAC alleges that Defendants filed a stipulation to reopen a closed file, served non-dispositive motions calendared to displace pending dispositive motions, and pressed those motions to obtain a termination without a merits adjudication. ¶¶51–54, 60, 62, 133. These Defendants do not dispute that dismissal of Plaintiff's claims was the intended result of the process they used. (Mem at 44.) Those particular motions were not uses of process for the result it was designed to produce. These Defendants say they

merely defended against meritless motions in accord with the rules, which disputes the facts alleged. The FAC alleges the means: a stipulation filed on a false premise and non-dispositive motions calendared to displace the dispositive ones, so that the case was terminated without a merits adjudication. ¶¶ 51–54, 60, 62, 64, 133. That is the alleged perversion of process.

**Malicious prosecution (Count X).** These Defendants say Plaintiff, not they, instituted the state action, that the case ended by a stipulation she drafted, and that she suffered no "special injury." (Mem at 45 & nn.11–12 (citing Palazzo, 944 A.2d at 152–54).) Count X is pleaded under § 1983 as a deprivation of liberty and access to the courts. It rests not on Plaintiff's own claims in the State Court Action but on the claims asserted against her: a trademark infringement claim and an abuse-of-process counterclaim. ¶135. Plaintiff was the defendant on those claims, and favorable termination is measured by how they ended. These Defendants' argument that Plaintiff began the state case does not address them. The question is why the counterclaim ended, not what the dismissal was called. The FAC pleads that Defendants' clients abandoned it after testifying at deposition that they had suffered no financial damage, because insurance paid their expenses. ¶¶ 34(5), 135. Abandonment on that record is not a compromise or settlement within *Nagy v. McBurney*, 392 A.2d 365, 368 (R.I. 1978). Plaintiff paid nothing and released nothing. Whether the stipulation reflects abandonment or compromise depends on facts the Court cannot resolve against Plaintiff on this motion. Plaintiff also incorporates her answer to the same argument in her response to Mr. Brouillard's motion. (ECF 46 at 31.)

As to injury, the FAC pleads harm beyond the ordinary cost of defending a suit: three psychiatric hospitalizations and the loss of the ability to retain counsel, ¶¶31–32,110,143, with the consequence that she could not present her claims with the professional support they required,

because psychotherapist experts will not work with pro se litigants If the Court finds the special injury inadequately alleged, Plaintiff requests leave to amend to plead it with particularity. See Part IX.

**Intentional infliction of emotional distress (Count XI).** These Defendants say they merely "insist[ed] on their legal rights in a permissible way." (Mem at 46–47 (quoting *Swerdlick v. Koch*, 721 A.2d 849, 863 (R.I. 1998)).) The FAC alleges more: a demand that Plaintiff waive her right to appeal and to bring a federal civil rights claim, made while her doctors were directing her to a hospital emergency room, ¶¶ 48, 119; a false representation to a public official to reopen a closed file, ¶¶ 54, 124; and continuation of these tactics after written notice that they had caused repeated psychiatric hospitalization. ¶¶ 53a, 137. It pleads three acute psychiatric hospitalizations. ¶143. Whether the conduct alleged is extreme and outrageous cannot be decided against Plaintiff on the pleadings. It is judged on the facts alleged and on the defendant's knowledge of the plaintiff's vulnerability. See *Swerdlick v. Koch*, 721 A.2d 849, 862–63 (R.I. 1998). Rhode Island follows Restatement (Second) of Torts § 46 cmt. f on defendants who know of a plaintiff's susceptibility.

**Right to trial (Count VIII).** These Defendants say Count VIII has "no merit" because Plaintiff filed the dismissal stipulation and the Supreme Court affirmed it, so that finding a deprivation would be inconsistent with "full faith and credit." (Mem at 47.) That is the preclusion argument answered in Part I-C: the Supreme Court did not address the right to trial or whether Defendants' conduct deprived Plaintiff of it. ¶138. The FAC pleads that Plaintiff filed the dismissal after both attorneys had refused her first proffer unless she waived her rights, while under documented duress, and that the deprivation lies in Defendants' conduct "not by the legal correctness of any ruling it produced." ¶¶48–49, 131. Whatever the effect of the December 13 stipulation, the Superior Court granted rescission on March 24, 2023, and the case was set for trial.

¶¶56–58. The claims were not lost through Plaintiff's stipulation. The FAC alleges they ended through what Defendants did afterward: a false premise presented to the court, motions calendared to displace the dispositive ones, and an order drafted to conceal how the ruling was reached. ¶¶ 59–68. A cause of action is property protected by the Due Process Clause, and the Clause 'grants the aggrieved party the opportunity to present his case and have its merits fairly judged.' *Logan v. Zimmerman Brush Co*., 455 U.S. 422, 428, 433 (1982). The protected interest is that opportunity, not a particular result. The FAC alleges that Plaintiff's claims ended without adjudication on the merits through Defendants' conduct, ¶¶ 62, 64, 133, which is a deprivation of that interest whether or not any ruling was correct. The FAC alleges that Plaintiff's claims ended without adjudication on the merits through Defendants' conduct, ¶¶62, 64,133, These Defendants do not dispute that ending Plaintiff's claims was the intended result of the process they used. (Mem at 44.) The FAC alleges that the claims were ended without a merits adjudication. ¶¶62, 64, 133. A deprivation of that kind is not an accident of the process. A claim ended by design, without a hearing on its merits, is the deprivation the Due Process Clause protects against. *Logan,* 455 U.S. at 433.

**VIII. The claims against Mr. Rex.**

These Defendants say Mr. Rex is "named in his official capacity," acted for a disclosed principal, and cannot be personally liable. (Mem at 1 n.1, 47–48.) The FAC does not say that. It identifies him as the CEO of Toastmasters who "received written communications documenting Plaintiff's constitutional claims and authorized continued financing of the litigation strategy described herein." ¶¶26, 53a. A private corporation's chief executive has no "official capacity"; the term describes suits against government officers, which are suits against the entity. *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985). The FAC names Mr. Rex for his own conduct, and Plaintiff does not rely on *respondeat superior*.

The personal-involvement standard these Defendants quote asks for "direct acts by the defendant, or certain acts performed at defendant's direction or knowledge and consent." (Mem at 47–48) (quoting *Nieves Cruz v. Commonwealth of P.R.*, 425 F. Supp. 2d 188, 193 (D.P.R. 2006)).) The FAC alleges that Mr. Rex received Plaintiff's January 2023 letter warning of violations of §§ 1983 and 1985 and then authorized continued financing. ¶¶26, 53a.

That is knowledge and consent. Liability under § 1983 turns on each defendant's "own individual actions," *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009), not on whether the defendant held final authority. See *Guadalupe-Báez v. Pesquera*, 819 F.3d 509, 515 (1st Cir. 2016); cf. *Sanchez v. Almond,* No. 1:24-cv-00319, ECF 43 at 21 n.14 (D.R.I. Oct. 28, 2026) (individual defendant who lacked final authority was liable where he took part in deliberating on and carrying out the challenged action). The state-law agency rule these Defendants cite, *Cardente v. Maggiacomo Insurance Agency, Inc.*, 272 A.2d 155, 156 (R.I. 1971), concerns an agent's liability for acts within the scope of authority. It does not shield an officer from liability for a tort in which he personally participated or which he directed. See *Ruzzo v. LaRose Enters., Inc.*, 748 A.2d 261, 270 (R.I. 2000).

**IX. Dismissal with prejudice is not warranted.**

These Defendants ask that dismissal be with prejudice because the defects "cannot be corrected." (Mem at 48–49.) The FAC is Plaintiff's first pleading tested on the merits in this case, and leave to amend is to be "freely given when justice so requires." Fed. R. Civ. P. 15(a)(2); *Foman v. Davis*, 371 U.S. 178, 182 (1962). These Defendants argue that "[t]here are no set of facts" that could cure the defects. (Mem at 48.) The "no set of facts" formulation was retired in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 562–63 (2007). The defects they identify depend on how they characterize the pleading: that it seeks review of the state rulings, that Mr. Romano is only a lawyer, and that Toastmasters and Mr. Rex only financed a defense. The FAC pleads otherwise, and where the Court finds a gap, additional allegations can cure it. The FAC Plaintiff's only

amendment, was made at the Vigilant Defendants' request, and added no new defendants. See Part V.E of her response to Vigilant Defendants' motion (ECF 42 ). No court has found a defect in it.

**Leave to Amend is Requested**

If the Court finds any deficiency, Plaintiff requests dismissal without prejudice and leave under Rule 15(a)(2) to file a motion to amend, with a proposed Second Amended Complaint. Amendment would not be futile. It would, among other things: **(1)** attribute each allegation to specific Defendants, separating Mr. Romano, Toastmasters and Mr. Rex from each other and from Mr. Brouillard and the Vigilant Defendants; **(2)** state the facts each count relies on and plead the federal and state-law theories in separate counts; **(3)** add detail on the agreement and on the financing and approval of the tactics pleaded, including what Toastmasters and Mr. Rex knew, and when, about the superseded third-party complaint and Plaintiff's medical condition before the December 13 and December 27, 2022 stipulations, the January 2023 letter to Mr. Rex, and the circumstances of each stipulation; **(4)** add what Mr. Romano knew and when, including the November 2021 communications; **(5)** add a count for aiding and abetting the fraud alleged in Count VI; **(6)** plead the class-based claim in Count V with the facts in Part IV.C: Plaintiff's age and documented diagnosis, when and how each Defendant learned of them, and what each did in that knowledge; **(7)** as to Count X, state who brought each claim against Plaintiff in the state action, how and when each ended, that neither ended in a compromise, and the injury Plaintiff suffered, including that experts declined to work with a self-represented party and that a second attorney whom she agreed to pay a $20,000 retainer, declined after reviewing the file, stating that he was an old family friend of the first attorney who had withdrawn after speaking with Mr. Romano; and Plaintiff was unable to get the assistance of a single attorney after contacting more than 6 and offering $5000 to help proffer the December 12-(13), 2022 dismissal **(8)** conform ¶31 and ¶52 to the record; **(9)** add dated acts and communications, including those within the limitations period, together with the supporting documents and state-court docket entries; **(10)** add such further facts, with dates and sources, as Plaintiff has identified since filing; and **(11)** correct dates, citations and paragraph numbering, including the date of the certiorari denial in ¶16, the year of the Rhode Island Supreme Court's decision in *Clinton v. Babcock, No.* 2023-310-Appeal, which ¶¶106 and 138 give as 2024 but was issued in 2025, and the two paragraphs numbered 133, together with conforming and clerical changes. **(12)** state the capacity in which Mr. Rex is sued. **(13)** add the

circumstances in which Plaintiff's medical excusals were submitted to the trial justice, including that Plaintiff, while under duress and without counsel, submitted them by the method the Clerk's office directed, and how her forced pro se status and that duress affected her ability to make a record of them.

## Conclusion

**Plaintiff respectfully requests that the Court:**

1. Deny the motion to dismiss of Defendants Romano, Toastmasters International and Rex as to all counts asserted against them, except the claim under 42 U.S.C. § 1986 in Count V, which Plaintiff does not oppose dismissing;
2. Deny the motion as to Count VIII to the extent it asserts a claim under the Due Process Clause of the Fourteenth Amendment, and dismiss without prejudice the freestanding damages theory under Article I, § 15 of the Rhode Island Constitution;
3. Retain supplemental jurisdiction over the remaining state-law claims;
4. In the alternative, to the extent the Court finds any pleading deficiency, identify the deficiency, dismiss without prejudice, and grant Plaintiff leave under Rule 15(a)(2) to file a motion to amend, with a proposed Second Amended Complaint addressing all pending motions, within thirty days after the later of the Court's order or the completion of Rule 12 briefing as to all Defendants; and
5. Grant such other relief as is just.

Pursuant to Local Rule Cv 7(c), Plaintiff does not request oral argument or an evidentiary hearing.

Respectfully submitted,
Judith Clinton Plaintiff, pro se

______________________

Judith Clinton – Plaintiff Pro se
418 Benefit Street
Providence, RI 02903
Jclinton14@msn.com
860-389-0402
No. 1:26-cv-00510-JJM-RLA

## CERTIFICATE OF SERVICE

I, Judith Clinton, the pro se Plaintiff in No. 1:26-cv-00510-JJM-RLA, certify that on November 25, 2026, I delivered this document, Plaintiff's Response in Opposition to the Motion to Dismiss of Defendants Todd J. Romano, Toastmasters International and Daniel Rex, with Incorporated Memorandum of Law, to the Clerk's Office for filing in the CM/ECF system and served it by email on all counsel of record.

Signed______________________ Dated 11-25-26